UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH
CENTRAL DIVISION

| | |
|---|---|
| OL PRIVATE COUNSEL, LLC, a Utah limited liability company,<br><br>Plaintiff,<br><br>v.<br><br>EPHRAIM OLSON, an individual,<br><br>Defendant. | **REPORT AND RECOMMENDATION TO DENY MOTION TO JOIN THOMAS OLSON AS A COUNTERCLAIM DEFENDANT (DOC. NO. 8)**<br><br>Case No. 2:21-cv-00455<br><br>Judge David Barlow<br><br>Magistrate Judge Daphne A. Oberg |

Before the court is Defendant Ephraim Olson's[1] Motion to Join Thomas Olson as a Counterclaim Defendant, ("Mot.," Doc. No. 8). Plaintiff OL Private Counsel ("OLPC"), a law firm, initiated this action against Ephraim,[2] who worked at OLPC from approximately 2014 to 2019.[3] (First Am. Compl. and Jury Demand ("Am. Compl."), Doc. No. 2-2, Ex. C.) OLPC's Amended Complaint asserts various claims based on the allegation that Ephraim improperly accessed OLPC's confidential documents after he was no longer employed with OLPC, including a claim under a federal computer fraud statute. (*Id.*) Ephraim removed the case to this court pursuant to federal question jurisdiction. (Notice of Removal, Doc. No. 2.)

---

[1] Because Defendant Ephraim Olson and proposed counterclaim defendant Thomas Olson have the same last name, they will be identified by their first names, for clarity.

[2] Ephraim is the son of Thomas Olson, the sole member/manager of OLPC.

[3] The parties dispute the exact dates of employment, whether OLPC is a law firm, and whether OLPC employed Ephraim in his capacity as an attorney. But none of these issues are relevant to this motion.

1

After removing the case to federal court, Ephraim answered OLPC's complaint and filed counterclaims against both OLPC and Thomas. (Answer to Am. Compl., Countercl. and Third-Party Compl., and Jury Demand ("Countercl."), Doc. No. 7.) Ephraim's counterclaims assert state law causes of action and are based on the allegation that OLPC and Thomas owe Ephraim outstanding pay pursuant to his employment agreement. (*Id.*) Ephraim also filed the current motion to join Thomas as a counterclaim defendant. The parties were ordered to submit supplemental cross-briefs discussing whether the counterclaim is compulsory or permissive, such that independent jurisdiction would be required. (Docket Text Order, Doc. No. 17.)

Because Ephraim has failed to establish this court has supplemental jurisdiction over his counterclaims against Thomas, the undersigned recommends[4] the district judge deny the motion to join Thomas as a counterclaim defendant.[5]

## BACKGROUND

OLPC alleges Ephraim improperly accessed and shared OLPC's confidential documents after his employment ended, in violation of his employment agreement with OLPC. (Am. Compl. 2, 4–6, Doc. No. 2-2, Ex. C.) OLPC brought a variety of claims against Ephraim as a result, including conversion (and aiding and abetting conversion), breach of contract and fiduciary duty, intentional interference with economic relations, conspiracy, and a claim for injunctive relief. (*Id.* at 7, 9–13.) OLPC asserted one federal claim: conspiracy as to the

---

[4] Where the denial of a motion for joinder may be considered a dispositive ruling, the undersigned proceeds by issuing a Report and Recommendation. *See Nitchman v. Union Pac. R.R. Co.*, No. 05-cv-01219, 2006 U.S. Dist. LEXIS 69291, at *5 (D. Colo. Sep. 26, 2006) (unpublished).

[5] No hearing is necessary; the court will rule based on the parties' written memoranda. *See* DUCivR 7-1(g).

Computer Fraud and Abuse Act, 18 U.S.C. § 1030 *et seq*. (*Id*. at 11.) This single claim forms the basis for federal jurisdiction. (*See* Notice of Removal, Doc. No. 2.)

Ephraim brought his counterclaims against both OLPC and Thomas. (Countercl. 17, Doc. No. 7.) The counterclaims allege Thomas is the sole member/manager of OLPC and acted on behalf of OLPC and himself personally. (*Id*.) According to Ephraim, before working with OLPC, he had a job offer in Texas. (*Id*. at 18.) To entice Ephraim to work at OLPC instead, Thomas "promised [Ephraim] the same salary that he would have made at the Texas entity, including bonuses." (*Id*.) Ephraim contends he entered into an employment agreement with both OLPC and Thomas, and both were his employer. (*Id*. at 24.) However, after Ephraim began working at OLPC, Thomas told Ephraim there were "insufficient funds" to pay Ephraim the amount he was promised. (*Id*. at 18.) Nevertheless, Thomas allegedly assured Ephraim he would later be paid the full amount. (*Id*.) Because of these promises, Ephraim continued to work at OLPC. (*Id*.) Ephraim alleges Thomas and OLPC owed Ephraim $500,000 in unpaid salary and bonuses at the time of his resignation and $440,000 at the time of filing. (*Id*. at 18, 23.)

Ephraim further alleges that when he asked to be paid, Thomas told him he could not pay in full, but he did pay Ephraim some funds from an entity named Moose Mountain Buffalo Ranch. (*Id*. at 18–19.) It was not clear to Ephraim whether the payment was for his salary, but Thomas later contended it was a gift. (*Id*. at 19.) In May 2020, Thomas asked Ephraim to resign as trustee of several trusts so he could manage them, which would help him in his divorce from Ephraim's mother. (*Id*. at 20.) According to Ephraim, Thomas said if Ephraim did not resign, he would not be paid his remaining salary and bonus—but if he did resign, he would be paid soon. (*Id*.) Lastly, Ephraim contends that as a precondition to getting paid, Thomas required that an

employee review Ephraim's personal bank accounts and credit cards to ensure he was not giving money to his mother to help her with the divorce. (*Id.* at 19, 26.)

In his counterclaim, Ephraim asserts four state law causes of action against both OLPC and Thomas, all arising from the failure to pay him what he claims is owed in unpaid salary and bonuses. Specifically, he brings claims under Utah statutes for payment of wages, breach of contract, breach of the covenant of good faith and fair dealing, unjust enrichment, and promissory estoppel. (*See generally id.*) OLPC answered the counterclaim, (Doc. No. 11), and Ephraim now seeks to add Thomas as a counterclaim defendant pursuant to Rules 19 and 20 of the Federal Rules of Civil Procedure, (Mot., Doc. No. 8).

## LEGAL STANDARDS

Rules 19 and 20 of the Federal Rules of Civil Procedure "govern the addition of a person as a party to a counterclaim or crossclaim." Fed. R. Civ. P. 13(h). Rule 19 governs compulsory joinder and Rule 20 governs permissive joinder. A party, subject to service of process, *must* be joined under Rule 19 when "joinder will not deprive the court of subject-matter jurisdiction" and "in that person's absence, the court cannot accord complete relief among existing parties." Fed. R. Civ. P. 19(a)(1). A party *may* be joined as a defendant under Rule 20 if "any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences" and "any question of law or fact common to all defendants will arise in the action." Fed. R. Civ. P. 20(a)(2).

## ANALYSIS

Ephraim seeks to join Thomas under both Rule 19 and Rule 20 of the Federal Rules of Civil Procedure. As an initial matter, the court must have subject-matter jurisdiction over the proposed counterclaim against Thomas in order to permit joinder. "Federal courts 'have an

4

independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party,'" and can raise this issue "at any stage in the litigation." *1mage Software, Inc. v. Reynolds & Reynolds Co.*, 459 F.3d 1044, 1048 (10th Cir. 2006) (quoting *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 506 (2006)). "The party seeking to invoke the jurisdiction of a federal court must prove that the case is within the court's subject matter." *Henry v. Office of Thrift Supervision*, 43 F.3d 507, 512 (10th Cir. 1994).

When a court has original jurisdiction over an action, the court has supplemental jurisdiction over all claims so related to the claims giving original jurisdiction "that they form part of the same case or controversy." 28 U.S.C. § 1367(a). This includes claims involving joinder of additional parties. *Id.* "A claim is part of the same case or controversy if it 'derive[s] from a common nucleus of operative fact.'"[6] *Price v. Wolford*, 608 F.3d 698, 702–03 (10th Cir. 2010) (alteration in original) (quoting *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 165 (1997)).

---

[6] As the District of New Mexico noted, "[s]ince Congress enacted Section 1367 in 1990 . . . the Tenth Circuit has not determined whether supplemental jurisdiction over counterclaims depends on the compulsory/permissive distinction." *Walker v. THI of N.M. at Hobbs Ctr.*, 803 F. Supp. 2d 1287, 1299–300 (D.N.M. 2011); *see also id.* (explaining that before Section 1367, compulsory counterclaims fell within the court's supplemental jurisdiction, but permissive counterclaims generally required an independent basis for federal jurisdiction). But section 1367 "does not use the terminology of 'permissive' or 'compulsory.'" *Id.* at 1301 (internal quotation marks omitted). Instead, "[b]y its plain text . . . § 1367(a) governs supplemental jurisdiction over counterclaims," and "Article III's case-or-controversy standard is the jurisdictional limit." *Id.* Because Section 1367's common nucleus test is broader and more encompassing than the "transaction or occurrence" standard as to permissive or compulsory counterclaims, the court uses the common nucleus test. *See Colo. Dep't of Pub. Health & Env't v. United States*, No. 17-cv-02223, 2021 U.S. Dist. LEXIS 143593, at *4–6 (D. Colo. Aug. 2, 2021) (unpublished); *cf. Crow v. Uintah Basin Electric Telecomms.*, No. 2:09-cv-1010, 2010 U.S. Dist. LEXIS 129865, at *20 (D. Utah Dec. 3, 2010) (unpublished) ("The [c]ourt further notes that the two approaches appear to be the same analysis under different names.").

All of Ephraim's claims against Thomas are state law claims, and there is no diversity jurisdiction. (*See* Countercl., Doc. No. 7; Notice of Removal, Doc. No. 2.) Accordingly, the court has jurisdiction over the counterclaims against Thomas only if they arise from a common nucleus of operative fact as the federal claim, such that there is supplemental jurisdiction. That is, Ephraim's claims against Thomas must derive from a common nucleus of operative fact as the sole federal claim asserted in the Amended Complaint: conspiracy as to the Computer Fraud and Abuse Act ("CFAA"). *See Schaeffer v. JBS Carriers, Inc.*, No. 19-cv-01406, 2020 U.S. Dist. LEXIS 224244, at *57 (D. Colo. Dec. 1, 2020) (unpublished) (noting operative facts "unrelated to the facts *underlying the claims over which the court [had] original jurisdiction*" were insufficient to confer supplemental jurisdiction) (emphasis added); *Crow v. Uintah Basin Elec. Telecomms.*, No. 2:09-cv-1010, 2010 U.S. Dist. LEXIS 129865, at *12 (D. Utah Dec. 3, 2010) (unpublished) ("[A] court may exercise supplemental jurisdiction over claims which do not fall within the court's original jurisdiction where those claims are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy.").

OPLC's CFAA conspiracy claim is based on the allegation that in June 2020, after Ephraim's employment with OLPC had ended, Ephraim contacted a former employee of OLPC and devised a scheme whereby the former employee improperly accessed OLPC's confidential documents and transmitted them to Ephraim. (Am. Compl. 4–6, Doc. No. 2-2, Ex. C.) And Ephraim's counterclaims against Thomas are based on the allegation that Thomas did not pay him pursuant to his employment agreement. (Countercl., Doc. 7.)

Ephraim argues his counterclaims arise from the same transaction or occurrence as the amended complaint because the amended complaint and counterclaims both pertain to Ephraim's employment with OLPC and to alleged breaches of his employment contract. (Suppl. Br. in

6

Support of Mot. to Join Thomas Olson as a Countercl. Def. ("Ephraim Suppl.") 2, 5, Doc. No. 18.) According to Ephraim, the same evidence will be used to support and challenge OLPC's claims and Ephraim's counterclaims. (*Id.* at 5.) OLPC disagrees, arguing all the events alleged in the amended complaint occurred after Ephraim's employment ended, and relate to unauthorized access of confidential documents, whereas the counterclaim pertains to events before or during Ephraim's employment, and relate to unpaid salary. (Suppl. Br. of OL Private Counsel, LLC Concerning the Nature of Ephraim Olson's Countercl. 4–5, Doc. No. 19.)

In similar cases, courts have rejected claims of supplemental jurisdiction, finding no evidence of a common nucleus of operative fact. For example, in *Schaeffer v. JBS Carriers, Inc.*, the District of Colorado assessed a defendant's state law counterclaims regarding the alleged misuse of confidential employee information against the backdrop of the plaintiff's federal equal pay, wage-based discrimination, and retaliation claims. 2020 U.S. Dist. LEXIS 224244, at *55–58. The court found the operative facts of the counterclaims insufficient to confer supplemental jurisdiction where they were "unrelated to the facts underlying the claims over which this court has original jurisdiction." *Id.* at *57.

Similarly, the District of Utah found it lacked supplemental jurisdiction over a defendant's counterclaims in *Vox Marketing Group v. Prodigy Promos*, No. 2:18-cv-632, 2021 U.S. Dist. LEXIS 159142 (D. Utah Aug. 20, 2021) (unpublished). Of relevance here, the plaintiff sued the defendant under the CFAA, alleging the defendant accessed the plaintiff's confidential documents without authorization. *Id.* at *7. The defendant filed counterclaims against the plaintiff and some of its employees and officers. *Id.* at *7–8. One of the plaintiff's employees, Mr. Wolfe, previously worked for the defendant. *Id.* at *24. The defendant filed a claim against Mr. Wolfe for breach of contract, alleging he breached various employment

agreements he signed while working for the defendant. *Id.* at \*23–24. The court had "little difficulty" finding this claim did "not arise from the same common nucleus of operative fact as [the] CFAA claim," because the breach of contract claim "[did] not appear to have any relationship to [the defendant's] access to the [confidential] documents." *Id.* at \*23–24 (internal quotation marks omitted). Therefore, the court concluded it lacked supplemental jurisdiction. *Id.* at \*24.

In this case, as in *Vox Marketing Group* (and similar to *Schaeffer*), the counterclaims do not derive from a common nucleus of operative fact as the CFAA conspiracy claim in the amended complaint. To the extent Ephraim's employment with OLPC underpins the CFAA claim in the amended complaint, it is only in the broadest sense. All the claims in the amended complaint stem from events occurring after Ephraim's employment ended. And claims under the CFAA do not hinge on whether the alleged violator is or was an employee.[7] *See* 18 U.S.C. § 1030. OLPC's CFAA claim requires evidence that Ephraim and/or the former employee intentionally accessed a computer without authorization, obtained information from a protected computer, and conspired to do so (as well as damages as specified in the statute). *Id.* In contrast, the counterclaims as to Thomas are based on allegations that Ephraim is entitled to certain wages, Thomas is responsible for payment of those wages, and the wages were not paid. These are different types of claims based on different universes of fact.

---

[7] Although OLPC does not specify, it seems to allege a conspiracy to violate subsection (a)(2)(C). To prove a violation of this subsection, a plaintiff must establish the violator "intentionally accesse[d] a computer without authorization or exceed[ed] authorized access, and thereby obtain[ed] . . . information from any protected computer." 18 U.S.C. § 1030(a)(2)(C); *see also id.* § 1030(g) (noting additional requirements for a civil action).

Ephraim argues that because he raised "unclean hands" as an affirmative defense, the amended complaint and the counterclaim are sufficiently related. (*See* Ephraim Suppl. 5, Doc. No. 18.) But this argument is unpersuasive. Even if this court were to analyze whether the counterclaims are "sufficiently related to . . . an affirmative defense to be considered a compulsory counterclaim," *United States v. Questar Gas Mgmt. Co.*, No. 2:08-cv-167, 2010 U.S. Dist. LEXIS 71512, at *8 (D. Utah July 16, 2010) (unpublished), this court would still lack supplemental jurisdiction. The critical consideration is that Ephraim's counterclaims do not derive from a common nucleus of operative fact as the claim which gives this court jurisdiction: conspiracy as to the CFAA. *See Schaeffer*, 2020 U.S. Dist. LEXIS 224244, at *57. The affirmative defense (whether OLPC materially breached the contract such that it cannot now bring a breach of contract suit against Ephraim) is entirely unrelated to the CFAA claim (whether Ephraim engaged in a conspiracy to obtain confidential information through unauthorized access). Indeed, the affirmative defense was raised in defense of the breach of contract claim, not the CFAA claim. (*See* Ephraim Suppl. 5, Doc. No. 18.) Finally, the affirmative defense was raised as to OLPC, not Thomas, (Countercl. 15, Doc. No. 7), while the joinder motion relates only to Thomas.[8]

Ephraim's counterclaims for unpaid wages do not meaningfully relate to OLPC's CFAA claim. The claims turn on different facts, and different evidence will be used to prosecute or

---

[8] Ephraim also noted in passing that res judicata would bar a later suit on Ephraim's breach of contract claim because the doctrine of unclean hands encompasses the "first breach" rule. (*See* Ephraim Suppl. 5, Doc. No. 18.) But Ephraim does not present case law or argument that a ruling on his affirmative defense—OLPC's alleged first breach—would bar a separate claim against Thomas alleging he personally had a contract with Ephraim, he was responsible for paying Ephraim's salary, and he breached the contract by failing to pay Ephraim's salary. Further, Ephraim failed to establish that this, alone, is sufficient to bring his counterclaim within a common nucleus of operative fact under the circumstances.

rebut the amended complaint and counterclaims. Because Ephraim's counterclaims against Thomas do not arise from a common nucleus of operative fact as OLPC's CFAA claim, the court lacks supplemental jurisdiction over them. Where the court lacks supplemental jurisdiction, the motion to join Thomas as a counterclaim defendant should be denied.

## RECOMMENDATION

Because the court lacks supplemental jurisdiction over Ephraim Olson's counterclaims against Thomas Olson, the undersigned RECOMMENDS the district judge deny the motion to join Thomas Olson as a counterclaim defendant, (Doc. No. 8). The court will send this Report and Recommendation to all parties, who are notified of their right to object to it. *See* 28 U.S.C. § 636(b)(1); Fed R. Civ. P. 72(b). Any failure to object within fourteen days of service may constitute a waiver of objections upon subsequent review.

DATED this 10th day of February, 2022.

BY THE COURT:

_Daphne A. Oberg_
Daphne A. Oberg
United States Magistrate Judge