UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH
CENTRAL DIVISION

| | |
|---|---|
| OL PRIVATE COUNSEL, LLC, a Utah limited liability company,<br><br>       Plaintiff,<br><br>v.<br><br>EPHRAIM OLSON, an individual,<br><br>       Defendant. | **MEMORANDUM DECISION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S SHORT FORM DISCOVERY MOTION (DOC. NO. 67)**<br><br>Case No. 2:21-cv-00455<br><br>District Judge David Barlow<br><br>Magistrate Judge Daphne A. Oberg |

Defendant Ephraim Olson filed a discovery motion seeking to compel Plaintiff OL Private Counsel ("OLPC") to produce documents and provide supplemental responses to Mr. Olson's discovery requests.[1]  OLPC opposes the motion, arguing its responses are adequate and asserting various objections.[2]  The court held a hearing on November 10, 2022, ordered supplemental briefing, and took the motion under advisement.[3]

For the reasons explained below, Mr. Olson's motion[4] is granted in part and denied in part.  The motion is granted in part and denied in part as to Interrogatory 2 and Request for Production (RFP) 2, and OLPC is ordered to supplement its responses to narrowed versions of

---

[1] (Def.'s Short Form Disc. Mot. ("Mot."), Doc. No. 67.)

[2] (Resp. to Def.'s Short Form Disc. Mot. ("Opp'n"), Doc. No. 77.)

[3] (*See* Doc. No. 86.)

[4] (Doc. No. 67.)

these requests as set forth below.  The motion is granted as to Interrogatory 10 and RFPs 4 and 6, and OLPC is ordered to produce all responsive information and documents (or a privilege log).

## BACKGROUND

OLPC brought this action against its former employee, Mr. Olson, who worked for OLPC from approximately 2015 to 2019.[5]  According to the complaint, OLPC is a law firm based in Utah which "associates with and serves clients in common with" two other entities: OL Private Corporate Counsel International, Ltd. ("OLPCCI") and International Tax Counsel Ltd. ("ITC").[6] Mr. Olson is the son of Thomas Olson, the sole member/manager of OLPC.[7]  OLPC alleges that after Mr. Olson was no longer employed at OLPC, he improperly accessed OLPC's confidential documents to assist his mother, Carolyn Olson, in her divorce case.[8]  Specifically, OLPC alleges Mr. Olson contacted a former ITC employee, Timothy Akarapanich, and asked him to obtain the confidential documents from ITC servers where they were stored.[9]  OLPC claims Mr. Akarapanich transmitted the documents to Mr. Olson without authorization, and Mr. Olson then shared them with others, including his mother.[10]  OLPC brings claims against Mr. Olson for

---

[5] (*See* First Am. Compl. ¶ 11, Ex. C to Notice of Removal, Doc. No. 2-2 at 35–52.)

[6] (*Id.* ¶¶ 5–6.)  The parties dispute whether OLPC is a law firm.

[7] (*See* Renewed Mot. for Alternative Service ¶ 2, Doc. No. 42.)

[8] (*See* First Am. Compl. ¶¶ 20–34, Doc. No. 2-2 at 35–52.)

[9] (*See id.* ¶¶ 24–33; *see also* Mot. 1, Doc. No. 67 (identifying the former ITC employee as Timothy Akarapanich).)

[10] (*See* First Am. Compl. ¶¶ 33–36, Doc. No. 2-2 at 35–52.)

conversion, breach of contract, breach of fiduciary duty, and violation of the Computer Fraud and Abuse Act,[11] among others.[12]

## ANALYSIS

Mr. Olson seeks to compel OLPC to supplement its responses to Interrogatories 2 and 10 and to produce documents responsive to RFPs 2, 4, and 6.[13]

A.  Interrogatory 2 and RFP 2

Interrogatory 2 asks OLPC to "detail and describe the corporate relationship and/or association between OLPC, OLPCCI, and ITC, including but not limited to . . . all contracts and documents between OLPC, OLPCCI, and ITC which permit the companies to serve clients in common, share fees, share documents, and or otherwise conduct joint business."[14]  Similarly, RFP 2 requests "all documents which detail and describe the corporate relationship and/or association between OLPC, OLPCCI, and ITC, from 2014 to 2020, including but not limited to all contracts and documents between OLPC, OLPCCI, and ITC which permit the companies to serve clients in common, share fees, share documents, and or otherwise conduct joint business."[15]

---

[11] 18 U.S.C. § 1030, *et seq.*

[12] (*See* First Am. Compl. ¶¶ 42–87, Doc. No. 2-2 at 35–52.)

[13] (Mot., Doc. No. 67.)

[14] (Ex. B to Mot., Def.'s First Set of Disc. Reqs. 8, Doc. No. 67-2.)  The interrogatory also asks OLPC to identify all clients in common from 2014 to 2020, but at the hearing, Mr. Olson clarified he is not seeking to compel OLPC to respond to this portion of the interrogatory.

[15] (*Id.* at 10.)

OLPC raised various objections, including overbreadth, relevance, and undue burden.[16] In response to Interrogatory 2, OLPC stated: "OLPC and ITC provide legal and other professional services to OLPCCI and clients of OLPCCI."[17] OLPC also agreed to produce "non-privileged documents sufficient to show the corporate relationship between OLPC, OLPCCI, and ITC, to the extent such documents exist."[18] OLPC produced services agreements between the three entities and sample engagement letters which state generally that OLPCCI collaborates with other firms.[19]

Mr. Olson argues OLPC's responses are inadequate. He notes OLPC disclosed (in response to another interrogatory) that ITC has a contractual relationship with OLPCCI and OLPCCI is a minority interest holder in OLPC, but it failed to include this information in its response to Interrogatory 2.[20] Mr. Olson argues the corporate relationship between these entities is relevant because the allegedly misappropriated documents were stored on OLPCCI servers and accessed by an ITC employee, Mr. Akarapanich.[21] At the hearing, Mr. Olson agreed to limit the time period of these requests to 2018 to 2020, but requested that any historical documents in effect during that time period also be produced. In opposition, OLPC argues its responses are

---

[16] (Ex. C to Mot., Pl.'s Resp. to Def.'s First and Second Set of Disc. Reqs. 7, 16–17, Doc. No. 75-1.) This exhibit was filed under seal, (Doc. No. 69-1), but a redacted version of the same document was later filed at Doc. No. 75-1. This order cites the redacted version.

[17] (Ex. C to Mot., Pl.'s Resp. to Def.'s First and Second Set of Disc. Reqs. 7, Doc. No. 75-1.)

[18] (*Id.* at 17.)

[19] (*See* Mot. 2 n.1, Doc. No. 67; Opp'n 1–2, Doc. No. 77.)

[20] (Mot. 2, Doc. No. 67.)

[21] (*See id.*)

adequate and any additional information or documents are not relevant to the claims and defenses in this case.[22]

Mr. Olson's motion is granted in part and denied in part as to Interrogatory 2 and RFP 2. OLPC alleges it possessed the confidential documents which Mr. Olson allegedly misappropriated "as a result of its association with OLPCCI and ITC."[23]  OLPC also claims a former ITC employee improperly accessed the documents from ITC servers and transmitted them to Mr. Olson.[24]  Based on these allegations, the corporate relationship between OLPC, OLPCCI, and ITC is relevant insofar as it bears on these entities' possession and handling of confidential documents during the relevant time period.  However, Mr. Olson has not demonstrated other aspects of the corporate relationship are relevant.

Accordingly, OLPC is ordered to supplement its responses to narrowed versions of these requests as follows:

- RFP 2:  OLPC must produce all contracts and documents between OLPC, OLPCCI, and ITC which permitted the companies to serve clients in common, share fees, share documents, and otherwise conduct joint business from 2018 to 2020 (including historical documents in effect during this time period).

---

[22] (Opp'n 1–2, Doc. No. 77.)

[23] (*See* First Am. Compl. ¶ 7, Doc. No. 2-2 at 35–52.)

[24] (*See id.* ¶¶ 24–33.)  Mr. Olson asserts in his motion that the documents were stored on OLPCCI servers, not ITC servers.  (Mot. 2, Doc. No. 67.)  Either way, this supports Mr. Olson's position that the relationship between the three entities is relevant.

- Interrogatory 2: OLPC must detail and describe the corporate relationship between OLPC, OLPCCI, and ITC which permitted the companies to serve clients in common, share fees, share documents, and otherwise conduct joint business from 2018 to 2020. OLPC may respond by referencing business records, if appropriate, consistent with the requirements of Rule 33 of the Federal Rules of Civil Procedure.[25]

As narrowed, these requests are relevant to the parties' claims and defenses and proportional to the needs of the case.[26] Although OLPC initially objected to these requests based on undue burden, it did not raise this argument in its opposition brief. Therefore, OLPC has not demonstrated responding to these requests would be unduly burdensome.

B. Interrogatory 10

Interrogatory 10 asks OLPC to "detail and describe all persons and entities, including employees of any entities, who had access to OLPC, ITC, or OLPCCI[] servers or documents at any time from 2014–2020, including but not limited to the time frame in which the person or

---

[25] See Fed. R. Civ. P. 33(d) ("If the answer to an interrogatory may be determined by examining, auditing, compiling, abstracting, or summarizing a party's business records (including electronically stored information), and if the burden of deriving or ascertaining the answer will be substantially the same for either party, the responding party may answer by: (1) specifying the records that must be reviewed, in sufficient detail to enable the interrogating party to locate and identify them as readily as the responding party could; and (2) giving the interrogating party a reasonable opportunity to examine and audit the records and to make copies, compilations, abstracts, or summaries.").

[26] The scope of discovery under the federal rules encompasses "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1).

entity had access."[27]  OLPC objected that the request was overly broad, unreasonably

burdensome, and "not proportional to the needs of the case because it seeks names of persons

and entities with whom OLPC might not have any relationship or knowledge of."[28]  OLPC

initially responded that only "those employees, agents, or other authorized individuals or entities

that have obligations to keep such information confidential" had access, without providing

further details.[29]  OLPC later supplemented its response with a description of its security

protocols.[30]  In an email, OLPC's counsel also provided "the average number of people who had

access to the server" in 2018, 2019, and 2020.[31]

     Mr. Olson argues OLPC's response is inadequate because OLPC refused to provide the

names of each entity and individual who could access the servers, and the timeframes during

which they had access.[32]  At the hearing, Mr. Olson also argued this information is relevant to

OLPC's claim that he obtained documents from a "protected computer" without authorization in

---

[27] (Ex. B to Mot., Def.'s First Set of Disc. Reqs. 9, Doc. No. 67-2.)

[28] (Ex. C to Mot., Pl.'s Resp. to Def.'s First and Second Set of Disc. Reqs. 13–14, Doc. No. 75-1.)

[29] (*Id.* at 14.)

[30] (Ex. D to Mot., Pl.'s Suppl. Resp. to Def.'s First and Second Set of Disc. Reqs. 16–17, Doc. No. 75-2.)  This exhibit was filed under seal, (Doc. No. 69-2), but a redacted version of the same document was later filed at Doc. No. 75-2.  This order cites the redacted version.

[31] (*See* Ex. 2 to Opp'n, E. Ostrow Email (Oct. 14, 2022), Doc. No. 77-2.)

[32] (Mot. 2, Doc. No. 67.)

violation the Computer Fraud and Abuse Act.[33]  According to Mr. Olson, if numerous employees

and entities had access to the servers, this would undermine OLPC's claim that the documents at

issue were protected and confidential.  He also argued the timeframe of each employee's access

is relevant to whether he or Mr. Akarapanich obtained documents without authorization.  Mr.

Olson agreed to limit the time period of the interrogatory to 2018 to 2020.[34]

In opposition, OLPC argues any information beyond what it already provided is

irrelevant.[35]  At the hearing, OLPC also argued it would be unduly burdensome to provide

information regarding which employees had access to specific client files because such access

changed over time based on the employees' case assignments.  Finally, OLPC argues it cannot

be compelled to disclose the names of Thai employees who had access to the servers because a

Thai privacy law prohibits disclosure of these employees' identifying information.[36]  After the

hearing, both parties submitted supplemental briefing regarding the Thai privacy law issue.[37]

---

[33] (*See* First Am. Compl. ¶¶ 67–75, Doc. No. 2-2 at 35–52); *see also* 18 U.S.C. § 1030(a)(2)(c) (prohibiting accessing and obtaining information from a protected computer without authorization or in excess of authorized access).

[34] (*See* Mot. 2, Doc. No. 67.)

[35] (Opp'n 2, Doc. No. 77.)

[36] (*See id.*; Pl.'s Suppl. Br., Doc. No. 85.)  OLPC does not state how many employees who had access to the servers are Thai.

[37] (Pl.'s Suppl. Br., Doc. No. 85; Def.'s Suppl. Br., Doc. No. 89.)

For the reasons explained below, Mr. Olson's motion is granted as to Interrogatory 10. The court first addresses relevance and proportionality under Rule 26,[38] then turns to OLPC's argument regarding the Thai privacy law.

  *i. Relevance and Proportionality*

The information requested in Interrogatory 10 is relevant to OLPC's claims.  As an initial matter, whether a computer qualifies as "protected" under the Computer Fraud and Abuse Act depends on whether it is "used in or affecting interstate or foreign commerce or communication,"[39] not on how many entities or individuals have access to it.  Nevertheless, OLPC's claims rely on allegations that Mr. Olson misappropriated confidential documents. Information regarding which entities and individuals had access to the servers where the documents were stored, and the timeframes during which they had access, is relevant to whether the documents were maintained as confidential.  Further, the timeframes during which Mr. Olson and Mr. Akarapanich, specifically, had access is relevant to OLPC's allegations that Mr. Olson and Mr. Akarapanich obtained the documents without authorization.  Accordingly, the information sought in Interrogatory 10 is relevant.

Nevertheless, Mr. Olson has not established the *names* of all individuals who had access to the server are relevant or responsive to Interrogatory 10.  The interrogatory asks OLPC to "detail and describe" persons and entities who had access,[40] which does not necessarily require

---

[38] Fed. R. Civ. P. 26(b)(1).

[39] 18 U.S.C. § 1030(e)(2)(B).

[40] (Ex. B to Mot., Def.'s First Set of Disc. Reqs. 9, Doc. No. 67-2.)

identifying individuals by name.  For individuals other than Mr. Olson and Mr. Akarapanich, who have already been identified, providing other descriptors (such as job title, employer, etc.) would also be responsive.

Interrogatory 10 is proportional to the needs of the case.  OLPC did not make any argument regarding undue burden in its briefing, nor did it offer evidence regarding the burden of responding.  Moreover, OLPC's argument regarding burden at the hearing focused on the burden of identifying which employees had access to specific client files.  But Interrogatory 10 seeks information regarding access to the three entities' servers and documents generally—not specific client files.  According to OLPC's counsel's email, the number of individuals who had access to the servers during the relevant time period ranged from forty-five to ninety-three.[41] OLPC has not demonstrated it would be unduly burdensome to provide the timeframes during which each of these individuals had access to the three entities' servers and documents.  Given the relevance of the information sought, any burden in responding does not outweigh the likely benefit.[42]

> ii.  *Thai Privacy Law*

A party relying on a foreign law to avoid discovery has the burden of showing such law bars the discovery sought.[43]  Even if the party makes such a showing, the Supreme Court has

---

[41] (*See* Ex. 2 to Opp'n, E. Ostrow Email (Oct. 14, 2022), Doc. No. 77-2.)

[42] *See* Fed. R. Civ. P. 26(b)(1) (listing factors to be considered in determining proportionality, including "whether the burden or expense of the proposed discovery outweighs its likely benefit").

[43] *See Rollins Ranches, LLC v. Watson*, No. 0:18-3278-SAL-SVH, 2020 U.S. Dist. LEXIS 90409, at *9 (D.S.C. May 22, 2020) (unpublished); *BrightEdge Techs., Inc. v. Searchmetrics,*

held foreign statutes "do not deprive an American court of the power to order a party subject to its jurisdiction to produce evidence even though the act of production may violate that statute."[44] In determining whether to compel discovery prohibited by a foreign law, courts apply a multi-factor balancing test to evaluate the interests of the United States and the party seeking the discovery against the foreign state's interests.[45]  Relevant factors include:

> (1) the importance to the . . . litigation of the documents or other information requested;
>
> (2) the degree of specificity of the request;
>
> (3) whether the information originated in the United States;
>
> (4) the availability of alternative means of securing the information; and
>
> (5) the extent to which noncompliance with the request would undermine important interests of the United States, or compliance with the request would undermine important interests of the state where the information is located.[46]

These factors are not exhaustive, and courts have also considered "the extent and the nature of the hardship that inconsistent enforcement would impose upon the person" ordered to produce discovery, among other factors.[47]

---

*GmbH*, No. 14-cv-01009, 2014 U.S. Dist. LEXIS 112377, at *5 (N.D. Cal. Aug. 13, 2014) (unpublished).

[44] *Societe Nationale Industrielle Aerospatiale v. United States Dist. Ct. for S. Dist. of Iowa*, 482 U.S. 522, 544 n.29 (1987).

[45] *See id.* at 544 n.28; *Richmark Corp. v. Timber Falling Consultants*, 959 F.2d 1468, 1474–75 (9th Cir. 1992); *BrightEdge Techs.*, 2014 U.S. Dist. LEXIS 112377, at *6–7.

[46] *Societe Nationale Industrielle Aerospatiale*, 482 U.S. at 544 n.28 (alteration in original) (internal quotation marks omitted).

[47] *Richmark Corp.*, 959 F.2d at 1475 (internal quotation marks omitted).

OLPC has not met its burden to show Thai law prohibits the discovery sought in Interrogatory 10.  In support of this argument, OLPC submitted an unsworn letter from a Thai attorney providing a "legal opinion" regarding the Thai Personal Data Protection Act ("PDPA").[48]  The attorney explains this law "covers the disclosure of '[p]ersonal [d]ata' of Thai individuals and may protect the same of foreigners working in Thailand."[49]  According to the attorney, "personal data" means "any information relating to a person, which enables the identification of such person, whether directly or indirectly."[50]  He acknowledges the statute contains an exception for legal proceedings and admits "[t]here is currently an uncertainty as to whether foreign courts can order the disclosure of personal data of Thai employees, or if [the legal proceedings exception] refers only to Thai courts."[51]  But he states: "I am of the view that a data controller may well be committing a violation of the [PDPA] if it disclosed protected information pursuant to an order of a foreign court without the consents of the employees."[52]  He also states "[i]f a disclosure is made without an order from a Thai court when the individual has not provided their consent, a party may be subject to civil, and potentially criminal, penalties under the PDPA."[53]

---

[48] (Ex. 1 to Pl.'s Suppl. Br., S. Atthaworadej Letter, Doc. No. 85-1.)

[49] (*Id.*, Doc. No. 85-1 at 3.)

[50] (*Id.*)

[51] (*Id.*, Doc. No. 85-1 at 3–4.)

[52] (*Id.*, Doc. No. 85-1 at 4.)

[53] (*Id.*)

This letter is insufficient to demonstrate the discovery sought in Interrogatory 10 is barred by Thai law.  The attorney does not opine that the information sought in Interrogatory 10 is protected information under the Thai statute, and it is not otherwise apparent the statute applies.  As noted above, Interrogatory 10 asks OLPC to "detail and describe" the entities and individuals who had access to the servers,[54] which does not necessarily require identifying them by name.  Further, OLPC has provided no evidence that information responsive to Interrogatory 10 relates to individuals who are protected under the Thai statute.  OLPC has not explained, for example, whether the individuals who had access to the servers are Thai employees or foreigners working in Thailand[55]—and it is unclear whether the latter category is protected.[56]  Even if Interrogatory 10 calls for disclosure of protected information, OLPC has not demonstrated the statutory exception for legal proceedings is inapplicable here.  In sum, OLPC has not met its burden to show Thai law bars disclosure of the information responsive to Interrogatory 10.

Even assuming OLPC could show Thai law bars disclosure, the balancing test set forth above weighs in favor of compelling OLPC to respond to Interrogatory 10.  First, the importance of the information sought weighs heavily in favor of disclosure.[57]  As explained above, the information is directly relevant to OLPC's allegations that Mr. Olson worked with Mr.

---

[54] (Ex. B to Mot., Def.'s First Set of Disc. Reqs. 9, Doc. No. 67-2.)

[55] OLPC asserts Mr. Akarapanich is Thai, (*see* Pl.'s Suppl. Br. 7, Doc. No. 85), but provides no information about other employees.

[56] (*See* Ex. 1 to Pl.'s Suppl. Br., S. Atthaworadej Letter 3, Doc. No. 85-1 (stating the statute "may protect" foreigners working in Thailand).)

[57] *See Richmark Corp.*, 959 F.2d at 1475 ("Where the evidence is directly relevant, . . . we have found this factor to weigh in favor of disclosure.").

Akarapanich to obtain confidential documents without authorization—allegations which underpin all of OLPC's claims in this action.  Second, the specificity of the request also favors disclosure.[58]  The interrogatory is tailored to seek relevant information, and OLPC has not demonstrated the amount of information requested is unduly burdensome.  Third, although OLPC asserts some responsive information originated in Thailand, it fails to offer further details or supporting evidence.[59]  Where there is no evidence regarding where the responsive information originated, this factor is neutral.  Fourth, OLPC has not demonstrated alternative means of obtaining the information are available, other than through discovery from OLPC.[60]  Thus, this factor weighs in favor of disclosure.

Under the fifth factor, the balance of national interests favors disclosure.  Thailand undoubtedly has interests in maintaining the privacy of its citizens.  Nevertheless, OLPC is a

---

[58] "Under this factor, the Court examines the extent to which the discovery requests will burden the party from whom production is sought as [g]eneralized searches for information, disclosure of which is prohibited under foreign law, are discouraged."  *BrightEdge Techs.*, 2014 U.S. Dist. LEXIS 112377, at *8 (alteration in original) (internal quotation marks omitted).

[59] (*See* Pl.'s Suppl. Br. 5, Doc. No. 85.)

[60] In addressing this factor, OLPC suggests Mr. Olson may ask about server access in OLPC's Rule 30(b)(6) deposition as an alternate means of obtaining the information sought in Interrogatory 10.  (*See* Pl.'s Suppl. Br. 5, Doc. No. 85.)  But if OLPC is willing to disclose information it contends is protected under the Thai privacy law in a deposition, this undercuts its argument that Thai law bars disclosure of the same information in response to an interrogatory.  If, instead, OLPC intends to raise the same objections based on the Thai privacy law in its deposition, this would render the information unavailable absent a court order requiring disclosure.  Either way, there is no basis to conclude the information is available through means other than discovery from OLPC.  *Cf. BrightEdge Techs.*, 2014 U.S. Dist. LEXIS 112377, at *13 (providing the focus of this factor is "whether the documents, if relevant, can be obtained from another source").

Utah entity which chose to bring this suit in Utah.[61]  Having availed itself of the United States judicial system to bring its claims, OLPC cannot hide behind foreign privacy laws to avoid its discovery obligations in this system.  This factor weighs in favor of compelling disclosure— particularly where OLPC has not established the Thai privacy law applies in the first instance.

Finally, OLPC has not demonstrated it will face hardship if compelled to respond to Interrogatory 10.  In the letter OLPC submitted, the Thai attorney offered only a generic observation that a party which violates the Thai law "may be subject to civil, and potentially criminal, penalties."[62]  He did not opine OLPC will face such penalties if it responds to Interrogatory 10.  OLPC has not shown responding to the interrogatory will subject it to penalties or other hardship.  The factors as a whole favor compelling disclosure.  Accordingly, OLPC may not avoid responding to Interrogatory 10 based on the Thai privacy law.

For these reasons, Mr. Olson's motion is granted as to Interrogatory 10, and OLPC must supplement its response.  OLPC must detail and describe all persons and entities who had access to OLPC, ITC, or OLPCCI servers or documents at any time from 2018 to 2020, including the timeframe in which each person or entity had access.  For individuals other than Mr. Olson and Mr. Akarapanich, OLPC need not identify the individuals by name but may use other descriptors.

---

[61] OLPC filed this action in Utah state court, and Mr. Olson removed it to federal court.  (*See* Notice of Removal, Doc. No. 2.)

[62] (Ex. 1 to Pl.'s Suppl. Br., S. Atthaworadej Letter, Doc. No. 85-1 at 4.)

C.  <u>RFP 4</u>

RFP 4 seeks "all OLPC, OLPCCI, and/or ITC employment records for Timothy Akarapanich from 2018 to the present, including but not limited to personnel files, payroll, and all contracts allegedly signed detailing his employment, such as any employment agreement, non-compete agreement and/or a non-disclosure and confidentiality agreement."[63]  OLPC objected on the grounds of relevance and asserted the employment records could be protected under Thai law.[64]  Nevertheless, it produced Mr. Akarapanich's employment agreements and termination letter.[65]  In an email, OLPC's counsel also provided a list of documents in Mr. Akarapanich's employment file.[66]

Mr. Olson argues Mr. Akarapanich's entire employment file, including any disciplinary records and payroll records, is relevant.[67]  According to Mr. Olson, other evidence OLPC has produced suggests Mr. Akarapanich continued employment with OLPC or ITC after the events alleged in the complaint, suggesting OLPC ratified his conduct.[68]  In opposition, OLPC argues

---

[63] (Ex. B to Mot., Def.'s First Set of Disc. Reqs. 10, Doc. No. 67-2.)

[64] (Ex. C to Mot., Pl.'s Resp. to Def.'s First and Second Set of Disc. Reqs. 18, Doc. No. 75-1.)

[65] (*See* Opp'n 2–3, Doc. No. 77.)

[66] (*See id.*; Ex. 2 to Opp'n, E. Ostrow Email (Oct. 14, 2022), Doc. No. 77-2.)  According to OLPC's counsel's email, the other documents in the file include tax withholding documents, a Thai ID card, an employment certificate, proof of receipt of the employment certificate, proof of change of status to "not employed" in the Social Security record, Myers-Briggs test results, and payroll records.  (Ex. 2 to Opp'n, E. Ostrow Email (Oct. 14, 2022), Doc. No. 77-2.)

[67] (Mot. 2, Doc. No. 67.)

[68] (*Id.*)

the employment records it has withheld are irrelevant and are protected by the Thai privacy law because Mr. Akarapanich is Thai.[69]

The requested employment records are relevant.  OLPC alleges Mr. Akarapanich obtained confidential documents without authorization and transmitted them to Mr. Olson after Mr. Akarapanich was no longer employed by ITC.[70]  Where the dates of Mr. Akarapanich's employment are disputed, payroll records and other evidence of compensation are relevant. Further, disciplinary records (or lack thereof) are relevant to show how OLPC responded to Mr. Akarapanich's conduct.  Evidence that OLPC or ITC failed to discipline Mr. Akarapanich and/or continued to employ him may undermine OLPC's claims.  Accordingly, the documents sought in RFP 4 are relevant.

OLPC has not met its burden to show the Thai privacy law bars disclosure of Mr. Akarapanich's employment records.  The attorney letter provided by OLPC does not assert these records are protected under the Thai law, and it is not otherwise apparent the law applies.  Mr. Akarapanich's identity has already been disclosed, and other personal identifying information such as ID numbers could be redacted from the documents.  Under these circumstances, OLPC has not demonstrated production of Mr. Akarapanich's remaining employment records violates Thai law.  Further, OLPC has not demonstrated the statutory exception for judicial proceedings is inapplicable.

---

[69] (Opp'n 2–3, Doc. No. 77; Pl.'s Suppl. Br. 6–7, Doc. No. 85.)

[70] (*See* First Am. Compl. ¶¶ 22–33, Doc. No. 2-2 at 35–52.)

Even if the records at issue are protected under the Thai law, the balancing test set forth above weighs in favor of disclosure.  First, the relevance of the documents weighs strongly in favor of disclosure.  Second, the request is specific and OLPC does not argue responding would be unduly burdensome.  Third, OLPC has not offered evidence that the documents originated from or are located outside the United States.  Fourth, OLPC has not demonstrated the documents are available from any other source.  Fifth, the balance of national interests weighs in favor of disclosure.  Any interest Thailand may have in maintaining its citizens' privacy is minimal here, where Mr. Akarapanich's identity has already been disclosed and OLPC has already produced several of his employment records.  Moreover, OLPC has availed itself of United States courts and must comply with discovery obligations under the federal rules.  Finally, OLPC has not demonstrated it will face penalties or other hardship if it produces the remainder of Mr. Akarapanich's employment file.

Accordingly, Mr. Olson's motion is granted as to RFP 4, and OLPC must produce all responsive documents.  OLPC may make appropriate redactions to personal identifying information.

D.  RFP 6

RFP 6 seeks "all documents that OLPC, OLPCCI, and/or ITC possess relating to (1) the Ruth Doxey Family Trust, (2) Carolyn Olson Spousal Trust, and (3) White Buffalo Trust, including but not limited to any planning document, planning memorandum, planning notes, excel spreadsheets, or other documents detailing actions taken or to be taken with respect to

these trusts."[71]  According to Mr. Olson, these are documents relating to trusts for which Mr. Olson is trustee.[72]  OLPC objected on grounds of relevance, attorney-client privilege, and work-product protection.[73]  OLPC did not produce responsive documents or a privilege log, claiming creating a privilege log would be unduly burdensome.[74]

Mr. Olson argues RFP 6 is relevant because the documents which OLPC claims he misappropriated relate to these trusts.[75]  Mr. Olson asserts the requested trust documents will show he was entitled to possess the allegedly misappropriated documents—contrary to OLPC's claim that he obtained them without authorization.[76]  He also argues OLPC cannot withhold the documents based on privilege because he is the trustee.[77]

In opposition, OLPC maintains the documents are irrelevant and privileged, and that producing a privilege log for irrelevant information would be unduly burdensome.[78]  OLPC also argues Mr. Olson should first be required to seek documents responsive to RFP 6 "through the

---

[71] (Ex. B to Mot., Def.'s First Set of Disc. Reqs. 10–11, Doc. No. 67-2.)

[72] (Mot. 3, Doc. No. 67.)

[73] (Ex. C to Mot., Pl.'s Resp. to Def.'s First and Second Set of Disc. Reqs. 19–20, Doc. No. 75-1.)

[74] (*See id.*)

[75] (Mot. 3, Doc. No. 67.)

[76] (*Id.*)

[77] (*Id.*)

[78] (Opp'n 3, Doc. No. 77.)

proper channels," via his position as trustee.[79]  At the hearing, Mr. Olson responded that his

attempts to obtain the documents through other channels have been unsuccessful.

The documents requested in RFP 6 are relevant.  OLPC did not dispute Mr. Olson's

assertions that he is trustee of the trusts listed in RFP 6, or that the allegedly misappropriated

documents relate to these trusts.  Based on these assertions, the requested documents are relevant

to whether Mr. Olson obtained documents without authorization, as OLPC claims.

OLPC has not demonstrated producing the responsive documents or a privilege log

would be unduly burdensome.  OLPC offered no evidence of burden, and its argument that

providing a privilege log would be unduly burdensome rests on its assertion that the documents

are irrelevant—which the court has rejected.  Further, OLPC has not demonstrated, at this stage,

that responsive documents are likely to be privileged as to Mr. Olson.  If OLPC believes a

privilege or protection applies, it must produce a privilege log.

Finally, OLPC's argument that Mr. Olson must first attempt to obtain the documents

through other channels is not persuasive.  "As a general matter, parties cannot avoid their

discovery obligations by stating that the discovery sought . . . can be obtained from some other

source."[80]  And here, Mr. Olson asserts he has tried and failed to obtain the documents through

other means.

---

[79] (*Id.*)

[80] *S2 Automation LLC v. Micron Tech., Inc.*, No. CIV 11-0884 JB/WDS, 2012 U.S. Dist. LEXIS 120097, at *115–16 (D.N.M. Aug. 9, 2012) (unpublished) (alteration in original) (internal quotation marks omitted); *see also City Consumer Servs., Inc. v. Horne*, 100 F.R.D. 740, 747 (D. Utah 1983) ("It is not usually a ground for objection that the information is equally available to the interrogator or is a matter of public record." (internal quotation marks omitted).)

Accordingly, Mr. Olson's motion is granted as to RFP 6.  OLPC must produce or provide a privilege log for all responsive documents in its possession, custody, or control.[81]

## CONCLUSION

Mr. Olson's motion[82] is granted in part and denied in part, and the court ORDERS as follows:

1.      OLPC must supplement its response to a narrowed version of RFP 2 as follows: OLPC must produce all contracts and documents between OLPC, OLPCCI, and ITC which permitted the companies to serve clients in common, share fees, share documents, and otherwise conduct joint business from 2018 to 2020 (including historical documents in effect during this time period).

2.      OLPC must supplement its response to a narrowed version of Interrogatory 2 as follows:  OLPC must detail and describe the corporate relationship between OLPC, OLPCCI, and ITC which permitted the companies to serve clients in common, share fees, share documents, and otherwise conduct joint business from 2018 to 2020.  OLPC may respond by referencing business records, if appropriate, consistent with the requirements of Rule 33 of the Federal Rules of Civil Procedure.

3.      OLPC must supplement its response to Interrogatory 10 as follows: OLPC must detail and describe all persons and entities who had access to OLPC, ITC, or OLPCCI servers or

---

[81] Insofar as RFP 6 requests documents in OLPCCI and/or ITC's possession, OLPC need only produce documents which OLPC possesses or controls.  *See* Fed. R. Civ. P. 34(a)(1) (permitting a party to request documents in "the responding party's possession, custody, or control").

[82] (Doc. No. 67.)

documents at any time from 2018 to 2020, including the time frame in which each person or entity had access.  For individuals other than Mr. Olson and Mr. Akarapanich, OLPC need not identify the individuals by name but may use other descriptors.

4.      OLPC must produce all documents responsive to RFP 4.  OLPC may make appropriate redactions to personal identifying information.

5.      OLPC must produce or provide a privilege log for all documents responsive to RFP 6 in its possession, custody, or control.

6.      OLPC must comply with this order within fourteen days unless the parties stipulate to a different deadline.

DATED this 6th day of December, 2022.

BY THE COURT:

Daphne A. Oberg
United States Magistrate Judge