UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH
CENTRAL DIVISION

| | |
|---|---|
| OL PRIVATE COUNSEL, LLC, a Utah limited liability company,<br><br>Plaintiff,<br><br>v.<br><br>EPHRAIM OLSON, an individual,<br><br>Defendant. | **MEMORANDUM DECISION AND ORDER DENYING PLAINTIFF'S SECOND SHORT FORM DISCOVERY MOTION TO COMPEL DEPOSITION OF EPHRAIM OLSON (DOC. NO. 260)**<br><br>Case No. 2:21-cv-00455<br><br>District Judge David Barlow<br><br>Magistrate Judge Daphne A. Oberg |

In this action, Plaintiff OL Private Counsel, LLC ("OLPC") alleges its former employee, Ephraim Olson, misappropriated OLPC's confidential client documents and shared them with his mother, Carolyn Olson, and/or her attorneys.[1] OLPC claims Carolyn used the misappropriated documents in litigation against Ephraim's father, Thomas Olson (OLPC's sole member/manager).[2] As relevant here, OLPC contends some misappropriated documents were used to obtain the "Mareva injunction," freezing Thomas's assets (in a case where Carolyn was represented by the Dentons law firm).

OLPC previously moved to compel Ephraim to sit for an additional deposition (his third) regarding questions he was instructed not to answer in his first deposition and

---

[1] (See Ex. C to Notice of Removal, First Am. Compl., Doc. No. 2-2 at 35–52.)

[2] (See id.) Because this lawsuit and this motion involve several members of the Olson family, first names are used in this order, for clarity.

1

which were constrained in his second deposition.[3] The court granted the motion in part but—consistent with the parties' prior stipulation—limited the scope of the third deposition to three agreed-upon questions and any questions flowing naturally from Ephraim's responses.[4] After deposing Ephraim again, OLPC has filed a motion to compel yet another deposition of Ephraim.[5] As explained below, where many of the questions OLPC asked exceeded the limited scope of the deposition, and where OLPC affirmatively chose not to ask two of the permitted questions, its motion is denied.

## BACKGROUND

<u>Ephraim's First and Second Depositions</u>

During his first deposition, Ephraim's counsel objected to certain questions on the basis of attorney-client privilege and work-product protection and instructed Ephraim not to answer.[6] After the deposition, the parties' counsel conferred regarding the privilege objection and stipulated to have Ephraim sit for a second deposition to answer the following three questions (which he had been instructed not to answer):

1. Did you provide any documents to Dentons in connection with or to facilitate their work on the Mareva injunction?

---

[3] (Pl.'s Short Form Disc. Mot. to Compel Dep. of Ephraim Olson ("First Mot. re Ephraim Dep."), Doc. No. 161.)

[4] (*See* Mem. Decision and Order Granting in Part and Den. in Part Pl.'s Short Form Disc. Mot. to Compel Dep. of Ephraim Olson, Doc. No. 225.)

[5] (Pl.'s Second Short Form Disc. Mot. to Compel Dep. of Ephraim Olson ("Second Mot. re Ephraim Dep."), Doc. No. 260.)

[6] (*See* Ex. A to First Mot. re Ephraim Dep., Dep. of Ephraim Olson (Feb. 13, 2023) 111:15–22, 114:8–21, Doc. No. 161-1.)

> 2. Did you provide any documents to your mother to provide to Dentons in connection with the Mareva injunction?
>
> 3. Did you provide any information to Dentons to facilitate their efforts in seeking a Mareva injunction?[7]

Specifically, the parties agreed Ephraim's second deposition would address these three questions "and any questions that flow naturally from the responses thereto."[8]

At the beginning of Ephraim's second deposition, Ephraim's counsel reiterated that Ephraim would answer the three questions set forth above.[9] OLPC's counsel stated that OLPC was "not only entitled to ask those questions but any follow-up questions that we would have asked had we been able to ask those questions in the previous deposition."[10] Ephraim's counsel clarified that Ephraim had agreed to answer "any follow-up questions that come from the answer," but stated "[t]his is not a new deposition to talk about those topics broadly."[11] OLPC's counsel indicated he understood Ephraim's position and then began the deposition by asking: "Mr. Olson, the subject matter of today's deposition is information or documents that you may have

---

[7] (See First Mot. re Ephraim Dep. 2–3, Doc. No. 161; Def.'s Opp'n to Pl.'s Short Form Mot. to Compel Dep. of Ephraim Olson 1–2, Doc. No. 167; Ex. B to First Mot. re Ephraim Dep., Emails between M. Call and S. Vaughn (June 12–19, 2023), Doc. No. 161-2.)

[8] (Ex. B to First Mot. re Ephraim Dep., Emails between M. Call and S. Vaughn (June 12–19, 2023), Doc. No. 161-2; see also Ex. C to First Mot. re Ephraim Dep., Dep. of Ephraim Olson, Vol. II (June 28, 2023) 5:11–20, Doc. No. 161-3.)

[9] (Ex. C to First Mot. re Ephraim Dep., Dep. of Ephraim Olson, Vol. II (June 28, 2023) 5:11–20, Doc. No. 161-3.)

[10] (Id. at 6:6–10.)

[11] (Id. at 6:12–19.)

provided, either directly or indirectly, to the Dentons law firm to facilitate their efforts in seeking a Mareva injunction. Do you understand that?"[12] Ephraim's counsel objected that this was not one of the stipulated questions and asked OLPC's counsel to "stick to the three questions we've stipulated to."[13] OLPC's counsel responded: "No, I'm not going to do that, Counsel. And you can make your objection and give any instructions that you would choose, but I'm going to question him the way that I choose."[14] Ephraim's counsel then terminated the deposition.[15]

### OLPC's First Motion

After the failed second deposition, OLPC moved to compel Ephraim to sit for an additional deposition (his third), arguing Ephraim's counsel improperly instructed him not to answer during the first deposition and placed unreasonable constraints on the order and manner of questioning in the second deposition.[16] OLPC argued it should be permitted to pursue the line of questioning that was improperly objected to in the first deposition, and asserted Ephraim's counsel cannot "dictate the wording of that questioning or the order."[17] OLPC asked the court to order Ephraim to sit for an additional deposition and answer questions "reasonably related to those that were

---

[12] (*Id.* at 6:23, 8:11–15.)

[13] (*Id.* at 8:17–20.)

[14] (*Id.* at 8:21–24.)

[15] (*Id.* at 8:25–9:2.)

[16] (First Mot. re Ephraim Dep. 1–3, Doc. No. 161.)

[17] (*Id.* at 3–4.)

improperly objected to without inappropriate interference from counsel on the form or order of questions."[18]

The court granted OLPC's motion in part and denied it in part.[19] The court found the parties had stipulated to a second deposition of Ephraim to answer the three agreed-upon questions and any questions flowing naturally from his responses—nothing more.[20] The court concluded OLPC's first question to Ephraim in the second deposition was outside the stipulated deposition scope, because it was not one of the three agreed-upon questions nor a question flowing from his response.[21] Further, OLPC's request to compel Ephraim to answer questions "reasonably related" to the agreed-upon questions exceeded the scope of the stipulation, unless such questions naturally flowed from Ephraim's responses to the agreed-upon questions.[22] The court held the parties to the terms of their stipulation, ordering Ephraim to "sit for an additional deposition to answer the three agreed-upon questions and any questions that flow naturally from his responses."[23] The court noted that although this somewhat restricted the order and manner of questioning, these were the terms OLPC agreed to, and the

---

[18] (*Id.*)

[19] (*See* Mem. Decision and Order Granting in Part and Den. in Part Pl.'s Short Form Disc. Mot. to Compel Dep. of Ephraim Olson, Doc. No. 225.)

[20] (*Id.* at 5.)

[21] (*Id.*)

[22] (*Id.*)

[23] (*Id.* at 6.)

restrictions simply reflected the parties' stipulation regarding the scope of the deposition.[24]

### Ephraim's Third Deposition

Following this order, Ephraim sat for a third deposition. OLPC's counsel again began the deposition by asking questions other than the three agreed-upon questions, starting with asking how Ephraim prepared for the deposition.[25] Ephraim's counsel objected that these questions were outside the permitted scope, but allowed the deposition to proceed "to get this over with."[26]

OLPC's counsel then asked Ephraim the third agreed-upon question—"Did you provide any information to Dentons to facilitate their efforts in seeking a Mareva injunction?"—and instructed Ephraim to answer "yes or no."[27] Ephraim responded: "No, to the best of my knowledge."[28] OLPC's counsel asked Ephraim what he meant, and Ephraim repeated his answer.[29] OLPC's counsel asked Ephraim if he would know if he provided information to Dentons, and Ephraim responded: "Presumably, yes."[30]

---

[24] (*Id.*)

[25] (*See* Ex. A to Second Mot. re Ephraim Dep., Dep. of Ephraim Olson (Mar. 25, 2024) 6:7–8, 6:16, Doc. No. 260-1.)

[26] (*Id.* at 6:9–11, 6:17–18.)

[27] (*Id.* at 6:22–7:2.)

[28] (*Id.* at 7:3.)

[29] (*See id.* at 7:4–14.)

[30] (*Id.* at 7:15–17.)

OLPC's counsel then stated he wanted to "explore whether or not you provided information directly or indirectly."[31]  He asked: "Did you have any communications whether written or oral with anyone associated with Dentons concerning the Mareva Injunction?"[32]  Ephraim responded: "To the best of my recollection, no."[33]  OLPC's counsel also asked: "Did you communicate information concerning the Mareva Injunction to anyone who, to your knowledge, passed that information along to anyone at Dentons?"[34]  Ephraim again responded: "To the best of my recollection, no."[35]

From there, OLPC's counsel proceeded to question Ephraim about various documents from the Mareva injunction case, and about Ephraim's testimony regarding those documents during his first deposition.[36]  Ephraim's counsel objected that these questions did not flow from Ephraim's response to the agreed-upon question, but instructed Ephraim to answer.[37]  However, when OLPC's counsel began asking Ephraim about documents which were not Bates-numbered and had not previously been produced, Ephraim's counsel instructed him not to answer, asserting the questions fell outside the scope of deposition permitted by the court.[38]

---

[31] (*Id.* at 7:25–8:2.)

[32] (*Id.* at 8:3–5.)

[33] (*Id.* at 8:6.)

[34] (*Id.* at 8:13–15.)

[35] (*Id.* at 8:16.)

[36] (*See id.* at 8:19–13:18.)

[37] (*See id.* at 10:9–14, 11:15–21, 11:23–12:1.)

[38] (*See id.* at 13:19–18:21.)

As the deposition continued, Ephraim answered some additional questions, including denying having provided documents to Dentons indirectly through his mother, his sister, his brother, or his mother's divorce attorney.[39] But Ephraim's counsel instructed him not to answer other questions, objecting that they fell outside the permitted scope.[40] For example, counsel instructed Ephraim not to answer questions regarding whether he had "ever" communicated with anyone at Dentons through his sister, his brother, his mother's divorce attorney, or his own attorney.[41] OLPC's counsel then terminated the deposition without asking the other two agreed-upon questions.[42] The deposition lasted a little over an hour.[43]

## ANALYSIS

OLPC argues Ephraim's counsel improperly instructed him not to answer reasonable follow-up questions about the ways in which Ephraim may have indirectly provided information to Dentons for use in the Mareva injunction case.[44] OLPC also contends questions about specific documents reflected attempts to impeach Ephraim.[45] OLPC now seeks to compel Ephraim to sit for a fourth deposition to answer these questions, the other two questions initially agreed upon, and any other questions flowing

---

[39] (*See id.* at 18:23–19:2, 27:17–28:16.)

[40] (*See id.* at 25:24–27:7, 33:14–34:2.)

[41] (*See id.* at 26:9–27:7, 33:14–34:2.)

[42] (*See id.* at 34:23–35:1.)

[43] (*See id.* at 5:1, 35:9.)

[44] (*See* Second Mot. re Ephraim Dep. 1–2, Doc. No. 260.)

[45] (*See id.* at 2–3.)

naturally from his responses.[46] Ephraim argues the questioning in the third deposition exceeded the scope permitted by the court, and he opposes any further attempt to depose him.[47]

OLPC's motion is denied. The scope of the third deposition was strictly limited to the three agreed-upon questions and questions flowing naturally from Ephraim's responses. The court's prior order was not an invitation to re-depose Ephraim on broad topics related to the three agreed-upon questions. Notably, OLPC chose to ask only one of the three agreed-upon questions in the third deposition. Ephraim's response ("to the best of [his] knowledge") was a denial that he had provided information to Dentons to facilitate their efforts in seeking the Mareva injunction. Ephraim then answered all follow-up questions which could reasonably be considered as flowing naturally from this response. This included affirming that he would know if he had provided information to Dentons; denying ("to the best of [his] recollection") having had any communications with anyone associated with Dentons concerning the Mareva injunction; and denying providing documents to Dentons through various family members or his mother's divorce attorney.

The questions Ephraim's counsel instructed him not to answer fell outside the scope of the deposition permitted in the prior order. Questions regarding whether Ephraim had "ever" communicated with his mother's law firm through various intermediaries, for example, went well beyond natural follow-up questions. Members of

---

[46] (*See id.* at 3.)

[47] (*See* Def.'s Opp'n to Pl.'s Second Short Form Mot. to Compel Dep. of Ephraim Olson ("Opp'n"), Doc. No. 262.)

the Olson family are involved in contentious litigation against each other in a number of forums. Because discovery in this case should not be used as a fishing expedition for the other cases, the court has previously determined communications between Ephraim and his mother's attorneys are not relevant or discoverable unless they specifically relate to the issues in this case.[48] Thus, these questions exceeded the bounds of permissible discovery in this case—let alone the bounds of this limited-scope deposition.

Further, where fact discovery had been ongoing for years and was set to close a week after Ephraim's third deposition,[49] and given the limited scope of the deposition, it was reasonable for Ephraim's counsel to instruct him not to answer questions regarding documents which had never been produced or disclosed. Based on a review of the deposition transcript, it is not apparent how the questions regarding undisclosed documents flowed naturally from Ephraim's prior responses. Even considering OLPC's claim that it was trying to impeach Ephraim, these questions exceeded the permitted scope of the deposition.

Finally, where OLPC voluntarily terminated the third deposition without asking the other two agreed-upon questions, OLPC is not entitled to a do-over. OLPC deposed

---

[48] (*See* Mem. Decision and Order Granting in Part and Den. in Part Pl.'s Short Form Dis. Mot. Re. Def.'s Privilege Log 4, Doc. No. 95 ("OLPC has not demonstrated *all* communications between [Ephraim] and his mother's attorneys 'at any time' are relevant to the claims and defenses in this action. . . . [T]o the extent the requested communications relate to OLPC's confidential documents, these communications are relevant. However, communications between [Ephraim] and his mother's counsel which are unrelated OLPC's confidential documents are not relevant to the claims or defenses in this action.").)

[49] (*See* Twelfth Am. Scheduling Order, Doc. No. 248.)

Ephraim for seven hours in his first deposition and then for an additional hour in his third deposition.[50] OLPC has had ample opportunity to "fairly examine" Ephraim beyond the presumptive durational limits in the federal rules.[51] No additional deposition is warranted under the circumstances.

Both parties request an award of fees and costs incurred in connection with OLPC's motion. OLPC's request is denied, where OLPC did not prevail on the motion. Ephraim's request is also denied because, although OLPC did not prevail, OLPC's position was substantially justified.[52]

## CONCLUSION

OLPC's second motion[53] to compel an additional deposition of Ephraim is denied.

DATED this 2nd day of July, 2024.

BY THE COURT:

_Daphne A. Oberg_
Daphne A. Oberg
United States Magistrate Judge

---

[50] (*See* Opp'n 2–3, Doc. No. 262.)

[51] *See* Fed. R. Civ. P. 30(d)(1) ("Unless otherwise stipulated or ordered by the court, a deposition is limited to 1 day of 7 hours. The court must allow additional time consistent with Rule 26(b)(1) and (2) if needed to fairly examine the deponent or if the deponent, another person, or any other circumstance impedes or delays the examination.").

[52] *See* Fed. R. Civ. P. 37(a)(5)(B) (providing, if a motion to compel discovery is denied, a court must award reasonable expenses to the opposing party unless "the motion was substantially justified or other circumstances make an award of expenses unjust").

[53] (Doc. No. 260.)