UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH
CENTRAL DIVISION

| | |
|---|---|
| OL PRIVATE COUNSEL, LLC, a Utah limited liability company,<br><br>     Plaintiff,<br><br>v.<br><br>EPHRAIM OLSON, an individual,<br><br>     Defendant. | **MEMORANDUM DECISION AND ORDER:**<br><br>**(1) DENYING DEFENDANT'S RULE 37(c) MOTION FOR MANDATORY EXCLUSION OF UNTIMELY PRODUCED DOCUMENTS AND FOR SANCTIONS (DOC. NO. 308); AND**<br><br>**(2) PERMITTING LIMITED RULE 30(b)(6) DEPOSITION OF OLPC**<br><br>Case No. 2:21-cv-00455<br><br>District Judge David Barlow<br><br>Magistrate Judge Daphne A. Oberg |

Ephraim Olson has filed a motion under Rule 37(c) of the Federal Rules of Civil Procedure, seeking to exclude documents which he contends OL Private Counsel, LLC ("OLPC") untimely produced.[1]  Ephraim[2] also seeks sanctions in the form of attorneys' fees and costs associated with bringing this motion.[3]

As explained below, because Ephraim has failed to show exclusion or other sanctions are warranted for any of the documents at issue, his motion is denied.

---

[1] (Rule 37(c) Mot. for Mandatory Exclusion of Untimely Prod. Docs. and for Sanctions ("Mot."), Doc. No. 308.)

[2] Because this lawsuit involves several members of the Olson family, first names are used in this order, for clarity.

[3] (Mot. 3, Doc. No. 308.)

However, limited fact discovery will be permitted regarding the only category of documents Ephraim demonstrates was untimely produced: attorney billing records. Ephraim may, at his option, conduct a continued Rule 30(b)(6) deposition of OLPC— regarding the billing records produced on March 29 and April 1, 2024, and OLPC's claimed damages relating to those records.  OLPC shall make its Rule 30(b)(6) designee on this topic available for a deposition no later December 20, 2024.

## BACKGROUND

OLPC brought this action against Ephraim, its former employee, alleging he misappropriated OLPC's confidential client documents and shared them with his mother, Carolyn Olson, and/or her attorneys.[4]  OLPC alleges Ephraim obtained some documents through Timothy Akarapanich, a former employee of a related entity, who accessed the documents without authorization and transmitted them to Ephraim at Ephraim's request.[5]  OLPC claims Carolyn then used the misappropriated documents in a divorce and other litigation against Ephraim's father, Thomas Olson (OLPC's sole member/managing partner).[6]

OLPC filed this case in Utah state court in March 2021, and Ephraim removed the case to federal court in July 2021.[7]  A scheduling order was entered setting a deadline for initial disclosures of August 26, 2021.[8]  After numerous extensions of

---

[4] (*See* Ex. C to Notice of Removal, First Am. Compl., Doc. No. 2-2 at 35–52.)

[5] (*See id.*)

[6] (*See id.*)

[7] (*See* Notice of Removal, Doc. No. 2.)

[8] (Scheduling Order, Doc. No. 13.)

deadlines, fact discovery closed on April 1, 2024.[9]  Expert discovery closed on September 9, 2024,[10] the same day Ephraim filed the instant motion to exclude documents.[11]  After Ephraim filed his motion, the court granted the parties' stipulated request to stay the deadline to file dispositive motions, pending a ruling on the motion.[12]

<u>LEGAL STANDARDS</u>

As relevant here, Rule 26(a) requires a party to disclose "all documents, electronically stored information, and tangible things that the disclosing party has in its possession, custody, or control and may use to support its claims or defenses, unless the use would be solely for impeachment."[13]  "A party must make the initial disclosures at or within 14 days after the parties' Rule 26(f) conference unless a different time is set by stipulation or court order."[14]

Rule 26(e) requires a party to supplement its initial disclosures and discovery responses "in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the

---

[9] (Twelfth Am. Scheduling Order, Doc. No. 248.)

[10] (Fourteenth Am. Scheduling Order, Doc. No. 296.)  The court permitted the deposition of Ephraim's expert Andrew Morse to be taken after this deadline, on September 19, 2024.  (*See* Doc. No. 306.)

[11] (Mot., Doc. No. 308.)

[12] (Order Granting in Part Stipulated Mot. for Order Temporarily Staying Deadline for Dispositive Mots. and Mots. to Exclude Experts, Doc. No. 318.)

[13] Fed. R. Civ. P. 26(a)(1)(A)(ii).

[14] Fed. R. Civ. P. 26(a)(1)(C).

discovery process or in writing."[15]  "The timeliness of supplementation centers on when the disclosing-party reasonably should know that its disclosures are incomplete or incorrect."[16]

Rule 37(c) provides that "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless."[17]  This rule also permits the court to impose other sanctions "[i]n addition to or instead of" exclusion, including payment of attorneys' fees.[18]

But violations of Rule 26(e) are not automatically sanctionable; instead, they may be substantially justified or harmless under Rule 37(c)(1).[19]  In determining whether the violation is harmless, the court weighs: "(1) the prejudice or surprise to the party against whom the [evidence] is offered; (2) the ability of the party to cure the prejudice; (3) the extent to which introducing such [evidence] would disrupt the trial; and (4) the [nondisclosing] party's bad faith or willfulness."[20]

---

[15] Fed. R. Civ. P. 26(e)(1)(A).

[16] *Roper v. Crosby*, No. 4:22-cv-00061, 2023 U.S. Dist. LEXIS 167841, at *6 (D. Utah Sept. 20, 2023) (unpublished) (citation omitted).

[17] Fed. R. Civ. P. 37(c)(1).

[18] Fed. R. Civ. P. 37(c)(1)(A).

[19] *See HCG Platinum, LLC v. Preferred Prod. Placement Corp.*, 873 F.3d 1191, 1200 (10th Cir. 2017).

[20] *Id.* (quoting *Woodworker's Supply, Inc. v. Principal Mut. Life Ins. Co.*, 170 F.3d 985, 993 (10th Cir. 1999)).

ANALYSIS

Ephraim seeks to exclude numerous documents which he contends OLPC untimely produced throughout the course of discovery.  He argues OLPC purposefully withheld documents until after key depositions, made a voluminous last-minute production on the final day of fact discovery, and produced certain documents after the exchange of expert reports (nearly five months after the close of fact discovery).[21] Ephraim contends OLPC untimely produced documents it received in response to third-party subpoenas; documents responsive to Ephraim's discovery requests; documents supporting OLPC's burden-of-proof expert report; and other documents supporting OLPC's claims.[22]  According to Ephraim, OLPC possessed these documents for months (or even years) before belatedly producing them.[23]  Ephraim argues the untimely productions "prevented [him] from preparing for depositions, from taking critical fact discovery concerning the documents produced, and from preparing expert reports."[24]

In response, OLPC disputes Ephraim's timeline, including the dates the documents were available to OLPC and produced to Ephraim.[25]  OLPC contends it timely produced many of the documents at issue, and promptly supplemented its productions and disclosures when it identified new or inadvertently omitted

---

[21] (Mot. 1, Doc. No. 308.)

[22] (*See id.* at 1–2.)

[23] (*See id.* at 1–2, 13.)

[24] (*Id.* at 13.)

[25] (OL Private Counsel's Mem. in Opp'n to Ephraim Olson's Rule 37(c) Mot. for Mandatory Exclusion of Untimely Prod. Docs. and for Sanctions ("Opp'n") 1, 19–24, Doc. No. 327.)

documents.[26]  OLPC asserts any failure to promptly supplement was substantially justified and harmless.[27]  OLPC also argues Ephraim's motion should be denied because it is untimely under the local rule governing discovery disputes, and because he failed to meet and confer before filing it as required under this local rule.[28]

As an initial matter, Ephraim was not required to meet and confer with OLPC before filing this motion.  The District of Utah's local rules require conferral before bringing a motion to resolve a "discovery dispute."[29]  But a motion for exclusion of evidence or other sanctions under Rule 37(c)(1) is not a "discovery dispute" within the meaning of the local rule, and no conferral is required before bringing such a motion.[30]

Likewise, the deadlines in the local rule governing discovery disputes do not apply to Ephraim's motion.[31]  Therefore, OLPC's argument that Ephraim's motion is untimely under this rule fails.  Nevertheless, as OLPC notes, it produced many of the

---

[26] (*Id.*)

[27] (*Id.* at 1, 24–27.)

[28] (*Id.* at 1, 16–19.)

[29] DUCivR 37-1(a)(1), (b)(1).

[30] *See COP Coal Dev. Co. v. Rushton (In re C.W. Mining Co.)*, No. 2:10-cv-39, 2013 U.S. Dist. LEXIS 11239, at *15 (D. Utah Jan. 28, 2013) (unpublished) ("[T]here is no requirement to confer with opposing counsel before filing a motion to exclude evidence under Rule 37(c)." (citation omitted)); *cf. Walker v. Corizon Health, Inc.*, No. 17-2601, 2022 U.S. Dist. LEXIS 87257, at *12 (D. Kan. May 13, 2022) (unpublished) (finding conferral requirement under District of Kansas's local rules did not apply because a "Motion to Exclude under Rule 37(c) is a motion for sanctions for failing to comply with discovery obligations—it's not a 'motion to resolve a discovery dispute'" (citation omitted)).

[31] *See* DUCivR 37-1(a)(2), (b)(2)(C) (requiring a party raising a discovery dispute to identify the issue in a "prompt written communication" to the other party, and to file a discovery motion within forty-five days of this communication).

documents Ephraim now seeks to exclude months before Ephraim filed his motion. Indeed, as described below, OLPC produced most of the challenged documents during fact discovery, which closed more than four months before Ephraim filed the motion— and OLPC produced one set of documents nearly ten months before Ephraim filed the motion.  Rather than challenging the disclosures contemporaneously, Ephraim waited until the close of all discovery (and one month before the dispositive motions deadline)[32] to file a cumulative motion for sanctions—seeking to exclude a long list of disclosures made over the preceding ten months.  In some instances, the prejudice Ephraim now alleges could have been mitigated or prevented had he challenged the disclosures promptly within the discovery period.  The timing of Ephraim's motion suggests a calculated effort to justify a request for sanctions by stockpiling a list of grievances, rather than an effort to resolve discovery and disclosure issues as they arose.

Regardless of whether the timing of Ephraim's motion may independently warrant its denial, Ephraim's motion fails on the merits.  As explained below, except as to one category of documents (attorney billing records), Ephraim fails to demonstrate OLPC produced the documents untimely—and even if it did, any delay was harmless. As to the untimely-produced billing records, any harm can be cured by permitting limited additional discovery regarding those records at this stage.  Accordingly, Ephraim has not demonstrated exclusion or other sanctions are warranted.  For these reasons, Ephraim's motion is denied.

Each category of disputed documents is addressed below.

---

[32] (*See* Fourteenth Am. Scheduling Order, Doc. No. 296 (setting October 11, 2024 as the deadline to file dispositive motions).)  The dispositive motion deadline was later stayed.  (*See* Doc. No. 318.)

### A. Documents Responsive to Dodd & Kuendig Subpoena (KUENDIG 1–1138)

Ephraim contends OLPC untimely produced documents it received in response to a subpoena to Dodd & Kuendig, the law firm which represented Carolyn in the Utah divorce case.  Ephraim asserts OLPC received responsive documents from Dodd & Kuendig in April 2023 but failed to produce them to Ephraim until December 7, 2023, after using them in a November deposition.[33]  OLPC claims it did not receive the documents from Dodd & Kuendig until October 23, 2023, and argues any delay in producing them was harmless.[34]

The following facts are undisputed.  OLPC received a letter from Dodd and Kuendig in response to the subpoena on April 18, 2023.[35]  Ephraim's counsel emailed OLPC's counsel on October 9, 2023, to request that OLPC produce any documents received in response to the subpoena.[36]  OLPC's counsel responded the same day, stating it had not received any documents in response to the subpoena.[37]  On November 29, 2023, OLPC deposed Carolyn's divorce attorney, Patricia Kuendig.[38]  During the deposition, OLPC used documents Dodd & Kuendig had produced in

---

[33] (Mot., Facts ¶¶ 4–5, 10–14, Doc. No. 308.)

[34] (Opp'n, Facts ¶¶ 20–21, Doc. No. 327.)

[35] (*See* Ex. 4 to Decl. of Sarah C. Vaughn in Supp. of Rule 37(c) Mot. for Mandatory Exclusion of Untimely Prod. Docs. and for Sanctions ("Vaughn Decl."), Dodd & Kuendig Letter dated Apr. 18, 2023, Doc. No. 308-5.)

[36] (*See* Ex. 1 to Vaughn Decl., Email from S. Vaughn dated Oct. 9, 2023, Doc. No. 308-2 at 3.)

[37] (*See id.*, Email from D. Mortensen dated Oct. 9, 2023, Doc. No. 308-2 at 2.)

[38] (*See* Mot., Facts ¶ 9, Doc. No. 308.)

response to the subpoena.[39]  Noting OLPC had not produced those documents to Ephraim, immediately following Ms. Kuendig's deposition, Ephraim's counsel again asked OLPC to produce documents received from Dodd & Kuendig.[40]  OLPC produced the documents to Ephraim on December 7, 2023.[41]

The dispute relates to OLPC's possession date; the parties disagree as to when OLPC received the documents at issue.  Ephraim claims the April 18, 2023 letter from Dodd & Kuendig indicates the documents "were available to OLPC" on that date.[42] Based on this, Ephraim asserts OLPC received the responsive documents on April 18, "[i]n direct contradiction to OLPC's October 9th email."[43]

OLPC, on the other hand, asserts it did not receive responsive documents from Dodd & Kuendig until October 23, 2023.[44]  OLPC points out that Dodd & Kuendig's April 18, 2023 letter stated there were "no responsive documents."[45]  (As discussed in Part C below, contrary to Ephraim's claim that OLPC did not produce this letter until March

---

[39] (*See id.*)

[40] (Ex. 1 to Vaughn Decl., Email from S. Vaughn dated Nov. 29, 2023, Doc. No. 308-2 at 2.)

[41] (*See* Mot., Facts ¶ 13, Doc. No. 308.)

[42] (*Id.* ¶ 14.)

[43] (*Id.* ¶¶ 7, 9.)

[44] (Opp'n, Facts ¶ 20, Doc. No. 327.)

[45] (*Id.* ¶ 19.)

2024,[46] OLPC provides evidence it produced the letter to Ephraim on May 2, 2023.[47])
According to OLPC, after negotiating with Dodd & Kuendig for months, it finally received
the responsive documents on October 23[48] (after accurately telling Ephraim on October
9 it had not received any documents).  OLPC claims Ephraim had to be aware of this
production because a privilege log provided by Dentons (the law firm representing
Ephraim in Canada) shows Ms. Kuendig "had numerous conversations with Ephraim's
Canadian lawyers regarding the subpoena response" in the days leading up to the
production.[49]

The evidence submitted by the parties supports OLPC's timeline.  Consistent
with OLPC's claim, Dodd & Kuendig's letter stated there were "no responsive
documents,"[50] other than documents withheld based on privilege.[51]  The letter lacks any
mention of responsive documents being produced.  And Ephraim points to no other
evidence suggesting OLPC received documents from Dodd & Kuendig on April 18.
Moreover, emails attached to OLPC's opposition show OLPC was still negotiating with

---

[46] (*See* Mot., Facts ¶ 14, Doc. No. 308.)

[47] (*See* Opp'n ¶ 19, Doc. No. 327; Ex. 10 to Opp'n, Email from M. Call dated May 2, 2023, Doc. No. 327-12.)

[48] (*See* Opp'n ¶ 20, Doc. No. 327; Ex. 17 to Opp'n, Email from K. Porter dated Oct. 23, 2023, Doc. No. 327-19 at 2.)

[49] (Opp'n ¶ 20, Doc. No. 327; Ex. 3 to Opp'n, Dentons Privilege Log Entry Nos. 495, 1405–07, Doc. No. 327-5.)

[50] (Ex. 4 to Vaughn Decl., Dodd & Kuendig Letter dated Apr. 18, 2023 at 3, Doc. No. 308-5 (stating there were "no responsive documents" in response to the first two requests in the subpoena).)

[51] (*See id.* at 4–6 (asserting privilege for documents responsive to the third request in the subpoena, and providing a privilege log).)

Dodd & Kuendig as of October 11 regarding an extension of time to produce responsive documents and a privilege log—and Dodd & Kuendig emailed a link to the documents to OLPC on October 23.[52]  Thus, the evidence shows OLPC first received the documents on October 23, 2023.

This means OLPC only delayed producing the documents to Ephraim by six weeks (rather than seven-and-a-half months as Ephraim claims).  Ephraim does not address the Dodd & Kuendig documents in his reply; thus, he does not expressly argue this shorter delay qualifies as untimely.  Where Ephraim fails to make this argument, he has not demonstrated the documents were untimely produced.

Nevertheless, it is fair to expect OLPC to have produced the documents more promptly—at minimum, before using them in Ms. Kuendig's November 29 deposition (particularly where Ephraim specifically requested the documents shortly before OLPC received them).  But even assuming this makes OLPC's production untimely, the delay was harmless.  OLPC produced the Dodd & Kuendig documents to Ephraim in December—months before fact discovery closed (on April 1, 2024),[53] and long before any trial (a trial date has yet to be set).  Ephraim had ample time to conduct discovery related to the Dodd & Kuendig documents after they were produced.  Indeed, Ephraim does not identify any harm resulting from the delay in producing these specific documents.  While he argues generally that OLPC's allegedly untimely disclosures "prevent[ed] him from investigating OLPC's claims and damages" and "prevented [him]

---

[52] (*See* Ex. 17 to Opp'n, Emails between D. Mortensen and K. Porter dated Oct. 11, 2023 and Oct. 23, 2023, Doc. No. 327-19 at 2–4.)

[53] (*See* Twelfth Am. Scheduling Order, Doc. No. 248.)

from conducting discovery related to the documents,"[54] he does not identify any investigation or discovery he was unable to pursue based on the timing of OLPC's production.  As for OLPC's failure to produce the documents before Ms. Kuendig's deposition, Ephraim does not identify how this harmed him or altered his approach to the deposition. Thus, the delay was harmless.

Because any delay in producing the Dodd & Kuendig documents was harmless, Ephraim has not demonstrated these documents should be excluded or that any other sanctions are warranted based on this delay.

### B. Documents Responsive to Dentons Subpoena (PLF 2125–7362)

Ephraim next contends OLPC untimely produced documents received in response to a subpoena to Dentons, the law firm representing Carolyn and Ephraim in litigation against Thomas in Alberta, Canada.  Ephraim asserts OLPC produced these documents (totaling more than five thousand pages) on March 26, 2024—six days before the close of fact discovery and on the eve of OLPC's Rule 30(b)(6) deposition— despite having received them "months earlier" from Dentons.[55]  Ephraim contends OLPC asked him about some of these documents (including a privilege log labeled "Exhibit 36") during his March 25 deposition.[56]  Ephraim's counsel objected that the documents had not been produced, prompting OLPC's production of documents received from Dentons the next day.[57]

---

[54] (Mot. 13–14, Doc. No. 308.)

[55] (*Id.* ¶ 18.)

[56] (*Id.* ¶ 16.)

[57] (*Id.* ¶¶ 16–18.)

OLPC disputes Ephraim's timeline.  According to OLPC, Dentons initially

provided a privilege log and documents responsive to the subpoena on November 15,

2023, then provided a revised privilege log on November 22.[58]  OLPC asserts it

produced the revised privilege log and responsive documents to Ephraim on December

7, 2023.[59]  OLPC continued negotiating with Dentons regarding its subpoena response

during the following months, and on February 29, 2024, Dentons provided another

privilege log and additional documents.[60]  OLPC contends the privilege log labeled

"Exhibit 36" during Ephraim's March 25 deposition was the February 29 privilege log.[61]

OLPC then produced the February 29 privilege log and documents to Ephraim on

March 26, 2024.[62]

The evidence submitted by the parties supports OLPC's timeline.  The emails

attached to OLPC's opposition show Dentons sent documents to OLPC in November

2023 and February 29, 2024,[63] and OLPC sent documents received from Dentons to

---

[58] (Opp'n, Facts ¶ 22, Doc. No. 327.)  OLPC notes that the documents were initially sent to OLPC's Canadian attorneys, and OLPC's counsel in this case did not receive them until November 28.  (*Id.*)

[59] (*Id.*)

[60] (*Id.* ¶ 24.)

[61] (*Id.* ¶ 25.)

[62] (*Id.* ¶ 24.)

[63] (*See* Ex. 20 to Opp'n, Email from J. Thorlekson dated Nov. 15, 2023, Doc. No. 327-22; Ex. 21 to Opp'n, Email from J. Thorlekson dated Nov. 22, 2023, Doc. No. 327-23; Ex. 22 to Opp'n, Email from J. Thorlekson dated Feb. 29, 2024, Doc. No. 327-24; Ex. 23 to Opp'n, Email from A. LaBonte dated Feb. 29, 2024, Doc. No. 327-25.)

Ephraim on December 7, 2023 and March 26, 2024.[64]  OLPC also provided a

declaration from its counsel stating the documents OLPC received from Dentons in

November 2023 were produced to Ephraim on December 7, 2023.[65]  Ephraim, on the

other hand, fails to support his assertion that OLPC received the Dentons documents it

produced in March 2024 "months earlier."[66]  Ephraim cites only his counsel's

declaration,[67] but the declaration does not support this assertion.  Rather, the

declaration states OLPC produced five thousand pages of documents from Dentons on

March 26, 2024, and "[b]ased upon the metadata of the documents, I believe OLPC

received these documents from Dentons *by February 29, 2024*, if not earlier."[68]  In other

words, Ephraim's counsel's declaration supports OLPC's contention that it produced on

March 26 the documents it received on February 29.  Neither Ephraim's motion nor his

counsel's declaration cites other evidence supporting the assertion that OLPC received

these documents before February 29, 2024.

In sum, the evidence shows OLPC produced the documents it received on

November 15, 2023 to Ephraim only three weeks later, on December 7.  And OLPC

produced the documents it received on February 29, 2024 to Ephraim just under four

---

[64] (*See* Ex. 18 to Opp'n, Email from C. Anderson dated Dec. 7, 2023, Doc. No. 327-20; Ex. 24 to Opp'n, Email from C. Anderson dated Mar. 26, 2024, Doc. No. 327-26.)

[65] (Ex. 2 to Opp'n, Decl. of Monica Call in Supp. of Opp'n to Ephraim Olson's Rule 37(c) Mot. for Mandatory Exclusion of Untimely Prod. Docs. and for Sanctions ("Call Decl.") ¶ 8, Doc. No. 327-4.)

[66] (Mot., Facts ¶ 18, Doc. No. 308.)

[67] (*See id.* (citing Ex. A to Mot., Vaughn Decl. ¶ 41, Doc. No. 308-1).)

[68] (Ex. A to Mot., Vaughn Decl. ¶¶ 41–42, Doc. No. 308-1 (emphasis added).)

weeks later, on March 26.  Ephraim has not shown either production was untimely.

Ephraim does not argue the December 7 production was untimely; indeed, he fails to

acknowledge OLPC produced documents from Dentons on that date.  As for the March

26 production, a four-week delay was reasonable where the documents totaled more

than five thousand pages.

Even if the production had been untimely, any delay was harmless.  The only

Dentons document Ephraim specifically addresses in his motion is the February 29

privilege log ("Exhibit 36"), which Ephraim suggests OLPC should have produced before

introducing in his deposition.  But Ephraim's counsel objected during the deposition and

instructed Ephraim not to answer questions regarding the privilege log and other

documents which had not been produced.[69]  OLPC terminated the deposition shortly

thereafter.[70]  The court later denied OLPC's motion to compel a continued deposition of

Ephraim, finding OLPC's questions regarding the undisclosed documents (among other

topics) fell outside the permitted scope of the deposition.[71]  Where Ephraim did not

testify regarding the privilege log at his deposition, and the privilege log was produced

the next day, OLPC's failure to produce it before the deposition was harmless.  Ephraim

does not specifically address any other Dentons documents or identify how the timing of

---

[69] (*See id.* ¶ 39; Ex. 13 to Vaughn Decl., Dep. of Ephraim Olson (Mar. 25, 2024) 29:15–
31:25, Doc. No. 308-14.)

[70] (*See* Mem. Decision and Order Den. Pl.'s Second Short Form Disc. Mot. to Compel
Dep. of Ephraim Olson 7–8, Doc. No. 298 (describing Ephraim's March 25, 2024
deposition).)

[71] (*See id.* at 9–10.)  The March 25, 2025 deposition was Ephraim's third in this case,
and the court had previously limited the scope of the deposition to particular questions.
(*See id.*; Mem. Decision and Order Granting in Part and Den. in Part Pl.'s Short Form
Disc. Mot. to Compel Dep. of Ephraim Olson, Doc. No. 225.)

their production harmed him.  Where OLPC produced the Dentons documents before the close of fact discovery and well before any trial date, any delay in production was harmless.

Because OLPC timely produced the documents it received from Dentons in response to the subpoena, and any delay in production was harmless, Ephraim has not demonstrated the Dentons documents should be excluded or that other sanctions are warranted.

### C. Salt Lake Legal Document (SLL 1–5) and Non-Bates-Numbered Documents

Ephraim argues OLPC untimely produced certain documents on March 27, 2024, which OLPC had received in response to various third-party subpoenas.[72]  Ephraim states these documents included "a 4/17/14 Salt Lake Legal document" (Bates-numbered SLL 1–5) and "other non-Bates-numbered documents."[73]  He identifies the non-Bates numbered documents at issue as "the 4/18/23 Dodd & Kuendig letter" and "an October 2022 Carolyn Olson Supplemental Privilege Log."[74]  Ephraim asserts that "[s]ome [of these] documents were available as early as 4/18/2023."[75]

OLPC contends Ephraim already possessed these documents long before March 27, 2024, and provides emails showing when Ephraim received each document at issue.[76]  As set forth in the opposition and attached emails, OLPC produced a copy of

---

[72] (Mot. 1 & Facts ¶ 19, Doc. No. 308.)

[73] (*Id.*)

[74] (*Id.* ¶ 19.)

[75] (*Id.* at 1.)

[76] (Opp'n, Facts ¶¶ 10–14, Doc. No. 327; Exs. 5–11 to Opp'n, Doc. Nos. 327-7–327-13.)

the Salt Lake Legal document to Ephraim on February 13, 2023.[77]  Ephraim then

requested an "original copy" of the document directly from Salt Lake Legal the same

day, and the following day, Salt Lake Legal provided the version Bates-numbered SLL

1–5 (and later produced by OLPC in March 2024).[78]  As to the non-Bates-numbered

documents, OLPC produced the April 18, 2023 Dodd & Kuendig letter to Ephraim on

May 2, 2023.[79]  And Carolyn Olson's October 2022 supplemental privilege log was

provided by Carolyn's counsel directly to both Ephraim and OLPC simultaneously on

October 27, 2022.[80]  Although not specifically discussed in Ephraim's motion, OLPC

also provides evidence that all other non-Bates-numbered documents produced on

March 27 (privilege logs and subpoena responses) had been previously provided to

Ephraim.[81]  According to OLPC, it again produced these documents on March 27, 2024,

but only because Ephraim erroneously claimed they had not been produced.[82]

---

[77] (*See* Opp'n, Facts ¶ 11, Doc. No. 327; Ex. 5 to Opp'n, Email from M. Call dated Feb. 13, 2023, Doc. No. 327-7 at 5.)

[78] (Opp'n, Facts ¶ 12, Doc. No. 327; Ex. 5 to Opp'n, Email from S. Vaughn dated Feb. 13, 2023, Doc. No. 327-7 at 5; Ex. 6 to Opp'n, Email from M. Eyre dated Feb. 14, 2023, Doc. No. 327-8.)

[79] (Opp'n, Facts ¶ 13(d), Doc. No. 327; Ex. 10 to Opp'n, Email from M. Call dated May 2, 2023, Doc. No. 327-12.)

[80] (Opp'n, Facts ¶ 13(e), Doc. No. 327; Ex. 11 to Opp'n, Email from L. Platt dated Oct. 27, 2022, Doc. No. 327-13.)

[81] (*See* Opp'n, Facts ¶ 13(a)–(c), (e), Doc. No. 327; Ex. 7 to Opp'n, Email from J. Stultz dated Apr. 5, 2022, Doc. No. 327-9; Ex. 8 to Opp'n, Email from L. Platt dated May 23, 2023, Doc. No. 327-10; Ex. 9 to Opp'n, Email from L. Platt dated May 25, 2023, Doc. No. 327-11; Ex. 11 to Opp'n, Email from L. Platt dated Oct. 27, 2022, Doc. No. 327-13.)

[82] (*See* Opp'n ¶ 14, Doc. No. 327.)

In reply, Ephraim does not dispute he possessed these documents before March 27, 2024, nor does he refute OLPC's evidence regarding when he originally received them.  Instead, he argues OLPC was required to separately produce (or re-produce) the documents as a supplement to its Rule 26(a)(1)(A) initial disclosures.[83]  Ephraim claims that although he already possessed the documents, he was unaware of OLPC's intent to rely on (1) the version of the document at Bates-number SLL 1–5, and (2) the privilege logs and attorney communications provided by third parties in response to subpoenas.[84]

As an initial matter, it is troubling that Ephraim fails to acknowledge in his original motion that he possessed the documents at issue before the March 27 production.  His motion does not make clear that he seeks to exclude documents already in his possession, based on a theory that OLPC was required to separately disclose or produce them as a supplementation to initial disclosures.  He raises this argument for the first time in his reply.  By failing to acknowledge he already possessed the documents, Ephraim implies he received them for the first time on March 27, 2024.  This is misleading.

As for the Salt Lake Legal document, OLPC's unrefuted evidence shows OLPC produced a copy of this document to Ephraim on February 13, 2023.  And the next day, Ephraim obtained the version of the document later produced by OLPC in March 2024.  Thus, as of February 2023, Ephraim was aware of OLPC's intent to rely on this

---

[83] (*See* Reply Mem. in Supp. of Ephraim Olson's Rule 37(c) Mot. for Mandatory Exclusion of Untimely Prod. Docs. and for Sanctions ("Reply") 22–23, Doc. No. 344.)

[84] (*See id.*)

document and had both versions in his possession.  Ephraim does not explain how the two versions differ (if at all), nor how he was harmed by the timing of OLPC's March 2024 production (which was still before the close of fact discovery).  Under these circumstances, OLPC's production of the document was timely, and any delay in producing another version of the same document was harmless.

As for the non-Bates-numbered documents (privilege logs and subpoena responses), OLPC's unrefuted evidence shows these documents were timely provided to Ephraim—either by third parties when they responded to the subpoenas, or by OLPC shortly after receiving them.  This includes the only non-Bates-numbered documents specifically addressed in Ephraim's motion: the April 18, 2023 Dodd & Kuendig letter, which OLPC provided to Ephraim on May 2, 2023, and Carolyn Olson's supplemental privilege log, which Carolyn transmitted to Ephraim and OLPC in the same email in October 2022.

Contrary to Ephraim's argument in his reply, OLPC was not required to separately disclose or re-produce these documents as a supplement to its initial disclosures.  First, Ephraim waived this argument by raising it for the first time in a reply.[85]  Second, even if not waived, the argument fails.  There is no duty to supplement under Rule 26(e) "if the additional or corrective information has [] otherwise been made

---

[85] *See WildEarth Guardians v. U.S. Env't Prot. Agency*, 770 F.3d 919, 933 (10th Cir. 2014) (holding that generally a party waives an argument raised for the first time in a reply brief).

known to the other parties during the discovery process or in writing."[86]  The privilege

logs and subpoena responses were provided to Ephraim during discovery in this case.

Ephraim relies on *Martino v. Kiewit New Mexico Corp.*,[87] an unpublished Fifth

Circuit case, for the proposition that "even if a document is publicly available or in the

opposing party's possession, a party must still disclose it under Rule 26(a)(1)(A) to

provide notice of evidence central to its claims or defenses."[88]  But *Martino* addressed a

"public document" which was "equally available to both parties" but had never been

disclosed or produced in the case.[89]  Here, by contrast, the documents at issue were

provided by third parties *in response to OLPC's subpoenas issued during discovery in*

*this case*—and timely provided to Ephraim.  Ephraim cites no authority supporting the

proposition that a party is required to separately disclose its intent to rely on subpoena

responses under these circumstances.  Thus, OLPC is entitled to rely on the privilege

logs and subpoena responses here (which were timely provided to Ephraim) without

separately supplementing its initial disclosures.

Even if OLPC were required to supplement its initial disclosures with the

subpoena responses at issue, the timing of the March 27, 2024 disclosure was

harmless.  The documents were already in Ephraim's possession, and the disclosure

occurred before the close of fact discovery and well before any trial date.  Ephraim has

---

[86] Fed. R. Civ. P. 26(e)(1)(A); *see also Brandt v. Honnecke*, No. 15-cv-02785, 2018 U.S. Dist. LEXIS 245934, at *7 (D. Colo. May 22, 2018) (unpublished).

[87] 600 F. App'x 908 (5th Cir. 2015) (unpublished).

[88] *Id.* at 911.

[89] *Id.*

not identified any investigation or discovery he was unable to pursue based on the timing of this disclosure.

For all these reasons, Ephraim has not shown the Salt Lake Legal document or non-Bates-numbered documents should be excluded or that other sanctions are warranted.

**D. Emails, Carolyn Olson Affidavit, and Billing Records (OLPC 13893–14909)**

Ephraim contends OLPC untimely produced documents supporting its claims and damages on March 29 and April 1, 2024 (the close of fact discovery).[90] These documents include an affidavit from Carolyn Olson, emails from 2019 and 2020, and billing records from OLPC's counsel. Each category is addressed in turn.

1. Carolyn Olson Affidavit (OLPC 13893–14196)

The March 29 production included an affidavit from Carolyn which she filed in 2020 in a lawsuit against Thomas in Alberta, Canada, seeking to freeze Thomas' assets (the "Mareva injunction" case).[91] OLPC contends it provided this affidavit to Ephraim numerous times before March 29, 2024.[92] As set forth in OLPC's opposition and supporting exhibits, OLPC gave the affidavit to Ephraim during a deposition of Carolyn

---

[90] (Mot., Facts ¶¶ 38–44 [pp. 7–8], Doc. No. 308.) Some paragraphs in the fact section of Ephraim's motion have duplicate numbering. Accordingly, citations to these paragraphs also include page numbers in brackets.

[91] (*See* Opp'n, Facts ¶ 17, Doc. No. 327.)

[92] (*Id.*)

on July 8, 2022; it produced the affidavit without exhibits on August 30, 2022; and it produced the affidavit with exhibits on June 2, 2023.[93]

OLPC has shown it timely produced Carolyn's affidavit. Ephraim does not address this affidavit in his reply, nor does he refute OLPC's evidence that it provided the affidavit to him in discovery long before March 29, 2024. In fact, the affidavit was filed on the docket in this case in June 2023 and numerous times thereafter in connection with discovery motions.[94] Ephraim has shown no basis to exclude the affidavit.

   2.  <u>Emails from 2019 and 2020 (OLPC 14197–99, 14234–827, 14830–48)</u>

OLPC's March 29 and April 1 productions included documents Ephraim describes only as "emails dated 2019 and 2020."[95] Ephraim does not otherwise specifically address these emails in his motion.

According to OLPC, "[t]he emails and attached documents are primarily trust documents that Ephraim misappropriated and used in other litigation against OLPC."[96] OLPC asserts Mr. Akarapanich downloaded the emails from OLPC's servers with confidential documents attached—and then sent the confidential documents to

---

[93] (*See id.*; Ex. 14 to Opp'n, Email from J. D'Emmanuel-Rodriguez dated Aug. 30, 2022, Doc. No. 327-16; Ex. 15 to Opp'n, Email from M. Bevan dated June 2, 2023, Doc. No. 327-17.)

[94] (*See* Doc. No. 159 (filed June 27, 2023); Doc. No. 166 (filed July 11, 2023); Doc. No. 179-1 (filed August 3, 2023); Doc. No. 184-5 (filed August 10, 2023).)

[95] (Mot. 1–2 & Facts ¶ 39, Doc. No. 308.)

[96] (Opp'n, Facts ¶ 41, Doc. No. 327; *see also* Ex. 2 to Opp'n, Call Decl. ¶ 16, Doc. No. 327-4.)

Ephraim.[97]  OLPC states that "[w]hen it realized the cover emails had not been produced, it promptly produced them."[98]  OLPC argues Ephraim is not prejudiced by the timing of the cover emails' production because "[t]heir only relevance is that the attachments were downloaded from OLPC's server to [Mr. Akarapanich's] [p]hone."[99]  OLPC also notes that "Ephraim had access to the [p]hone and the opportunity to depose OLPC's expert about those documents and chose not to do so."[100]

Where Ephraim's motion includes no argument specifically addressing these emails, Ephraim has not demonstrated their production was untimely, or that exclusion is warranted (even if they were untimely).  The emails were produced during fact discovery, and well before any trial date.  Ephraim has not identified any investigation or discovery he was unable to pursue related to these emails.  Further, there is no basis to conclude OLPC withheld the emails willfully or in bad faith.  OLPC indicates the failure to produce to the emails earlier was inadvertent, and Ephraim has presented no evidence o the contrary.  Under these circumstances, exclusion is unwarranted.

3. <u>Attorney Billing Records (OLPC 14200–33, 14828–29, 14849–909)</u>

The March 29 and April 1 document productions included attorney invoices billed to OLPC for other litigation, which OLPC claims as damages in this case.[101]  The billing records produced on March 29 were from Foley & Lardner, the law firm representing

---

[97] (*See* Opp'n 21, 27, Doc. No. 327.)

[98] (*Id.* at 21.)

[99] (*Id.* at 27.)

[100] (*Id.*)

[101] (*See* Mot., Facts ¶¶ 39–44, Doc. No. 308; Opp'n ¶ 38, Doc. No. 327.)

OLPC in this case.[102]  Ephraim argues these records were untimely produced because

Foley & Lardner had access to its own billing records at any point during the litigation.[103]

The billing records produced on April 1 were from other law firms, and included invoices

dated December 31, 2020; September 21, 2023; October 12, 2023; November 7, 2023;

December 7, 2023; December 31, 2023; February 5, 2024; and March 5, 2024.[104]

Ephraim notes all these billing records were produced after OLPC's final Rule 30(b)(6)

deposition on March 27, 2024, and OLPC's damages expert later relied on the invoices

to support his opinions.[105]

In its opposition, OLPC argues Ephraim has known—at least since OLPC's first

Rule 30(b)(6) deposition in February 15, 2023—that it is claiming the fees incurred in

litigation as damages caused by Ephraim's alleged misappropriation.[106]  OLPC notes

Ephraim's counsel questioned its witness about those damages in that Rule 30(b)(6)

deposition.[107]  OLPC argues that even though Ephraim never requested billing records

or other documents supporting OLPC's damages calculation, OLPC timely

supplemented its disclosures by producing the billing records on March 29 and April 1,

---

[102] (*See* Mot., Facts ¶ 41, Doc. No. 308.)

[103] (*See id.*)

[104] (*See id.* ¶ 43.)

[105] (*See id.* at 13 & Facts ¶¶ 37–38 [p. 7], ¶ 44.)

[106] (*See* Opp'n, Facts ¶ 37, Doc. No. 327.)

[107] (*Id.*; Ex. 34 to Opp'n, Rule 30(b)(6) Dep. of OLPC (Feb. 15, 2023) ("First OLPC Dep.") 163:5–174:3, Doc. No. 329-3 (sealed).)

2024.[108]  OLPC also contends any delay was harmless, noting Ephraim could have deposed its damages expert but chose not to, and Ephraim's own expert relied on the same billing records in his counter report.[109]

In reply, Ephraim challenges OLPC's claim that its February 2023 Rule 30(b)(6) deposition provided adequate notice of the legal fees supporting OLPC's damages calculation.[110]  Ephraim notes that OLPC's designee (Thomas Olson) testified no legal bills yet existed, and merely stated "[w]hen the work is all done and tallied up, they will be billed."[111]  Despite this representation, some of the billing records produced on March 29 and April 1, 2024 predated the February 2023 deposition—including an invoice dated December 31, 2020 for legal fees of more than $100,000, which OLPC seeks to recover as damages from Ephraim.[112]  Additionally, the billing records include legal fees for cases filed before the February 2023 deposition.[113]

Ephraim also argues the opportunity to depose OLPC's damages expert did not mitigate the harm of the untimely disclosure, because Ephraim was prevented from conducting fact discovery regarding the validity of the claimed damages.[114]  Finally,

---

[108] (*See* Opp'n, Facts ¶¶ 37–38, Doc. No. 327.)

[109] (*See id.* at 26–27 & Facts ¶¶ 39–40.)

[110] (*See* Reply 4–5, Doc. No. 344.)

[111] (*See id.*; Ex. D to Reply, First OLPC Dep. 163:5–15, Doc. No. 344-4.)

[112] (*See* Reply 5, Doc. No. 344; Ex. E to Reply, Invoice from Peacock Linder Halt & Mack, Doc. No. 346-2 (sealed).)

[113] (*See* Reply 5, Doc. No. 344; Ex. F to Reply, "Matter Financial Summary Report" from Foley & Lardner for *Burton v. Lemons*, Doc. No. 346-3 (sealed).)

[114] (*See* Reply 18–19, Doc. No. 344.)

Ephraim refutes OLPC's claim that his expert relied on the billing records.[115]  Ephraim notes his expert merely stated the invoices were so heavily redacted, the expert was "not able to determine whether or not the work was related to" Ephraim's alleged misappropriation of documents.[116]

As explained below, Ephraim has shown OLPC's disclosure of the billing records was untimely and deprived him of the ability to conduct related discovery. Nevertheless, because the harm can be mitigated by reopening discovery to permit a continued Rule 30(b)(6) deposition regarding the records and related damages, exclusion is unwarranted.

i.   Timeliness

As an initial matter, OLPC was required to disclose documents supporting its claimed damages under Rule 26(a)(1)(A) "without awaiting a discovery request."[117]  In other words, the fact that Ephraim did not issue discovery requests for the billing records is irrelevant.

OLPC's disclosure of the billing records supporting its damages calculation on March 29 and April 1, 2024 (the close of fact discovery) was untimely.  Initial disclosures

---

[115] (*Id.* at 19.)

[116] (*Id.*; Ex. I to Reply, Expert Witness Rep. of R. Brad Townsend ("Townsend Report") ¶¶ 32, 47, 62, Doc. No. 344-9.)

[117] Fed. R. Civ. P. 26(a)(1)(A) ("[A] party must, without awaiting a discovery request, provide to the other parties: . . . (iii) a computation of each category of damages claimed by the disclosing party—who must also make available for inspection and copying as under Rule 34 the documents or other evidentiary material, unless privileged or protected from disclosure, on which each computation is based . . . .").

under Rule 26(a)(1) were due on August 26, 2021,[118] and OLPC was required to

supplement its initial disclosures "in a timely manner" after that date.[119]  Notably, the

December 1, 2020 invoice already existed as of the date initial disclosures were due.

Although the Foley & Lardner billing report is dated March 28, 2024, it shows all legal

fees up to that date for a case filed two years earlier, in March 2022 (the "*Burton v.*

*Lemons* case").[120]  And the dates of the remaining seven invoices (from other law firms)

ranged from September 21, 2023 through March 5, 2024.  In other words, most of the

billing records supporting OLPC's claimed damages were available to OLPC months or

years before the close of fact discovery.  OLPC does not explain why it did not produce

any of these records until the close of fact discovery (or three days prior).  Under these

circumstances, the billing records were untimely disclosed, without substantial

justification.

>    ii.    *Harm*

The question, then, is whether the untimely disclosure of the billing records is

harmless.  OLPC's failure to produce these records until the close of fact discovery

deprived Ephraim of the ability to conduct follow-up fact discovery related to these

records.  Ephraim specifically notes OLPC provided the records after its Rule 30(b)(6)

depositions, meaning Ephraim was unable to question OLPC's designee about them.[121]

---

[118] (*See* Scheduling Order, Doc. No. 13.)

[119] Fed. R. Civ. P. 26(e)(1)(A).

[120] (*See* Ex. F to Reply, "Matter Financial Summary Report" from Foley & Lardner for
*Burton v. Lemons*, Doc. No. 346-3 (sealed); Ex. G to Reply, Docket in *Burton v.
Lemons*, Case No. 220901538 (Utah Third Dist. Ct., filed Mar. 9, 2022).)

[121] (*See* Mot., Facts ¶¶ 37–44 [pp.7–8], Doc. No. 308; *see also* Reply 17, Doc. No. 344.)

Nevertheless, OLPC suggests Ephraim was not prejudiced for three reasons: (1) Ephraim was aware of OLPC's damages theory based on the February 2023 Rule 30(b)(6) deposition, (2) he had an opportunity to depose OLPC's damages expert, and (3) Ephraim's expert relied on the records.  None of these arguments is persuasive.

First, OLPC has not shown the February 2023 Rule 30(b)(6) deposition testimony was an adequate substitute for producing the billing records before discovery closed. Based on the portions of the transcript OLPC provided, its designee did not provide any estimate of the amount of legal fees OLPC claimed as damages,[122] nor did he identify all the cases for which OLPC seeks to recover it fees from Ephraim.[123]  For example, the designee did not mention the *Burton v. Lemons* case, for which OLPC now seeks to recover more than $100,000 in legal fees billed by Foley & Lardner (OLPC's counsel in this case).[124]  OLPC's designee also testified (incorrectly) that no billing records supporting damages yet existed.[125]  Thus, although OLPC's designee disclosed OLPC's general theory of damages, OLPC did not disclose the information in the billing records to Ephraim before the close of fact discovery.

---

[122] (*See* Ex. 34 to Opp'n, First OLPC Dep. 173:20–23, Doc. No. 329-3 (sealed) ("Q.[:] Okay.  And my understanding is that sitting here today, you cannot quantify those damages for me; is that right?  A.[:]  Today I can't quantify them.").)

[123] (*See id.* at 166:16–167:8, Doc. No. 329-3 (mentioning Thomas and Carolyn's divorce, the Mareva injunction case, and unspecified "[l]awsuits in Canada" as potential sources of damages).)

[124] (*See* Ex. F to Reply, "Matter Financial Summary Report" from Foley & Lardner for *Burton v. Lemons*, Doc. No. 346-3 (sealed); Ex. 16 to Mot., Expert Witness Rep. of Richard S. Hoffman ("Hoffman Report") 4, Doc. No. 310-1 (sealed).)

[125] (*See* Ex. 34 to Opp'n, First OLPC Dep. 163:12–15, Doc. No. 329-3 (sealed) ("Q[:] And where are those bills?  Do they exist today?  A[:] No.  When the work is all done and tallied up, they will be billed.").)

Second, OLPC has not shown Ephraim's opportunity to depose OLPC's damages expert would have cured the harm caused by the untimely disclosure. OLPC's expert's report tallies the legal fees incurred in three cases, but merely relies on OLPC's allegations regarding causation, stating: "I understand it is Plaintiff's contention that these legal fees would not have been incurred had Ephraim Olson not wrongfully obtained and shared [OLPC's] Confidential Documents."[126]  Because OLPC produced the billing records after its Rule 30(b)(6) depositions, and OLPC's designee did not identify all the cases for which OLPC now seeks fees, Ephraim had no opportunity to question OLPC regarding its contention that Ephraim's actions caused the specific legal fees set forth in the billing records.  Where OLPC's expert merely relies on OLPC's allegations regarding causation, a deposition of the expert is an inadequate substitute for fact discovery on this issue.

Third, the mention of the billing records in Ephraim's expert's counter report does not render the untimely disclosure harmless.  As Ephraim notes, the counter report merely indicates Ephraim's expert could not determine whether the legal fees related to Ephraim's actions because the billing records are so heavily redacted.[127]  This statement underscores the harm resulting from the untimely disclosure, where Ephraim had no opportunity to question OLPC's designee regarding the billing records.

In sum, the timing of OLPC's disclosure of the billing records deprived Ephraim of the opportunity to conduct fact discovery regarding OLPC's claimed damages, and this harm was not cured by OLPC's prior Rule 30(b)(6) depositions or expert discovery.

---

[126] (Ex. 16 to Mot., Hoffman Report 3, Doc. No. 310-1 (sealed).)

[127] (Ex. I to Reply, Townsend Report ¶¶ 32, 47, 62, Doc. No. 344-9.)

Nevertheless, the harm resulting from the untimely disclosure can be cured at this stage by reopening discovery to allow a continued Rule 30(b)(6) deposition of OLPC regarding the billing records and related damages claims.  Ephraim's motion does not specifically identify any other fact discovery he would have pursued related to the billing records had they been timely produced before discovery closed.  Reopening discovery for a single, limited deposition will be minimally disruptive at this stage of the case, where no dispositive motions have yet been filed and no trial date has been set.

Because any harm resulting from OLPC's untimely disclosure of billing records can be cured at this stage by permitting limited additional discovery, exclusion is not warranted under Rule 37(c).  Instead, Ephraim will be permitted to conduct a continued Rule 30(b)(6) deposition of OLPC regarding the billing records and OLPC's claimed damages relating to those records.

### E.  Documents from Mr. Akarapanich's Phone and OLPC's Servers

Ephraim next contends OLPC untimely produced documents and data from Mr. Akarapanich's cell phone and OLPC's servers.[128]  These include:

- a spreadsheet containing data from Mr. Akarapanich's phone, produced on March 18, 2024 (OLPC 13466);

- a spreadsheet containing logs from OLPC's servers, produced on March 18, 2024 (OLPC 13468);

---

[128] (*See* Mot. 2, Facts ¶¶ 28–36 [pp. 6–7], ¶¶ 27–37 [pp. 8–10], Doc. No. 308.)

- data from OLPC's servers and Mr. Akarapanich's phone produced on July 12, 2024—with the report of OLPC's retained forensic expert, Daniel Regard (OLPC 14910–14911 & AKARAPANICH 1447–2151);

- additional data from OLPC's servers and Mr. Akarapanich's phone produced on August 30 and September 4, 2024, in support of Mr. Regard's report (OLPC 14912–15053 & AKARAPANICH 2152–2881); and

- an errata to Mr. Regard's report provided on September 4, 2024.[129]

Ephraim claims these documents were available to OLPC years before they were produced.  Specifically, Ephraim argues the documents and data from Mr. Akarapanich's phone were available to OLPC in October 2020, when OLPC obtained the phone from Mr. Akarapanich.[130]  Ephraim contends the server logs produced on March 18, 2024 were available to OLPC in July 2020 and early 2022, citing OLPC's Rule 30(b)(6) testimony that the logs were pulled from backups of OLPC's servers from July 2020 and early 2022.[131]  And a chart in Ephraim's motion indicates the server data produced with Mr. Regard's report was available to OLPC on various dates in 2020 and 2021 (although the factual basis for these dates is not explained).[132]

Ephraim asserts the spreadsheets produced on March 18, 2024 are responsive to discovery requests he issued in 2022, and he argues their production—only weeks

---

[129] (*See id.* at 2.)

[130] (*See id.* ¶¶ 31, 35 [pp. 9–10].)

[131] (*See id.* at 2, Facts ¶¶ 33–36 [p. 7].)

[132] (*See id.* at 2.)

before the close of fact discovery—was untimely.[133]  In his motion, Ephraim does not expressly state when he believes the documents supporting Mr. Regard's report should have been produced, nor whether those documents were responsive to discovery requests.  But he appears to suggest OLPC should have produced them during fact discovery as initial or supplemental disclosures because they support OLPC's claims.[134] He also notes that OLPC produced additional documents supporting Mr. Regard's report on August 30 and September 4, 2024—only after Ephraim's retained expert, Matthew Morrise, provided a counter report identifying information mentioned in Mr. Regard's report which had not been produced.[135]

In response, OLPC argues it timely produced the documents and data on March 18 and July 12, 2024, shortly after Mr. Regard discovered them during the course of his forensic analysis of Mr. Akarapanich's phone and OLPC's servers.[136]  OLPC asserts it did not produce this technical data earlier because OLPC first learned it existed when

---

[133] (*See id.* ¶ 28 [p.6].)  Specifically, Ephraim contends the spreadsheets are responsive to his requests for production 9 and 12.  (*Id.*)

[134] (*See id.* ¶ 28 [p. 9] (noting Mr. Regard's report relied on information and data "which OLPC did not produce during fact discovery"); *id.* at 11 (arguing "OLPC blatantly and repeatedly violated its Rule 26 disclosure requirements, including by . . . producing key documents allegedly supporting its case-in-chief more than 5 months after the close of fact discovery" (emphasis omitted)).)  The only documents OLPC produced more than five months after the close of fact discovery were the errata to Mr. Regard's report and accompanying data from Mr. Akarapanich's phone, which OLPC provided on September 4, 2024.

[135] (*See id.* ¶ 28 [p. 9]; *id.* at 13 (asserting "OLPC waited to produce documents and evidence in its possession to support its case-in-chief expert reports until after Ephraim's experts incurred time and expense in drafting rebuttal reports").)

[136] (*See* Opp'n, Facts ¶¶ 28, 30, Doc. No. 327.)

Mr. Regard examined the phone and servers.[137]  And OLPC claims it promptly supplemented its production on August 30 and September 4 when it learned certain documents and data had been inadvertently omitted, based on Mr. Morrise's August 12 counter report.[138]

OLPC also claims Ephraim has only requested limited information from Mr. Akarapanich's phone during this litigation, "[a]pparently for tactical reasons."[139]  OLPC notes that although Ephraim initially asked OLPC to produce the phone for inspection, the parties agreed in April 2023 to have a neutral forensics company image the phone.[140]  Thereafter, Ephraim requested certain files from the phone, which were produced.[141]  OLPC notes the court's subsequent discovery orders permitted Ephraim to propose search terms to obtain additional information from the phone, but Ephraim never proposed search terms or requested additional information.[142]  OLPC also notes that Mr. Morrise testified in his deposition that he chose not to request access to the "primary electronic sources" (such as Mr. Akarapanich's phone) after discussing the

---

[137] (*See id.* at 22.)

[138] (*See id.* ¶¶ 32–33.)  OLPC also contends most of the information Mr. Morrise claimed was missing had been produced earlier, as OLPC explained in an August 30 letter to Ephraim.  (*See id.*)

[139] (*See id.* ¶ 27.)

[140] (*See id.* ¶ 27(a)–(b).)

[141] (*Id.* ¶ 27(c).)

[142] (*Id.* ¶ 27(e)–(i).)

matter with Ephraim's counsel.[143]  And Mr. Morrise testified Ephraim's counsel never provided him with the supplemental documents and data which OLPC produced on August 30 and September 4.[144]

In reply, Ephraim argues the technical data from the phone and servers should have been produced earlier because OLPC was "under an obligation to timely investigate its claims and provide all documents it intended to rely upon voluntarily and during fact discovery," notwithstanding future expert analysis.[145]  Additionally, Ephraim asserts he did not have access to Mr. Akarapanich's phone during this litigation, and argues he was denied access pursuant to the court's prior discovery orders.[146]  Ephraim then suggests that "[h]ad OLPC disclosed to Ephraim or the Court that it intended to provide the complete, physical phone to its expert, the Court surely would have required complete production of [Mr. Akarapanich's] phone to Ephraim."[147]

First addressed below are the parties' divergent assertions regarding Ephraim's access to Mr. Akarapanich's phone during this litigation, followed by Ephraim's argument that OLPC was required to produce technical data from the phone and

---

[143] (*See id.* ¶ 35; Ex. 28 to Opp'n, Dep. of Matthew Morrise ("Morrise Dep.") 73:18–79:7, 99:2–5, 101:4–102:25, 156:2–157:1, 176:2–24, 177:5–180:19, 209:7–11, Doc. No. 327-30.)

[144] (Opp'n, Facts ¶ 35, Doc. No. 327; Ex. 28 to Opp'n, Morrise Dep. 100:4–12, 153:6–154:14, Doc. No. 327-30.)

[145] (Reply 15, Doc. No. 344.)

[146] (*Id.* at 4 ("OLPC persuaded the Court that it need not produce [Mr. Akarapanich's] phone to Ephraim but that limited production of documents from the phone would be adequate.").)

[147] (*Id.*)

servers before its expert performed a forensic analysis.  Then, each category of documents at issue is addressed.

    1.  <u>Ephraim's Access to Mr. Akarapanich's Phone</u>

As an initial matter, Ephraim's assertion that he was denied access to Mr. Akarapanich's phone pursuant to this court's orders is incorrect.  Ephraim never moved to compel OLPC to produce the phone for inspection, and the court never entered an order addressing that issue.

Ephraim filed two prior motions regarding Mr. Akarapanich's phone: a motion to compel production of data from the phone[148] and a motion for spoliation sanctions.[149] Before bringing the motion to compel, Ephraim propounded a request for production of the physical phone for inspection.[150]  After OLPC objected on various grounds, the parties agreed (without court intervention) to hire a third-party ESI vendor to forensically image the phone.[151]  The agreed-upon ESI vendor (Consilio) imaged the phone and provided a spreadsheet to both parties detailing the information gathered.[152]  Based on this spreadsheet, Ephraim identified various categories of data for production.[153]  After

---

[148] (Def.'s Short Form Disc. Mot. Re. Tim Akarapanich Cellular Phone, Doc. No. 206.)

[149] (Def.'s Mot. for Spoliation Sanctions, Doc. No. 200.)  Additionally, shortly before filing the instant motion, Ephraim filed a motion for spoliation sanctions based on alleged spoliation of Mr. Akarapanich's cloud data.  (Renewed Mot. for Spoliation Sanctions Re Tim Akarapanich Cloud Data, Doc. No. 302.)

[150] (*See* Mem. Decision and Order Granting in Part and Den. in Part Def.'s Short Form Disc. Mot. Re. Tim Akarapanich Cellular Phone 2, Doc. No. 229.)

[151] (*See id.*)

[152] (*See id.*)

[153] (*See id.* at 2–3.)

the parties disputed whether search terms should be used to further narrow the data set, Ephraim filed a motion to compel in October 2023, seeking production of all the Consilio phone data he identified.[154]

The court granted the motion in part and denied it in part in December 2023.[155] The court ordered the parties to confer regarding search terms for image data on the phone, and ordered OLPC to produce image data obtained using the search terms and to produce all other data Consilio retrieved from the phone (unless withheld based on privilege).[156]  But OLPC claims Ephraim never proposed search terms,[157] which Ephraim does not refute.

Separately, Ephraim filed a motion for spoliation sanctions related to Mr. Akarapanich's phone in October 2023.[158]  Ephraim claimed Consilio could not access certain information from the phone because OLPC had not provided the phone's password, and he sought dismissal as a sanction.[159]  The court denied the motion but ordered OLPC to provide the phone, the password, and a full data copy of the phone to

---

[154] (*See id.* at 3; Def.'s Short Form Disc. Mot. Re. Tim Akarapanich Cellular Phone, Doc. No. 206.)  OLPC argued the use of search terms was appropriate because much of the data on the phone was "irrelevant and private to Mr. Akarapanich," and some contained OLPC's confidential information and privileged attorney-client communications.  (Opp'n to Short Form Disc. Mot. Re. Tim Akarapanich Cellular Phone 1–2, Doc. No. 209.)

[155] (*See* Mem. Decision and Order Granting in Part and Den. in Part Def.'s Short Form Disc. Mot. Re. Tim Akarapanich Cellular Phone, Doc. No. 229.)

[156] (*Id.* at 7.)

[157] (Opp'n, Facts ¶ 27(g), Doc. No. 327.)

[158] (Def.'s Mot. for Spoliation Sanctions, Doc. No. 200.)

[159] (*See id.* at 1.)

Consilio for further inspection.[160]  OLPC asserts it complied with this order, but Ephraim never requested additional information from the phone.[161]  Ephraim does not refute this assertion.

In sum, Ephraim voluntarily agreed to have Mr. Akarapanich's phone forensically imaged by a third-party vendor in lieu of having the phone produced.  And he never moved to compel production of the actual phone.

Furthermore, none of these motions or orders addressed access to the phone by the parties' experts.  Once it became apparent OLPC's forensic expert had inspected the phone, Ephraim could have requested that the phone be provided to his own forensic expert, Mr. Morrise.  But Ephraim never made such a request to OLPC, nor did he file a motion to permit Mr. Morrise to inspect the phone.  Mr. Morrise's counter report stated he "lacked access" to primary sources, including the phone, because they had not been provided to Ephraim's counsel.[162]  But Mr. Morrise acknowledged during his deposition that he did not ask for the phone (or any data from it) after discussion with Ephraim's counsel.[163]  Additionally, Mr. Morrise testified that although he was aware Consilio had copied the phone's data, he never reviewed that data nor asked for any

---

[160] (*See* Mem. Decision and Order Den. Without Prejudice Def.'s Mot. for Spoliation Sanctions and Ordering OLPC to Produce Data Copy, Phone, and Password 18–19, Doc. No. 278.)

[161] (Opp'n, Facts ¶ 27(h)–(i), Doc. No. 327.)

[162] (*See* Ex. 20 to Mot., Expert Rep. of Matthew R. Morrise 4–6, Doc. No. 308-21.)

[163] (*See* Ex. 28 to Opp'n, Morrise Dep. 74:1–22, 99:2–5, 101:4–102:14, 156:2–157:1, 176:2–24, 209:7–11, Doc. No. 327-30.)

information from the phone.[164]  Tellingly, Mr. Morrise also testified that Ephraim's

counsel did not give him the supplemental documents OLPC produced on August 30

and September 4 because Ephraim was planning to file a sanctions motion related to

their untimely disclosure.[165]  Ephraim then filed the instant motion—on the day expert

discovery closed—seeking to exclude certain evidence from the phone.

Under these circumstances, Ephraim's decision not to request access to the

phone by his expert can most fairly be characterized as a deliberate and considered

decision.  Ephraim's belief—that the court would have ordered production of the phone

had OLPC disclosed its intent to provide the phone to its expert—supports the

conclusion that Ephraim strategically chose to not to request access.  Believing the

court would order production as a matter of fairness upon learning OLPC's expert had

inspected the phone, Ephraim still elected not to seek an opportunity for his expert to

inspect the phone during discovery.  Instead, he opted to wait and pursue sanctions

after discovery closed.

2.  OLPC's Obligation to Investigate and Produce Technical Data

Contrary to Ephraim's argument, OLPC was not required to produce technical

data retrieved during its expert's forensic analysis of the phone and servers before

expert discovery.  Under Rule 26(a)(1)(E), a party must "make its initial disclosures

based on the information then reasonably available to it."[166]  And "[a] party is not

---

[164] (*See id.* at 72:4–73:4.)

[165] (*See id.* at 153:6–154:14.)

[166] Fed. R. Civ. P. 26(a)(1)(E).

excused from making its disclosures because it has not fully investigated the case."[167] But where the data at issue was not "reasonably available" to OLPC without expert analysis, OLPC was not required to conduct the analysis or produce the data before the applicable expert discovery deadlines.

Ephraim suggests that where OLPC had access to the phone and servers throughout this case, the technical data OLPC's expert later retrieved from those sources should have been produced earlier.[168]  Ephraim argues OLPC's failure to retrieve and produce this technical data before expert discovery amounts to a failure to "investigate[] the case" under Rule 26(a)(1)(E).[169]  And he cites two cases for the proposition that "'[f]uture expert analysis does not relieve Plaintiff of its obligation to provide information' required by Rule 26."[170]

The cases Ephraim relies on do not support his argument—that the technical data OLPC's forensic expert retrieved should have been investigated and produced earlier in the case.  Both cases address a failure to disclose information supporting damages, stating: "Future expert analysis does not relieve Plaintiff of its obligation to provide information *reasonably available to it* as to gross revenues, expenses and any

---

[167] *Id.*

[168] (*See* Reply 14–15, Doc. No. 344.)

[169] (*See id.*)

[170] (*Id.* at 15 (citing *Turner v. Harvard Medtech of Nev., LLC*, No. 2:22-cv-01264, 2023 U.S. Dist. LEXIS 236901, at *3 (D. Nev. Dec. 18, 2023) (unpublished); *Frontline Med. Assocs. v. Coventry Health Care*, 263 F.R.D. 567, 570 (C.D. Cal. 2009)).)

other component of its lost profits computation."[171]  This type of financial information is dissimilar to technical data retrieved from electronic sources during a forensic analysis. OLPC's expert did not simply conduct an analysis of data at hand, he forensically captured it.  Neither case supports the proposition that such technical data is "reasonably available" to a party before expert analysis is conducted.

Ephraim provides no other authority supporting his contention that OLPC was required to investigate and produce this technical data before expert discovery.  Such data was not "reasonably available" to OLPC without expert analysis, and OLPC had no obligation to conduct such analysis before the applicable expert discovery deadlines.

With this background in mind, each category of disputed documents is addressed below.

3.  Spreadsheets Produced on March 18, 2024 (OLPC 13466–68)

On March 18, 2024, OLPC produced spreadsheets containing a log obtained from Mr. Akarapanich's phone and server data related to Mr. Akarapanich's email account.[172]  OLPC produced them as a supplemental response to Ephraim's requests for production ("RFPs") 9 and 12.[173]  OLPC asserts its forensic expert, Mr. Regard, first discovered them during his forensic analysis, shortly before they were produced.[174]

---

[171] *Frontline Med. Assocs.*, 263 F.R.D. at 570 (emphasis added); *see also Turner*, 2023 U.S. Dist. LEXIS 236901 at *3 (stating the same proposition nearly verbatim and citing *Frontline*).

[172] (*See* Opp'n, Facts ¶ 28, Doc. No. 327.)

[173] (*See id.*)

[174] (*Id.*)

OLPC contends it did not know these spreadsheets existed until then.[175]  OLPC's assertions are supported by its Rule 30(b)(6) deposition testimony and a declaration from Thomas Olson.[176]  Without refuting OLPC's assertions, Ephraim persists in arguing he was denied access to Mr. Akarapanich's phone and OLPC should have discovered this information earlier.[177]

For the reasons explained above, these arguments fail.  Ephraim has not demonstrated these spreadsheets were untimely produced, where they were produced shortly after OLPC's expert retrieved them during his forensic analysis.  Accordingly, Ephraim has not shown they should be excluded.

4.   Data and Documents Produced on July 12, 2024, With Mr. Regard's Report (OLPC 14910–11 & AKARAPANICH 1447–2151)

On July 12, 2024, OLPC produced Mr. Regard's expert report, along with additional data and documents from the phone and servers.[178]  This production included activity logs from the phone (AKARAPANICH 1832–36) and server logs (OLPC 14910–11).[179]  OLPC asserts Mr. Regard retrieved this technical data during his continuing forensic analysis, and OLPC was unaware it existed until Mr. Regard discovered it

---

[175] (*Id.*)

[176] (*See* Ex. 33 to Opp'n, Rule 30(b)(6) Dep. of OLPC (Mar. 27, 2024) 7:22–8:14, 10:23–11:12, 46:6-20, 47:3–6, Doc. No. 327-35; Ex. 34 to Opp'n, First OLPC Dep. 41:22–42:7, 60:7–12, Doc. No. 329-3 (sealed); Ex. 36 to Opp'n, Decl. of Thomas Olson ¶ 4, Doc. No. 327-38.)

[177] (*See* Reply 14–16, Doc. No. 344.)

[178] (*See* Opp'n, Facts ¶ 30, Doc. No. 327.)

[179] (*See id.*)

(shortly before it was produced).[180]  OLPC's assertions are supported by statements in

Mr. Regard's report and a declaration from Thomas Olson.[181]  Rather than refuting

OLPC's assertions, Ephraim persists in arguing he was denied access to Mr.

Akarapanich's phone and OLPC should have discovered this information earlier.[182]  For

the reasons explained above, these arguments fail.  Ephraim has not demonstrated

these spreadsheets were untimely produced, where they were produced shortly after

OLPC's expert retrieved them during his forensic analysis.

　　According to OLPC, the July 12 production also included other documents

retrieved from the phone: a record of a Telegram conversation between Ephraim and

Mr. Akarapanich (AKARAPANICH 1447–52); "screenshots and thumbnails" from the

phone (AKARAPANICH 1453–1831); and "eight [] emails that Mr. Regard identified from

Mr. Akarapanich's OLPC email account to support his report" (AKARAPANICH 1837–

2151).[183]  For its part, OLPC notes the Telegram conversation was previously provided

to Ephraim (as an attachment to a declaration from Mr. Akarapanich).[184]  OLPC

---

[180] (*Id.*)

[181] (*See* Ex. 27 to Opp'n, Expert Rep. of Daniel L. Regard II ¶¶ 27–31, Doc. No. 329-2 (sealed); Ex. 36 to Opp'n, Decl. of Thomas Olson ¶ 5, Doc. No. 327-38).)

[182] (*See* Reply 14–15, 19, Doc. No. 344.)  Ephraim contends OLPC had "already conducted research on the servers," pointing to OLPC's Rule 30(b)(6) testimony regarding OLPC's hiring of an IT company called Crucial Logics to investigate Mr. Akarapanich's access to the servers.  (*Id.* at 19–20.)  However, Ephraim does not point to any evidence refuting OLPC's assertion that the data at issue was not obtained in an earlier investigation; rather, Mr. Regard retrieved the technical data produced with his report during his forensic analysis.

[183] (Opp'n 11 n.6, Doc. No. 327.)

[184] (*See id.*)  Indeed, Mr. Akarapanich's declaration and attachments were filed on the docket during fact discovery.  (*See* Doc. No. 214-1 (sealed).)

suggests Ephraim could have obtained the screenshots and thumbnails earlier because the phone's data was available to him (pointing to the Consilio data, for which Ephraim failed to provide search terms).[185]  And OLPC also notes all these documents were produced during expert discovery.[186]  Ephraim does not specifically address these additional documents in his motion or his reply, apart from listing them in the charts at the beginning of his motion and reply.[187]

Where Ephraim fails to refute OLPC's assertion that the Telegram conversation was previously provided to him, he has not shown it was untimely produced.  Ephraim also has not shown the other documents from the phone were untimely produced, where he fails to specifically address them in his briefing.  Regardless, even assuming the screenshots, thumbnails, and emails were untimely produced, any delay in producing them was harmless.  These documents were available to Ephraim and his expert during expert discovery, and Ephraim does not identify any fact discovery he would have pursued related to these documents had they been produced earlier.  Further, there is no evidence OLPC willfully withheld these documents.

Accordingly, Ephraim has not shown the documents and data produced with Mr. Regard's report on July 12, 2024 should be excluded.

---

[185] (*See* Opp'n 11 n.6 & Facts ¶ 27, Doc. No. 327.)

[186] (*See id.* at 11 n.6.)

[187] (*See* Mot. 2, Doc. No. 308; Reply 13, Doc. No. 344.)

5. <u>Supplemental Data and Documents Produced on August 30 and September 4, 2024 (OLPC 14912–15053 & AKARAPANICH 2152–881), and Errata to Mr. Regard's Report</u>

On August 30 and September 4, 2024, OLPC produced additional data and documents in support of Mr. Regard's report.  OLPC asserts these documents were inadvertently omitted from July 12 production, and OLPC first learned of their omission when Mr. Morrise identified them in his August 12 counter report as documents which had not been provided.[188]

OLPC describes the document labeled OLPC 14912–15053 as a 2020 email from Mr. Akarapanich's account, to which confidential documents were attached.[189] OLPC claims this email is "nearly identical" to several emails already produced and was not necessary for Mr. Regard's opinions.[190]  OLPC produced the email on August 30.[191]

According to OLPC, the document labeled AKARAPANICH 2559–881 is a "Bixby" file Mr. Regard retrieved from the phone.[192]  An older version of this file was inadvertently attached to Mr. Regard's report. [193] OLPC attempted to provide the correct version on August 30, but inadvertently produced the same older version.[194]  OLPC then produced the correct version on September 4, along with an errata explaining the

---

[188] (*See* Opp'n, Facts ¶¶ 32–33, Doc. No. 327.)

[189] (*See id.* ¶ 33(a).)

[190] (*Id.*)

[191] (*See id.*)

[192] (*Id.* ¶ 33(b).)

[193] (*Id.*)

[194] (*Id.*)

error.[195]  OLPC asserts it did not know this document existed before Mr. Regard's

forensic analysis.[196]

OLPC describes the last document at issue (AKARAPANICH 2153–598) as

"Usagestats" from the phone.[197]  OLPC indicates Mr. Regard's report "did not rely on

any information from the Usagestats, but noted that he had searched the Usagestats

and had not found any reference to Outlook."[198]  OLPC produced the Usagestats on

August 30.[199]

OLPC notes that Ephraim did not ask for any of these omitted materials before

serving Mr. Morrise's counter report.[200]  And although OLPC invited Ephraim and Mr.

Morrise to supplement the counter report if needed, no supplement was provided.[201]

Additionally, Mr. Morrise testified during his September 6 deposition that Ephraim did

not provide him with the supplemental materials OLPC produced on August 30 and

September 4 because Ephraim was planning to file a motion for sanctions related to

---

[195] (*Id.*)

[196] (*Id.*)

[197] (*Id.* ¶ 33(c).)

[198] (*Id.*)

[199] (*See id.*)

[200] (*Id.* ¶ 34.)

[201] (*Id.*)

them.[202]  OLPC also argues the Usagestats would have been available to Mr. Morrise had he conducted a forensic analysis of the phone.[203]

Ephraim does not refute OLPC's assertion that the omission of these supplemental materials from the July 12 production was inadvertent, and he makes no arguments specific to these supplemental productions.  Rather, as noted, he argues generally that all materials produced in support of Mr. Regard's report should be excluded because he was denied access to Mr. Akarapanich's phone and OLPC should have discovered this information earlier.[204]  For the reasons explained above, these arguments fail.

Where Ephraim fails to specifically address these documents, Ephraim has not shown the supplemental productions were untimely.  The supplemental materials were provided within a reasonable time after OLPC learned of their omission.  Furthermore, any delay was harmless.  The materials were provided during expert discovery, and well before any trial date.  Ephraim voluntarily chose not to provide the materials to Mr. Morrise or supplement Mr. Morrise's counter report.  Under these circumstances, Ephraim has not shown the documents produced on August 30 and September 4 should be excluded.

---

[202] (*See id.* ¶ 35; Ex. 28 to Opp'n, Morrise Dep. 153:6–154:14, Doc. No. 327-30.)

[203] (*See* Opp'n, Facts ¶ 33(c), Doc. No. 327.)

[204] (*See* Reply 14–15, Doc. No. 344.)

### F. MED001–16

Finally, Ephraim's motion lists "MED001–16" in a chart of allegedly untimely produced documents.[205]  Ephraim's chart indicates the document was available to OLPC as of May 9, 2024 and produced by OLPC on May 22, 2024.[206]  The chart describes this document as "Supplemental Response to Interrogatory 13."[207]  Ephraim's motion does not otherwise address this document—neither the statement of facts nor the argument section mention it.

In the absence of any argument from Ephraim, it is not apparent how OLPC's production of this document thirteen days after receiving it could be considered untimely.[208]  Where Ephraim's motion lacks argument regarding this document, he has not shown MED001–16 should be excluded.[209]

---

[205] (Mot. 2, Doc. No. 308.)

[206] (*Id.*)

[207] (*Id.*)

[208] According to OLPC, MED001–16 is a draft settlement proposal related to Thomas and Carolyn's divorce, which OLPC alleges is one of the confidential documents Ephraim misappropriated and shared with Carolyn's attorneys.  (*See* Opp'n 5 n.3, Doc. No. 327.)  OLPC contends Ephraim himself previously produced a version of this document in this case in January 2023.  (*See id.* ¶ 16.)  OLPC alleges Ephraim improperly shared the document with a mediator during the mediation in this case on May 9, 2024, prompting OLPC to disclose it on May 22 as evidence of Ephraim's ongoing use of misappropriated documents.  (*See id.* ¶¶ 15–16.)

[209] Ephraim's reply contains arguments regarding MED001–16, (*see* Reply 23, Doc. No. 344), but arguments raised for the first time in a reply are waived.  *See WildEarth Guardians*, 770 F.3d at 933.  In any event, in his reply, Ephraim admits he previously produced this document in this litigation, (*see* Reply 23, Doc. No. 344), and he does not explain how OLPC's May 22, 2024 re-production of it prejudiced him.  Accordingly, even if not waived, the arguments in Ephraim's reply fail to demonstrate exclusion is warranted.

### G. Requests for Attorneys' Fees and Other Sanctions

Both parties request awards of attorneys' fees incurred in connection with this motion.[210]  Ephraim also requests "any additional sanctions as the Court sees fit under Rule 37(c)(1)(C)."[211]

Ephraim's requests for attorneys' fees and other sanctions are denied.  As set forth above, Ephraim's motion is rife with inaccuracies and lacks meaningful argument regarding many categories of challenged documents.  The evidence presented with the parties' briefing supports OLPC's version of events on nearly every contested factual issue.  Ephraim failed to demonstrate any of the numerous challenged documents should be excluded, and he has shown only one category of documents was untimely produced: the billing records supporting OLPC's damages.  Even as to those records, Ephraim waited more than five months to raise the issue and failed to obtain the primary relief sought (exclusion).  Under these circumstances, the court declines to award attorneys' fees to Ephraim or impose any other sanctions on OLPC.

OLPC's request for attorneys' fees is also denied.  OLPC fails to identify any authority authorizing such an award.  "Stating the authority for an award of fees is necessary because absent a contract, statute, or rule shifting fees, the American Rule requires parties to bear their own fees and costs during litigation."[212]  Where OLPC fails to provide legal authority supporting its request for fees, the request is denied.

---

[210] (*See* Mot. 3, Doc. 308; Opp'n 28, Doc. No. 327.)

[211] (Mot. 3, Doc. No. 308.)

[212] *Watts-Klien v. Marriot Vacation Club*, No. 2:19-cv-00872, 2021 U.S. Dist. LEXIS 166186, at *7 (D. Utah Aug. 31, 2021) (unpublished).

CONCLUSION

Ephraim Olson's motion[213] for exclusion of documents and sanctions under Rule 37(c) is denied.  Ephraim may, at his option, conduct a continued Rule 30(b)(6) deposition of OLPC regarding the billing records produced on March 29 and April 1, 2024, and OLPC's claimed damages relating to those records.  OLPC shall make its Rule 30(b)(6) designee on this topic available for a deposition no later December 20, 2024.

DATED this 27th day of November, 2024.

BY THE COURT:

Daphne A. Oberg
United States Magistrate Judge

---

[213] (Doc. No. 308.)