Scott M. Lilja #4231
Sarah C. Vaughn #14615
FABIAN VANCOTT
95 South State Street, Ste. 2300
Salt Lake City, UT 84111-2323
Telephone: (801) 531-8900
slilja@fabianvancott.com
svaughn@fabianvancott.com
*Attorneys for Defendant Ephraim Olson*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF UTAH

| | |
|---|---|
| OL PRIVATE COUNSEL, LLC, a Utah limited liability company,<br><br>         Plaintiff,<br><br>v.<br><br>EPHRAIM OLSON, an individual,<br><br>         Defendant. | **MOTION FOR SUMMARY JUDGMENT DISMISSING PLAINTIFF'S COMPLAINT OR IN THE ALTERNATIVE DISMISSING CLAIMS FOR COMPUTER FRAUD AND ABUSE ACT, INTENTIONAL INTERFERENCE WITH ECONOMIC RELATIONS, CONVERSION, AIDING AND ABETTING CONVERSION, AND INJUNCTIVE RELIEF**<br><br>Case No. 2:21-cv-00455-DBB<br><br>Judge David Barlow<br>Magistrate Judge Daphne A. Oberg |

## RELIEF REQUESTED AND GROUNDS FOR RELIEF

Pursuant to Fed. R. Civ. P. 56 and DUCivR 56-1, Defendant Ephraim Olson ("**Ephraim**") requests the Court dismiss Plaintiff OL Private Counsel's ("**OLPC**") entire complaint for failure to establish damages. Here, OLPC's claimed damages relate entirely to attorney fees incurred, not by OLPC but by Thomas Olson and trusts controlled by him, in three other litigations. Specifically,

1

OLPC seeks a total of $456,040 in damages broken down as follows: (1) $108,758 in attorney's fees incurred by the firm Peacock Linder Halt & Mack in a Mareva Injunction Matter, Case No. 2001 14224, which was pending before the Court of Queen's Bench in Alberta, (2) $109,832 in attorney's fees incurred by the firm Foley Lardner in the matter *Burton v. Lemons*, Civil No. 220901538, pending before the Third Judicial District for the State of Utah, and (3) $237,450 in attorney's fees incurred by the firm Borden Ladner Gervais in the matter *Olson v. Olson*, Case No. 2201 04486, pending in the Court of King's Bench in Alberta.

"The long-standing rule in Utah is that attorney fees cannot be recovered unless provided for by statute or contract." *Collier v. Heinz*, 827 P.2d 982, 983 (Utah Ct. App.1992). While the third-party litigation exception acts as a well-established exception to this general rule, it is applied "only in the limited situation where the defendant's wrongful conduct foreseeably causes the plaintiff to incur attorney fees through litigation with a third party." *Id.* As detailed below, OLPC has failed to establish that its claim for damages falls within the third-party litigation exception. First and foremost, OLPC is not a party in any of the third-party litigation. Moreover, the litigations for which OLPC seeks to recover fees were not foreseeably caused by Ephraim's actions.

Even if the third-party litigation exception applied, both the fact and amount of OLPC's claimed damages are prohibitively speculative and may be appropriately decided on summary judgment. Specifically, OLPC has not yet paid any of the invoices it claims as damages and testified it will only do so at some unknown point in the future. If ever. Moreover, the invoices are so highly redacted that it is impossible for Ephraim to determine whether they appropriately relate to his alleged conduct. Thus, the Court may properly dismiss OLPC's claims at the summary judgment stage.

And, even if OLPC had established the fact and amount of damages, OLPC has still failed to establish proximate cause as a matter of law. The causal connection between Ephraim's alleged conduct and OLPC's claimed damages is well beyond the ken of the ordinary lay person. Thus, expert testimony is required to establish causation. But, as already found by the Court, OLPC's damages expert renders no such causation opinions and relies on pure conjecture. Dkt. No. 355 at 29. Thus, the Court may dismiss OLPC's claims as a matter of law.

In the alternative, Ephraim requests the Court dismiss OLPC's claims for the Computer Fraud and Abuse Act ("**CFAA**"), Intentional Inference with Economic Relations, Conversion, Aiding and Abetting Conversion, and Injunctive Relief. With respect to each cause of action, OLPC has failed to establish damages recoverable under those claims. Thus, as damages are a required element for each cause of action, the claims fail.

## STANDARD

Summary judgment is warranted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "The movant bears the initial burden to show the absence of a genuine issue of material fact." *Lazy S Ranch Properties, LLC v. Valero Terminaling & Distribution Co.,* 92 F.4th 1189, 1198 (10th Cir. 2024). The burden then shifts to the nonmovant to "set forth specific facts showing that there is a genuine issue for trial." *Id.* "The nonmovant must show more than a 'scintilla of evidence' in support of its position, instead, the evidence must be sufficient for a jury to reasonably find for the nonmovant." *Id.* "If there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law, summary judgment is appropriate." *Id.* "An issue is 'genuine' if there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either

way." *Id.* "An issue of fact is 'material' if under the substantive law it is essential to the proper disposition of the claim." *Id.*

## STATEMENT OF UNDISPUTED MATERIAL FACTS[1]

1.     On March 12, 2021, OLPC filed its complaint alleging the following causes of action: (1) Conversion, (2) Breach of Contract, (3) Intentional Interference with Economic Relations, (4) Breach of Fiduciary Duty, (5) Aiding and Abetting Conversion, and (6) Injunctive Relief. Complaint, attached hereto as Exhibit 1.

2.     On July 13, 2021, OLPC asserted a claim pursuant to the Computer Fraud and Abuse Act ("CFAA") in its Amended Complaint, after which the case was removed to federal court under federal question jurisdiction. Dkt. # 2.

3.     OLPC's Amended Complaint requested "general compensatory and consequential damage against Defendants in an amount subject to proof at trial, but not less than $500,000." First Amended Complaint, 14-15, attached hereto as Exhibit 2.

4.     On April 14, 2021, OLPC served initial disclosures, including the following "Computation of Damages":

> OL Private Counsel seeks money damages in an amount to be determined at trial, including all reasonable and foreseeable damages that could have been avoided if Defendant Ephraim Olson had not engaged in the wrongdoing described in the complaint. *OL Private Counsel's damages consist of harm to its goodwill, loss of clients, and loss of its confidential information. OL Private Counsel also seeks punitive damages for Defendant's conversion, intentional interference with contractual relations, breach of fiduciary duty, and aiding and abetting conversion.* OL Private Counsel reserves its right to assert and/or seek damages from Defendant or non-parties as the facts of the case develop and the case proceeds.

4/14/21 Initial Disclosures, attached hereto as Exhibit 3 (emphasis added).

---

[1] These facts are undisputed solely for purposes of this Motion for Summary Judgment.

5.      On August 21, 2021, OLPC supplemented its initial disclosures but did not meaningfully alter[2] its damages calculation. 8/25/21 Supplemental Disclosures, attached hereto as Exhibit 4.

6.      On September 22, 2022, OLPC supplemented its initial disclosures but did not alter its damages calculation. 9/22/22 Supplemental Disclosures, attached hereto as Exhibit 5.

7.      On February 15, 2023, OLPC testified that Ephraim's possession of the various Converted Documents does not preclude OLPC from exercising any control over the documents. OLPC 30(b)(6) 77:1-8, 80:12-19, 104:10-105:3, attached hereto as Exhibit 6.

8.      On March 29, 2024, OLPC produced OLPC Ephraim Olson 14200-14233 and 14828-14829, supporting its damages claim. Order, Dkt. 355.

9.      On April 1, 2024, OLPC produced OLPC Ephraim Olson 14849-14854 and 14855-14909, also supporting its damages claim. *Id.*

10.     Fact discovery in this case closed on April 1, 2024. Dkt. #248.

11.     On May 1, 2024, OLPC served its expert disclosures and designated three experts: (1) Rick Hoffman, (2) Dan Regard, and (3) Stuart Waldrip. Dkt. No. 276.

12.     On July 12, 2024, OLPC produced the expert report of Rick Hoffman who opined as to "the economic loss that OL Private Counsel ("OLPC" or "Plaintiff") is seeking through claims made against Ephraim Olson." Hoffman Report, 1, attached hereto as Exhibit 7.

13.     Mr. Hoffman opined that OLPC's economic losses are entirely comprised of legal fees incurred in three lawsuits. "[I]t is Plaintiff's contention that these lawsuits were partly derived

---

[2] The only differentiation is that the Supplemental Initial Disclosures' damage calculation utilized OLPC as the abbreviation for OL Private Counsel. *Compare* Ex. 3 to Ex. 4.

from the Confidential Documents shared by Ephraim Olson" and "that these legal fees would not have been incurred had Ephraim Olson not wrongfully obtained and shared the firms' Confidential Information." Hoffman further states that Ephraim's actions "was one of the reasons several lawsuits were filed." Hoffman Report, 3.

14.    Mr. Hoffman expressed no causation opinions and "relies on OLPC's allegations regarding causation." Order, Dkt. 355, 29.

15.    Mr. Hoffman summarized OLPC's damages by the law firms that billed them, as detailed below:

| Damage Summary | |
|---|---|
| Foley & Lardner Invoices | $109,832 |
| BLG Invoices | $237,450 |
| Peacock Linder Invoices | $108,758 |
| **Total Damages** | **$456,040** |

Hoffman Report, 6,

16.    None of OLPC's other expert opined as to damages calculations or otherwise address the Invoices. Reports, attached hereto as Exhibit 8.

17.    The fees detailed in the Peacock Linder Invoices relate to the Mareva Injunction action filed against Thomas Olson. OLPC Third 30(b)(6) Depo., 65:7-66:3, attached hereto as Exhibit 9; OLPC Ephraim Olson_ 14849-14854, attached hereto as Exhibit 10.

18.    The time entries on the Peacock Linder Invoices are redacted such that the only information provided is the date of the entry. Ex. 10.

19.    OLPC is not a party to the Mareva Injunction. Mareva Injunction Order, attached hereto as Exhibit 11.

20.    OLPC claims these invoices as damages in this case because it, through its sole

6

manager-member Thomas Olson, reached an agreement with Thomas Olson to reimburse him for these fees. OLPC also reached this agreement with various trusts controlled by Thomas Olson or his sons involved in the Mareva Injunction. OLPC Third 30(b)(6) Depo., 68:5-25, 75:9-14, Ex. 8. These agreements are not in writing. *Id.* at 68:2-17.

21.    OLPC entered into this agreement voluntarily. *Id.* at 73:8-74:2.

22.    OLPC has not paid the Peacock Linder invoices. *Id.* at 82:9-24. Instead, Thomas Olson personally paid for these invoices. *Id.* OLPC plans to pay Thomas Olson for these invoices at "some point." *Id.*

23.    The Mareva Injunction Order was entered on November 23, 2020. Ex. 11.

24.    In entering the Mareva Injunction Order, the Court relied upon the following documents: the ex parte application of Carolyn Olson; the Statement of Claim; the Affidavit of Carolyn Olson; the brief filed in support of the Application; hearing the submissions of counsel for Carolyn Olson. *Id.*

25.    The Affidavit of Carolyn Olson included 29 exhibits. Affidavit, attached hereto as Exhibit 12.

26.    Exhibit 21 to the Affidavit of Carolyn Olson is titled "Assessment After Normal (Re)Assessment Period Recommendation Report." *Id.* at OLPC Ephraim Olson 13005-13010. This document was obtained by Carolyn Olson's attorney, Patricia Keundig, who retrieved the document from a "box of documents" delivered to her by Carolyn Olson. Keundig Depo., 113:20-115:6, attached hereto as Exhibit 13. Ms. Keundig sent this document to Carolyn Olson's attorneys who filed the Affidavit in the Mareva Injunction. *Id.* at 123:8-15.

27.    Exhibits 1- 6, 10- 13, 16-17, 19-20, 22-23, 25-26, and 28 to the Affidavit of Carolyn

Olson are publicly available documents. *See* Ex. 12.

28.    Exhibit 7 to the Affidavit of Carolyn Olson is the White Buffalo Trust (Ex. 12, at OLPC Ephraim Olson 12778-12797), which Carolyn Olson received from Tim A. OLPC Ephraim Olson 164, attached hereto as Exhibit 14. Carolyn Olson Depo., 124:15-125:7, attached hereto as Exhibit 15.

29.    Exhibit 27 to the Affidavit of Carolyn Olson is two trust documents related to the Ruth Doxey Family Trust, including a "Notice" Carolyn Olson signed on December 26, 2010 as Trustee of the Trust. Ex. 12 at OLPC Ephraim Olson 13029-13030 (addressing the documents to "Beneficiaries of the Ruth Doxey Family Trust); OL Private Counsel Ephraim Olson 428-440, attached hereto as Exhibit 16 (detailing Carolyn Olson as Trustee). Ephraim is trustee of the Ruth Doxey Family Trust. Response to Admissions 2, attached hereto as Exhibit 17.

30.    Exhibits 8-9, 14-15, 18, and 24 are other documents which are not related to OLPC's claims against Ephraim. *See* Ex. 12; OLPC Supplemental Response to Interrogatory 13, attached hereto as Exhibit 18.

31.    The Mareva Injunction also included information Carolyn Olson received from Hyrum Olson on May 24, 2019. OLPC Third 30(b)(6) 107:5-25, Ex. 9.; OL Private Counsel– Ephraim Olson 2518-2538, attached hereto as Exhibit 19.

32.    The Mareva Injunction case is complete. OLPC Third 30(b)(6) 83:6-8, Ex. 9.

33.    The fees detailed in the Foley & Lardner Invoices relate to the *Burton v. Lemons* matter. OLPC Ephraim Olson 14200-14233, 14828-14829, attached hereto as Exhibit 20.

34.    While Foley & Lardner billed $149,677 for work related to *Burton v. Lemons*, OLPC is only seeking damages of $109,832. OLPC Third 30(b)(6) at 6:14-8:20, Ex. 9.

35.     OLPC is not a party to *Burton v. Lemons*. *Id.* at 10:22-24.

36.     OLPC claims these invoices as damages in this case because it has agreed to reimburse another entity, Waterton Land Trust, for the fees incurred by Bruce Lemons in the *Burton v. Lemons* matter. *Id.* at 11:5-16. This agreement is not in writing. *Id.* at 13:10-12.

37.     Waterton Land Trust is indemnifying Lemons, who is a trustee of the Waterton Land Trust. *Id.*, 11:17-20.

38.     OLPC believes it paid for the Foley Lardner invoices either "directly or indirectly." *Id.* 32:18-33:18.

39.     In *Burton v. Lemons*, the Plaintiff, Naomi Burton, alleged claims for breach of fiduciary duty against Bruce Lemons as trustee when Mr. Lemons "permanently removed Naomi as a beneficiary of the [Waterton Land Trust]" on August 31, 2020. *Burton v. Lemons*, First Amended Complaint, attached hereto as <u>Exhibit 21.</u>

40.     OLPC alleges that the Waterton Land Trust instrument, which it believes Ephraim improperly accessed, was used by Naomi in the *Burton v. Lemons* matter. OLPC Third 30(b)(d) Depo., 18:5-19, Ex. 9.

41.     Naomi Burton was deposed in this matter on July 20, 2022. During her deposition she testified that she received the Waterton Land Trust instrument from her lawyer. Burton Depo., 146:7-16, attached hereto as <u>Exhibit 22</u>. She testified that she believes her lawyer received the Waterton Land Trust instrument when it was filed in response to her motion to intervene in a divorce suit. *Id.* at 147:19-148:3.

42.     Naomi Burton filed the motion to intervene in her parent's divorce suit, *Olson v. Olson*, Case No. 204904555, currently pending before the Third Judicial District for the State of

Utah. *See* Divorce Docket, attached hereto as <u>Exhibit 23.</u>

43.     OLPC does not have evidence that Ephraim sent Naomi Burton the Waterton Land Trust. OLPC Third 30(b)(6) Depo., 24:7-24, Ex  . Instead, OLPC believes, without factual basis and contrary to her testimony, that Naomi Burton may have received the Waterton Land Trust when she was "served with a copy of the Mareva Injunction papers, which had a copy of the stolen Waterton Land Trust document." *Id.*

44.     The fees detailed in the BLG Invoices relate to a lawsuit filed in April of 2022 by Carolyn Olson, Naomi Olson, and other unnamed parties against multiple parties including Hyrum Olson, Waterton Land Trust, Waterton Land Trust, LTD, and Joshua Olson. OLPC Third 30(b)(6) Depo., 38:20-40:20, Ex. 9; OLPC Ephraim Olson_14885-14909, attached hereto as <u>Exhibit 24.</u>

45.     The BLG Invoices are redacted and the description of each time entry is unreadable. Ex. 24.

46.     OLPC testified that the April 2022 lawsuit detailed in the BLG Invoices is *Olson v. Olson*, Case No. 2201-04486. OLPC Third 30(b)(6) Depo., 63:1-64:15, Ex. 9.

47.     OLPC is not a party to *Olson v. Olson*, Case No. 2201-04486. *See* PLF1458-1468[3], attached hereto as <u>Exhibit 25.</u>

48.     OLPC testified that the *Olson v. Olson* is "basically the same case as the [Mareva] injunction." OLPC Third 30(b)(6) 63:1-15, Ex. 9.

49.     OLPC claims these invoices as damages in this case because it, through its sole member-manager Thomas Olson, has agreed to reimburse the defendants of that action, including Thomas Olson. OLPC Third 30(b)(6) Depo., 41:24-43:19. This agreement is not in writing. *Id.* at

---

[3] These documents were produced by Dentons in response to a subpoena from OLPC.

46:11-13.

50.     OLPC has not paid the BLG invoices. *Id.* at 56:17-57:9. Instead, the invoices were paid by the Waterton Land Trust. *Id.* OLPC plans to pay the Waterton Land Trust for these invoices at some unknown point in the future. *Id.* at 60:21-61:1.

51.     OLPC testified:

> There's a whole bunch of stolen things that were used in these proceedings, and which specific ones were used in which document, the invoices do not relate to that. They relate to the action generally. So there's no line item talking about Carolyn Olson Spousal Trust as a separate item. It's about all the stolen documents that were used were the basis for these lawsuits. And there's no specific breakdown in any invoice about Carolyn Olson Spousal Trust versus this versus that. There wouldn't be, because it's the whole lawsuit. It's an amalgam of all that stuff.

*Id.* at 108:10-21.

## ARGUMENT

### I.   OLPC HAS NEVER DISCLOSED THE THIRD-PARTY LITIGATION DAMAGES NOW SOUGHT IN ITS RULE 26 DISCLOSURES

Rule 26(a)(1)(A)(iii) required OLPC to timely provide to Ephraim "a computation of each category of damages claimed by the disclosing party—who must also make available for inspection and copying as under Rule 34 the documents and other evidentiary material . . . on which each computation is based, including materials bearing on the nature and extent of injuries suffered." Fed. R. Civ. P. 26. OLPC, however, failed to disclose the third-party litigation expenses it now claims as damages in any of its initial disclosures. SOF ¶¶ 4-6. Instead, this disclosure is devoid of any mention of third-party litigation expenses and, instead, discloses only "harm to its goodwill, loss of clients, and loss of its confidential information," none of which are sought as damages in the case. Moreover, OLPC failed to produce documents concerning those damages until the close of fact discovery. SOF ¶¶ 8-10. The Court has already ruled that OLPC's production

11

"billing records supporting its damages calculation on March 29 and April 1, 2024 (the close of fact discovery) was untimely" and "without substantial justification." Order, Dkt. No. 355, 26-27. Similarly, OLPC's failure to disclose its computation of damages was untimely and without substantial justification.

Under Rule 37(c)(1), OLPC's failure to disclose its now claimed damages requires that those damages be excluded. Rule 37(c)(1) provides:

> If a party fails to provide information ... as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless.

*Park Cityz Realty, LLC v. Archos Capital, LLC*, Case No. 2:20-cv-00522, 2021 WL 4991717 *7-11 (D. Utah October 27, 2021). There is no question OLPC has never disclosed third-party litigation expenses as damages in this case. Neither is there any justification for OLPC's failure to do so. Moreover, Ephraim has been irreparably injured by OLPC's failures. As stated in *Park Cityz*, "Defendant[ has] been prejudiced because they were bereft of any information about damages throughout fact discovery. This placed Defendant[ ] at a tactical and substantive disadvantage during depositions and for purposes of being able to subpoena documents to determine the validity of any claimed damages. Second, Plaintiffs cannot now cure the prejudice because discovery has long passed." *Id.* (entering Rule 37 sanctions at the summary judgment stage). Thus, the only damages sought by OLPC must be excluded from evidence and, in the absence of any damages, OLPC's claims must be dismissed. *Id.* (dismissing plaintiff's claims on summary judgment where plaintiff failed to provide a damages calculation during fact discovery).

## II. OLPC'S DAMAGES ARE NOT RECOVERABLE UNDER THE THIRD-PARTY LITIGATION EXCEPTION

"The long-standing rule in Utah is that attorney fees cannot be recovered unless provided for by statute or contract." *Collier v. Heinz,* 827 P.2d 982, 983 (Utah Ct. App. 1992). And "even under the third-party [litigation] exception, attorney fees incurred in litigation between the contracting parties are not recoverable by the non-breaching party as damages," because that exception applies "only in the limited situation where the defendant's breach of contract foreseeably caused the plaintiff to incur attorney fees through litigation with a third party." *Id.* at 984 & 983.[4] "Recovery of attorney fees as consequential damages is a narrow exception to the normal rule." *McQueen v. Jordan Pines Townhomes Owners Ass'n, Inc.*, 2013 UT App 53, ¶ 26, 298 P.3d 666, *overruled in part on other grounds by Bank of Am. v. Adamson*, 2017 UT 2, 391 P.3d 196.

"Utah courts have applied the third-party litigation exception only to breach of contract and tort cases." *Macris & Assocs., Inc. v. Neways, Inc.*, 2002 UT App 406, ¶ 14, 60 P.3d 117. To recover under this exception, a defendant's breach of contract or tortious actions must have "foreseeably caused the plaintiff to incur attorney fees through litigation with a third party." *Gardiner v. York*, 2006 UT App 496, ¶ 9, 153 P.3d 791; *see also McQueen*, 2013 UT App 53, ¶ 26 (noting that, to recover third-party attorney fees based upon a breach of contract, the party would have had to assert and establish that the party against whom the damages are asserted

---

[4] Utah Courts are not the only jurisdiction to recognize this exception, "[m]any other states also allow for the recovery of attorney fees from a wrongdoer whose tortious conduct necessitated litigation with third parties." *Harder v. Foster,* 401 P.3d 1032, 1046 (Kan. App. 2017). The exception "has various names." *Id.* (referring to the exception as "[t]he third-party litigation exception to the American rule."); *Sooy v. Peter*, 220 Cal. App. 3d 1305, 270 Cal.Rptr. 151 (1990) (referring to the principle as the "tort of another" doctrine); *City of Cottleville v. St. Charles County*, 91 S.W.3d 148, 150 (Mo. App. 2002) (referring to the principle as the collateral litigation exception). "Despite the various names, the principle underlying each case appears to be the same—when litigation with third parties is the natural, proximate consequence of a defendant's tortious conduct then the defendant is liable to the plaintiff for expenses generated in the third-party litigation." *Harder*, 401 P. 3d at 1046.

breached the contract "and that the breach foreseeably caused him to incur attorney fees in litigation with a third party."). Moreover, "attorney fees are recoverable under this exception only if they are caused by and are a foreseeable result of the original breach of contract, not a subsequent wrongful act." *Gardiner,* 2006 UT App 496, ¶ 9.

Here, OLPC may not recover its claimed damages under the third-party litigation exception for the obvious reason that OLPC was not a party to any of the third-party litigation. But, even if OLPC may claim the benefit of this exception, the fees it seeks to recover are not the foreseeable and proximate result of Ephraim's alleged actions. Thus, the third-party litigation exception does not apply and OLPC's claims fail.

### A.   OLPC IS NOT A PARTY TO ANY LITIGATION FOR WHICH IT SEEKS TO RECOVER FEES

Axiomatic to the third-party litigation exception is the requirement that the party seeking to recover fees, in this case OLPC, must itself be party to the third-party litigation. *See Gardiner,* 2006 UT App 496, ¶ 9 (noting that the "plaintiff [must] incur attorney fees through litigation with a third party."); *State v. Sevastopoulos*, 2021 UT 70, ¶ 12, 502 P.3d 290 (noting that award of fees "fit[s] squarely within this rule" when the party receiving the fee award "incurred these fees 'in the protection of' their 'interest' in litigation with third parties."); *Lewiston State Bank v. Greenline Equip., L.L.C.,* 2006 UT App 446, ¶ 22, 147 P.3d 951 (declining to apply the third party litigation exception where the "[plaintiff] did not have to defend an action by anyone other than [defendant].").[5]

---

[5] Courts from multiple jurisdictions have held similarly – the party seeking to recover fees must itself be involved in the third-party litigation. *Uyemura v. Wick*, 551 P.2d 171, 176 (Haw. 1976) (noting the first requirement of the exception is "that the plaintiff had become involved in a legal dispute."); *Prentice v. N. Am. Title Guar. Corp., Alameda Div.,* 381 P.2d 645, 647 (Cal. 1963) (noting the exception applies to persons "required to act in the protection of his interests by bringing or defending an action against a third person."); *Masonic Temple Ass'n of Crawfordsville*

Here, OLPC is not a party to any of the three lawsuits for which it seeks to recover fees. SOF ¶¶ 19, 35, 47. Instead, OLPC, through its sole member-manager Thomas Olson, seemingly voluntarily undertook [SOF ¶ 21] to assume the liabilities of Thomas Olson and other entities he or his sons control, in hopes to recover those fees from Ephraim. Ephraim is unaware of any case law applying the third-party litigation exception as OLPC seeks in this case. As detailed above, the third-party litigation exception is narrow. *See McQueen*, 2013 UT App 53, ¶ 26 ("Recovery of attorney fees as consequential damages is a narrow exception to the normal rule."). To apply the third-party litigation exception as OLPC seeks here would make new law, unduly broaden the exception, and serve as a roundabout around the standard American Rule that attorney fees are not recoverable absent a contract or statute. Because OLPC is not a party to the third-party litigation, the narrow exception through which it seeks to recover its damages does not apply.

"To succeed on a breach of contract claim, '[a] plaintiff is required to prove both the fact of damages and the amount of damages.'" *Sunridge Dev. Corp. v. RB & G Eng'g, Inc.*, 2013 UT App 146, ¶ 13, 305 P.3d 171 (quoting *Stevens-Henager Coll. v. Eagle Gate Coll.*, 2011 UT App

---

*v. Indiana Farmers Mut. Ins. Co.*, 837 N.E.2d 1032, 1039 (Ind. Ct. App. 2005) (noting the plaintiff must "engage in litigation with a third party to protect its interests."). In fact, Courts have even held that the Defendant's actions must "force" or "thrust" the plaintiff into the third-party litigation. *See Wheeling v. Selene Fin. LP*, 250 A.3d 197, 223 (Md. Ct. App. 2021) ("the plaintiff's recovery of attorney's fees as compensatory damages has been limited to instances where the defendant's wrongful conduct forced a plaintiff into collateral litigation involving a party other than the defendant."); *Talmer Bank & Tr. v. Jacobsen*, 2018 WI App 15, ¶ 9, 908 N.W.2d 495, 499 (noting that the wrongful act must have "forced the party seeking fees into litigation with a third party, or required the party seeking attorney fees to incur expenses protecting that party's interests against claims arising from the wrongful act."); *Prospect Dev. Co. v. Bershader*, 515 S.E.2d 291, 301 (Va. 1999) ("We have held that 'where a breach of contract has forced the plaintiff to maintain or defend a suit with a third person, he may recover the counsel fees incurred by him in the former suit provided they are reasonable in amount and reasonably incurred."); *Kallok v. Medtronic, Inc.*, 573 N.W.2d 356, 363 (Minn. 1998) ("the third-party litigation exception to the American rule permits a court to award attorney fees as damages if the defendant's tortious act thrusts or projects the plaintiff into litigation with a third party."); *Dorofee v. Plan. Bd. of Pennsauken Twp.*, 453 A.2d 1341, 1343 (N.J. App. Div. 1982) (applying the exception to plaintiffs who are "forced into litigation with a third party.").

37, ¶ 16, 248 P.3d 1025), "because proof of the amount of damages is a crucial element of any breach of contract claim." *Id.* ¶ 8. Without compensable damages,[6] the case must be dismissed.

### B. THE LITIGATION FOR WHICH OLPC SEEKS TO RECOVER FEES IS NOT A FORESEEABLE AND NATURAL RESULT OF EPHRAIM'S ALLEGED BREACH OR TORTIOUS CONDUCT

Even assuming OLPC could fit within the exception, the fees for which it seeks to recover are not the foreseeable and proximate result of Ephraim's alleged actions. The Utah Supreme Court, "set forth principles of foreseeability" in *Pacific Coast Title Insurance Co. v. Hartford Accident & Indemnity Co.*, 325 P.2d 906 (Utah 1958). *Gardiner v. York*, 2006 UT App 496, ¶ 15, 153 P.3d 791. For a loss resulting from a breach of contract to be reasonably foreseeable, it "must result from the breach in the natural and usual course of events, so that it can fairly and reasonably be said that if the minds of the parties had averted to breach when the contract was made, loss of such character would have been within their contemplation." *Pac. Coast Title Ins. Co*, 325 P.2d at 907. Proximate cause is a necessary prerequisite to establishing foreseeability. *See Harder*, 464 P.3d at 392 (stating that third-party litigation must be "the natural and proximate consequence of the defendant's wrongdoing.").

---

[6] Like breach of contract, OLPC's other claims also require damages as a necessary element. *Mahana v. Onyx Acceptance Corp.*, 2004 UT 59, ¶ 26, 96 P.3d 893, 899 ("measure for damages in a conversion action is the value of the converted property at the time of conversion, plus interest."); *SCO Grp., Inc. v. Int'l Bus. Machines Corp.*, 879 F.3d 1062, 1081 (10th Cir. 2018) (requiring injury for intentional interference claim); *Giles v. Min. Res. Int'l, Inc.*, 2014 UT App 259, ¶ 6, 338 P.3d 825, 827 ("To prove a breach of fiduciary duty claim, a plaintiff must demonstrate that the defendant owed a duty, the defendant breached the duty, the plaintiff suffered damages, and the plaintiff's damages were actually and proximately caused by the defendant's breach."); 18 U.S.C.A. § 1030 (noting required elements of CFAA claim including "at least $5,000 in value.").

For example, in *South Sanpitch Co. v. Pack*, 765 P.2d 1279 (Utah Ct. App. 1988), the defendant title company negligently failed to timely record the plaintiff's deed, forcing the plaintiff to file a quiet title action against a third party. *See id.* at 1280. The plaintiff then sued the defendant for the attorney fees incurred in prosecuting the quiet title action. *See id.* Because the plaintiff was only seeking attorney fees incurred in the third-party litigation and the third-party litigation was *caused* by the defendant's negligence, the court of appeals held that the third-party litigation exception applied. *See id.* at 1282-83. In reviewing the limits of the *South Sanpitch* decision, the Utah Supreme Court has emphasized that the third-party litigation exception "only applies to the recovery of fees incurred in resolving third-party disputes *caused by* a defendant's negligence." *Broadwater v. Old Republic Sur.*, 854 P.2d 527, 535 (Utah 1993) (emphasis added).[7]

Here, the third-party litigations for which OLPC seeks to recover were not the foreseeable, natural consequence of Ephraim's alleged actions. Specifically, with respect to *Burton v. Lemons*, that lawsuit alleges Bruce Lemons breached his fiduciary duty as trustee to the plaintiff when Mr. Lemons "permanently removed Naomi as a beneficiary of the [Waterton Land Trust]" on August 31, 2020. SOF ¶ 39. There is simply no indication that "but for" Ephraim's alleged actions, which occurred "on or around June 2020" (Ex. 2, ¶ 22-35), the *Burton v. Lemons* matter would not have been filed. Instead, it is clear that but for Mr. Lemons' actions in removing Naomi as a beneficiary of the trust on August 31, 2020 the *Burton v. Lemons* matter would not have been filed. In fact, OLPC has no evidence that Ephraim provided any documents to Naomi Burton. SOF ¶ 43. Any

---

[7] Secondary sources and case law from other jurisdictions impose similar foreseeability requirements. "To be recoverable as damages, expenses incurred in prior litigation with third parties must be the natural and necessary consequences of a defendant's act." 22 AM. JUR. 2D DAMAGES § 451. Specifically, "remote, uncertain, and contingent consequences do not afford a basis for recovery." 22 AM. JUR. 2D DAMAGES § 451. *Masonic*, 837 N.E.2d at 1039 (applying a "but for" standard for foreseeability).

allegation that Ephraim's actions caused the *Burton v. Lemons* lawsuit are far too remote, uncertain, and contingent to allow recovery under the third-party litigation exception.

With respect to the Mareva Injunction, again there is simply no indication that Ephraim's alleged actions in June 2020 foreseeably and naturally caused the Mareva Injunction. As detailed above, in entering the Mareva Injunction, the Court relied upon multiple submissions, one of which was the Affidavit of Carolyn Olson and its 29 exhibits. SOF ¶¶ 24-30. But of those 29 exhibits, only one of them is directly linked to Carolyn receiving a document from Tim A. and Ephraim allegedly introducing Carolyn to Tim A. SOF ¶¶ 24-30. Any argument that but for Carolyn's access to that one document she would not have filed the Mareva Injunction is far too remote, uncertain, and speculative to allow OLPC's recovery. Moreover, as the *Olson v. Olson* matter is "basically the same case as the [Mareva] injunction" any foreseeability argument for this case also fails.

Because OLPC has failed to establish that the lawsuits for which is seeks to recover attorney's fees were the natural and foreseeable consequence of Ephraim's actions in June 2020, OLPC's claim for damages fails. Thus, the case must be dismissed.

## III.  EVEN IF THE THIRD-PARTY LITIGATION EXCEPTION APPLIES, OLPC HAS NOT PROVED THE FACT OF DAMAGES BEYOND SPECULATION

OLPC's request for attorney's fees as damages is a request for pecuniary compensatory damages. "[T]he fundamental purpose of compensatory damages is to place the plaintiff in the same position he would have occupied had the tort not been committed." *Mahana v. Onyx Acceptance Corp.,* 2004 UT 59, ¶ 26, 96 P.3d 893. "When there has been harm only to the pecuniary interests of a person, compensatory damages are designed to place him in a position substantially equivalent in a pecuniary way to that which he would have occupied had no tort been

committed." RESTATEMENT (SECOND) OF TORTS § 903, cmt. a (1979); *Lysenko v. Sawaya*, 2000 UT 58, ¶ 22, 7 P.3d 783, 788 (applying RESTATEMENT (SECOND) OF TORTS § 903, cmt. a)

The Restatement further clarifies that "Compensatory damages that will <u>not be awarded without proof of pecuniary loss</u> include compensation for . . . (c) the creation of liabilities." RESTATEMENT (SECOND) OF TORTS § 906 (emphasis added).

In proving damages, a plaintiff must prove both the fact and amount of damages with reasonable certainty and without speculation or mere guesswork. *Atkin Wright & Miles v. Mountain States Tel. & Tel. Co.*, 709 P.2d 330, 336 (Utah 1985); *Stevens-Henager Coll.*, 2011 UT App 37, ¶ 16 (same). A plaintiff must "prove the fact of damages by a preponderance of the evidence." *Andreason v. Aetna Cas. & Sur. Co.*, 848 P.2d 171, 176 (Utah Ct. App. 1993). "The evidence must do more than merely give rise to speculation that damages in fact occurred." *Atkin*, 709 P.2d at 336.

Here, OLPC seeks purely pecuniary compensatory damages. But OLPC has not proved the fact of damages because OLPC has not suffered any pecuniary loss. As detailed above, OLPC has not paid any of the invoices for which it seeks to recover damages. SOF ¶¶ 22, 38, 50. In fact, OLPC testified that it only anticipates paying those invoices at some unknown point in the future. SOF ¶¶ 22, 50. This is pure speculation. "[I]t is [ ] a general rule of long standing that a plaintiff must show damages by evidence of facts and not by mere conclusions, and that the items of damage must be established by substantial evidence and not by conjecture." *Highland Const. Co. v. Union Pac. R. Co.*, 683 P.2d 1042, 1045 (Utah 1984). OLPC's testimony alone, that it plans to pay these invoices at some point in the future, is the very speculation and conjecture courts seek to exclude.

Moreover, case law applying the third-party litigation exception has also held that when the third-party litigation "has not been concluded," the defendant's actions "cannot yet be held to have wrongfully thrust the [plaintiff] into litigation." *First Fiduciary Corp. v. Blanco*, 276 N.W.2d 30, 34 (Minn. 1979). In fact, "Courts have required that the claim arise from a prior litigation because a factual determination from the earlier suit is necessary to determine the applicability of the exception—*i.e.,* whether a party's tortious acts wrongfully involved the aggrieved party in the earlier litigation-in the later suit." *Amusement Indus., Inc. v. Stern*, 786 F. Supp. 2d 741, 756 (S.D.N.Y. 2011). Here, only the Mareva Injunction case has come to a conclusion. SOF ¶ 32. Thus, OLPC has failed to establish the fact of these damages because Ephraim cannot yet be held to have wrongfully thrust OLPC into the litigation. Because OLPC has failed to establish the fact of any damages beyond mere speculation and conjecture, the Court may appropriately grant summary judgment. *See Atkin*, 709 P.2d at 336 (reversing jury award where plaintiff "offered no proof whatsoever or lost net income" and offered only "insufficient foundation for proof of the amount of damages.").

## IV.    EVEN IF THE THIRD-PARTY LITIGATION EXCEPTION APPLIES, OLPC HAS NOT PROVED THE AMOUNT OF DAMAGES BEYOND SPECULATION

OLPC has also failed to establish the amount of its damage beyond mere speculation. "While the standard for determining the amount of damages is not so exacting as the standard for proving the fact of damages, there still must be evidence that rises above speculation and provides a reasonable, even though not necessarily precise, estimate of damages." *TruGreen Cos. v. Mower Bros.*, 2008 UT 81, ¶ 15, 199 P.3d 929. Utah Courts applying the third-party litigation exception have noted that "care must be taken in cases like this to ensure not only that the attorney fees are

otherwise properly calculated, . . . but also that an allocation is made between recoverable fees incurred in litigation with third parties and non-recoverable fees incurred in pursuing the negligent defendant or expended on causes of action not proximately necessitated by that defendant's negligence." *South Sanpitch*, 765 P.2d at 1283. Moreover, the fees incurred in litigation with a third party "must have been reasonably incurred." 22 Am. Jur. 2d Damages § 452. "The recovery is limited to a reasonable amount" and "recovery will not be allowed if the position taken in the prior litigation had no legal support." *Id.*

Here, no care has been taken to ensure that an allocation is made between recoverable fees incurred with third-parties and those not proximately necessitated by Ephraim's alleged actions. In fact, OLPC's own expert has opined that Ephraim's actions were "one of the reasons several lawsuits were filed against OLPC's clients" and that "these lawsuits were partly derived from the Confidential Documents shared by Ephraim Olson." Ex. 7. Moreover, there is no way to evaluate whether the fees are limited to a reasonable amount or if the positions taken had legal support from the invoices produced. For example, Foley & Larder billed over $149,000 in fees purportedly related to the *Burton v. Lemons* matter, and yet OLPC is only seeking damages for $109,000. SOF ¶ 34. There is no explanation for this discrepancy. Moreover, OLPC testified that these invoices related to the *Burton v. Lemons* matter, a matter pending in Utah state court. SOF ¶¶ 33-34. But several of the billing entries appear to relate to other unknown litigation. *See* Ex. 20 at OLPC Ephraim Olson 14212 ("Exchange emails re files from Canadian Litigation."); 14218 ("Review and edit Answer in Canada; exchange emails re the same."); 14221 ("review Alberta Action filings and Manitoba Statement of Defense"). Moreover, several billing entries appear entirely unrelated to Ephraim's alleged actions, even accepting OLPC's speculation in the first place. *See* Ex. 20 at

OLPC Ephraim Olson 14221, 14225, 14229, 14230, 14233 (all referencing Docusign).[8] Worse yet, the BLG and Peacock Linder invoices are so heavily redacted that it is impossible to determine what work was being performed or how it may have been related to Ephraim's alleged actions. Exs. ___ and ____. Thus, because OLPC has failed to prove the amount of damages beyond speculation, the Court may appropriately grant summary judgment. *See Atkin*, 709 P.2d at 336 (reversing jury award where plaintiff "offered no proof whatsoever of lost net income" and offered only "insufficient foundation for proof of [the] amount of damages.").

## V. ANY PROXIMATE CAUSE IS TOO SPECULATIVE SUCH THAT OLPC'S CLAIMS FAIL AS A MATTER OF LAW

While foreseeability may be appropriately analyzed as "but for" causation, OLPC must also establish proximate causation. *See Thurston v. Workers Comp. Fund of Utah*, 2003 UT App 438, ¶ 23, 83 P.3d 391 (recognizing that a "[d]efendant[']s[] acts, whether breaches of contract or torts, must be causally linked to [the p]laintiff[']s[] damages") "Proximate cause requires 'some greater level of connection between the act and the injury than mere 'but for' causation.'" *State v. Oliver*, 2018 UT App 101, ¶ 21, 427 P.3d 495. "The central question in assessing proximate cause is 'whether liability should attach to a particular cause in fact.'" *Id.*; *see also USA Power, LLC v. PacifiCorp*, 2016 UT 20, ¶ 114, 372 P.3d 629 (stating that "[u]ltimately, a proximate cause analysis looks to whether an individual who is a but-for cause of the harm should nevertheless be excused from liability"). "Proximate cause issues can be decided as a matter of law when a determination of the facts falls on either of two opposite ends of a factual continuum: (i) when the facts are so

---

[8] As OLPC testified, "The question with respect to DocuSign has to do with actions taken by the trustee and whether the trustee had authority to take those directions." OLPC Third 30(b)(6) at 30:16-31:23, Ex. 9.

clear that reasonable persons could not disagree about the underlying facts or about the application of a legal standard to the facts, and (ii) when the proximate cause of an injury is left to speculation so that the claim fails as a matter of law." *Crestwood Cove Apts. Bus. Trust v. Turner*, 2007 UT 48, ¶ 32, 164 P.3d 1247. Here, the issue of proximate cause is left to pure speculation and OLPC's claims fail as a matter of law.

> As the Court of Appeals has stated:

> damages are not recoverable for injury that is too remote from the conduct of the defendant constituting his breach of duty. . .[D]amages are not recoverable for losses suffered. . .unless the requirements of the law as to 'proximate' causation are satisfied. The form of this rule is the same whether it is being applied in the field of contracts or in the field of torts.

*Thurston*, 2003 UT App 438, ¶ 23, 83 P.3d 391 (citation omitted).  Moreover, simply categorizing a claim for damages under a cause of action is insufficient. *Id.* A Plaintiff must still submit some direct evidence causally linking the cause of action alleged to the damages claimed. *Id.*, ¶ 18. "When causation is left to conjecture, the plaintiff must fail as a matter of law." *Id.* A jury cannot be permitted to speculate as to causation. *Id.* ¶ 16. Similarly, experts "may not give an opinion which represents a mere guess, speculation, or conjecture." *Id.* ¶ 20.

For all the reasons detailed above, proximate cause between Ephraim's alleged actions and OLPC's damages is based purely upon OLPC's own speculation and conjecture. Moreover, OLPC's damages expert also relies purely on conjecture. As the Court has already found, Hoffman's expert report contains no analysis whatsoever as to causation and relies exclusively on Plaintiff's allegations. SOF ¶ 14. Moreover, the complexity of OLPC's claims certainly requires expert testimony to establish causation. Thus, OLPC's failure to provide expert testimony as to causation further requires dismissal of its claims.

In Utah, "[t]he need for positive expert testimony to establish a causal link between the defendants' negligent act and the plaintiff's injury depends on the nature of the injury." *Beard v. K–Mart Corp.,* 2000 UT App 285, ¶ 16, 12 P.3d 1015. "Utah courts generally require expert testimony to prove causation in tort cases in all but the most obvious cases." *Blank v. Garff Enterprises Inc.,* 2021 UT App 6, ¶ 30, 482 P.3d 258, 267. "In particular, expert testimony may be necessary in cases that involve trades or professions that require specialized knowledge, 'such as medicine, architecture, and engineering.'" *Blank v. Garff Enterprises Inc.,* 2021 UT App 6, ¶ 29, 482 P.3d 258, 266 (requiring expert testimony to establish causation between car accident and enhanced medical injury); *Townhomes at Pointe Meadows Owners Ass'n v. Pointe Meadows Townhomes, LLC,* 2014 UT App 52, ¶ 20, 329 P.3d 815 (holding that expert testimony was required to prove construction defect claims). Any time the connection between a Defendant's actions and the plaintiff's injuries are "not within the knowledge of an ordinary lay person," expert testimony as to causation will be required. *Hansen v. Harper Excavating, Inc.,* 2014 UT App 180, ¶ 15, 332 P.3d 969, 974.

Here, expert testimony is required to establish causation. *Wayt v. Miller,* 64 Fed. Appx. 697, 700 (10th Cir. 2003) (affirming grant of summary judgment where plaintiff lacked causation expert in legal malpractice claim).[9] OLPC alleges Ephraim's access to certain "Confidential

---

[9] While OLPC has offered a standard of care expert, that expert provides no opinion causally linking Ephraim's alleged actions to OLPC's claimed damages. Even in legal malpractice cases, which this is not, plaintiffs must still prove proximate cause. *Iacono v. Hicken,* 2011 UT App 377, 265 P.3d 116 (affirming bench trial finding defendant did not commit legal malpractice where plaintiff established a breach of the standard of care but failed to establish that breach was the actual and proximate cause of the damages suffered). Thus, OLPC's standard of care expert does nothing to cure OLPC's failure to establish proximate cause.

Documents" caused the filing of three separate litigations in three separate venues. As OLPC itself testified,

> There's a whole bunch of stolen things that were used in these proceedings, and which specific ones were used in which document, the invoices do not relate to that. They relate to the action generally. So there's no line item talking about Carolyn Olson Spousal Trust as a separate item. It's about all the stolen documents that were used were the basis for these lawsuits. And there's no specific breakdown in any invoice about Carolyn Olson Spousal Trust versus that. There wouldn't be, because it's the whole lawsuit. It's an amalgam of all that stuff.

SOF ¶ 51.

Thus, because the Invoices themselves do not establish a causal link between Ephraim's alleged actions and the lawsuits, in order to properly establish causation, a juror would be required to understand the bases for each of the three lawsuits and the role the "stolen" documents played in each case. This is beyond the ken of the average lay person and thus requires expert testimony. Thus, the Court may appropriately grant summary judgment as a matter of law dismissing OLPC's claims. *Blank*, 2021 UT App 6, ¶ 32.

## VI.    ALTERNATIVELY, OLPC FAILED TO ESTABLISH DAMAGES FOR ITS CFAA CLAIM

OLPC has alleged a claim under the Computer Fraud and Abuse Act ("CFAA"), alleging a conspiracy to access protected computers under the meaning of CFAA. First Amended Complaint, ¶¶ 67-75. The CFAA applies to both those or conspire to commit and/or attempt to commit and offense under the act. *See* 18 U.S.C.A. § 1030(b). While most CFAA remedies are criminal, someone who "suffers damage or loss by reason of a violation of this section may maintain a civil action against the violator to obtain compensatory damages and injunctive relief or other equitable relief." § 1030(g).

The types of loss or damage recoverable under the statute, however, are quite narrow.

"Loss" is defined to mean "any reasonable cost to any victim, including the cost of responding to an offense, conducting a damage assessment, and restoring the data, program, system, or information to its condition prior to the offense, and any revenue lost, cost incurred, or other consequential damages incurred because of interruption of service." § 1030(e)(4)(11). "Damage" means "any impairment to the integrity or availability of data, a program, a system, or information." § 1030(e) (8). That is, remedial costs of "hacking" of at least $5,000. *See, e.g., Van Buren v. United States,* 593 U.S. 374, 391-92 (2021) ("Limiting 'damage' and 'loss' [to remedial costs flowing from technological harms] makes sense in a scheme aimed at preventing the typical consequences of hacking." (cleaned up)); *Vox Mktg. Grp. v. Prodigy Promos*, 556 F. Supp. 3d 1280, 1290 (D. Utah 2021) ("If Vox prevails on its claim [that Prodigy's access to Vox's webpages was without authorization] its 'damages' appear limited to compensation for 'impairment to the integrity or availability of data, a program, a system, or information,' and, presumably, reasonable costs that it incurred 'responding to an offense, conducting a damage assessment, and restoring the data, program, system, or information to its condition prior to the offense, and any revenue lost, cost incurred, or other consequential damages incurred because of interruption of service." (internal citations omitted) (quoting 18 U.S.C. §§ 1030(e)(8), (11)). *See also ACI Payments, Inc. v. Conserve, LLC,* No. 1:21-CV-00084-RJS-CMR, 2022 WL 622214, at *12 (D. Utah Mar. 3, 2022) (dismissing CFAA claim because plaintiff failed to adequately allege loss or damages even under the broader interpretation of 'cost of responding to an offense' adopted by the Fourth, Sixth, and Eleventh Circuits).[10]

---

[10] Judges Shelby and Nielson's conclusions about "loss" and "damages" under the CFAA post-*Van Buren* are hardly unique. *See, e.g.*, *El Omari v. Buchanan*, No 20 Civ. 2601 (VM), 2021 WL 5889341, at *14 (S.D.N.Y. Dec. 10, 2021) (To be cognizable, the plaintiffs "loss" thus must have arisen from identifying and remedying "damage" to the affected computer system).

In short, any attorney fees and litigation costs aimed at prosecuting a CFAA claim—not at remedying damage to the technology—do not count as "damage" or "loss" under the CFAA. *See, e.g.*, *United Federation of Churches, LLC v. Johnson*, 598 F. Supp. 3d 1084, 1097 (W.D. Wa. 2022); *Welter v. Med. Pros. Mut. Ins. Co.*, No. 22-CV-11047, 2023 WL 2988627, at *10 (D. Mass. Feb. 23, 2023); *Sartori v. Schrodt*, 424 F. Supp. 3d 1121, 1130 n.9 (N.D. Fla. 2019); *Hamilton Grp. Funding, Inc. v. Basel*, No. 16-61145-CIV, 2019 WL 3765340, at *4-5 (S.D. Fla. 2019); *Wichansky v. Zowine*, 150 F. Supp. 3d 1055, 1071-72 (D. Ariz. 2015); *Turner W. Branch, P.A. v. Osborn*, No. 13-00110, 2014 WL 12593991, at *18 (D.N.M. Mar. 26, 2014); *Brooks v. AM Resorts, LLC*, 954 F.Supp.2d 331, 338 (E.D. Pa. 2013); *Del Monte Fresh Produce, N.A., Inc. v. Chiquita Brands Int'l Inc.*, 616 F. Supp. 2d 805, 812 (N.D. Ill. 2009); *NCMIC Fin. Corp. v. Artino*, 638 F. Supp. 2d 1042, 1065-66 (S.D. Iowa 2009); *Wilson v. Moreau*, 440 F. Supp. 2d 81, 110 (D. R.I. 2006).

Here, OLPC has not sought and cannot establish any cognizable "loss" or damage recoverable for its CFAA claim. Thus, Ephraim is entitled to judgment as a matter of law on OLPC's CFAA claim.

## VII.    ALTERNATIVELY, OLPC FAILED TO ESTBALISH DAMAGES FOR ITS INTENTIONAL INTERFERENCE WITH ECONOMIC RELATIONS CLAIM

OLPC asserts a claim for intentional interference with economic relations, which in Utah is an umbrella term encompassing two torts: intentional interference with performance of a contract and intentional interference with prospective contractual relations. *See Celtig, LLC v. Patey*, 347 F. Supp. 3d 976, 986 (D. Utah 2018) (citing *Leigh Furniture & Carpet Co. v. Isom*, 657 P.2d 293 (Utah 1982), *overruled on other grounds by Eldridge v. Johndrow*, 2015 UT 21, 345 P.3d 553). The two torts have overlapping elements and are often analyzed together by Utah courts.

*Id.* (citing *Anderson Dev. Co. v. Tobias*, 2005 UT 36, 116 P.3d 323; *St. Benedict's Dev. Co. v. St. Benedict's Hosp.*, 811 P.2d 194, 200 (Utah 1991)). Indeed, in several cases courts have condensed the torts into one set of elements: "Under Utah law, the elements of tortious interference are: (1) *intentional interference* with plaintiff's existing or potential business relationships, (2) the interference is accomplished by *improper means*, and (3) *injury* suffered by plaintiff." *SCO Grp., Inc. v. Int'l Bus. Machines Corp.*, 879 F.3d 1062, 1081 (10th Cir. 2018); *Big Squid, Inc. v. Domo, Inc.*, No. 2:19-CV-193, 2019 WL 3555509, at *9 (D. Utah Aug. 5, 2019); *Celtig, LLC*, 347 F. Supp. 3d at 988.

The third element of an intentional interference claim, the injury suffered by plaintiff, refers to the damages element of the claim. For the damages element, Utah has "adopted section 774A of the Restatement (Second) of Torts, which defines the measure of damages for tortious interference with a contract." *TruGreen*, 2008 UT 81, ¶ 22. Section 774A provides damages for "(a) the pecuniary loss of the benefits of the contract or the prospective relation; (b) consequential losses for which the interference is a legal cause; and (c) emotional distress or actual harm to reputation, if they are reasonably to be expected to result from the interference." *Id.* However, reputational injuries, standing alone, "are not properly remedied through tortious interference." *Zhang v. Transpose Platform Mgmt., LLC*, No. 2:23-CV-00475-DBB-CMR, 2024 WL 2750547, at *8 (D. Utah May 29, 2024).

"[P]urely pecuniary losses from tortious interference are measured by the same standard as breach of contract." *TruGreen*, 2008 UT 81, ¶ 24. This is often defined as lost profits. In *TruGreen*, the Utah Supreme Court held that "lost profits is the appropriate measure of damages for tortious interference with a competitor's contractual and economic relations." *Id.* ¶ 27 (explaining that

"plaintiff's losses is the appropriate method of measuring damages in cases of tortious interference with contractual and economic relations."); *see also Marcus, Stowell & Beye Gov't Secs., v. Jefferson Inv. Corp.*, 797 F.2d 227, 231–32 (5th Cir. 1986) (revealing that the measure of damages for tortious interference and breach of contract claims is lost profits); *Nora v. Safeco Ins. Co.*, 99 Idaho 60, 577 P.2d 347 (1979) (internal citations omitted) (stating "in cases of tortious interference . . . damages for loss of anticipated earnings or profits must be shown with reasonable certainty.").

Here, OLPC has not alleged lost profits damages. First, none of OLPC's initial disclosures disclose an intent to seek lost profits. Instead, OLPC's disclosures only state, "OL Private Counsel's damages consist of harm to its goodwill, loss of clients, and loss of its confidential information." SOF ¶¶ 4-6. But, as noted above, reputational injuries, standing alone, "are not properly remedied through tortious interference." *Zhang*, 2024 WL 2750547, at *8.

Moreover, OLPC damages expert, Rick Hoffman, does not couch his opinion as one for lost profits. In fact, the word "profit" does not even appear in the Hoffman report. *See* Ex. 7. But, even if OLPC had alleged lost profit damages, OLPC has failed to produce any evidence sufficient to support a claim of lost profits.

Under Utah law, "lost profits must be established with reasonable certainty . . . or, in other words, with sufficient certainty that reasonable minds might believe from a preponderance of the evidence that the damages were actually suffered." *Stevens-Henager Coll.*, 2011 UT App 37, ¶ 28. In *Stevens-Heneger*, the Court of Appeals upheld the trial courts' grant of summary judgment when plaintiffs failed to provide sufficient evidence of their damages at the summary judgment stage. 2011 UT App 37. Alleging damages of lost profits, the plaintiffs asserted that they incurred costs in replacing its employees, suffered damage to morale, and wasted expenditures on

29

advertising and marketing as a result of defendants' action. *Id.* ¶ 26. With respect to costs incurred in replacing employees and lost morale, the Court found that the evidence provided was insufficient to establish lost profits. *Id.* ¶ 27. Nothing in the testimony offered indicated precisely how many students were lost or the revenue Plaintiff could have expected from that enrollment. *Id.* ¶ 19. As the Court stated, "[w]ithout more, the jury could not determine, by a preponderance of the evidence, whether [plaintiff] lost profits or the amount of lost profits with enough certainty to avoid an award based on speculation." *Id.* With respect to wasted advertising and marketing expenditures, the Court held that "advertising and marketing expenses, together with other costs of doing business, are subtracted from gross revenues to calculate net profit." *Id.* Instead, actual lost profits are "compared with either historical data, or with the reasonably supported estimated net profits that would have been earned absent the defendant's conduct, to arrive at the amount of damages." *Id.* Thus, the court held that advertising and marketing costs, considered alone, "do not provide evidence of either the fact or the amount of Stevens–Henager's damages." *Id.*

In fact, Utah Courts have frequently dismissed general claims for lost profits when they are inadequately supported by evidence allowing a jury to calculate actual lost profits. *See Giusti v. Sterling Wentworth Corp.,* 2009 UT 2, ¶ 62, 201 P.3d 966 (affirming summary judgment for the defendant because the plaintiff "failed to provide current commission figures" and the trial court "could not accurately compare the numbers to determine whether [the plaintiff] suffered any damage"); *Price–Orem Inv. Co. v. Rollins, Brown & Gunnell, Inc.,* 784 P.2d 475, 479 (Utah Ct. App.1989) (holding that proof of damages by reasonable certainty requires "more than a mere estimate of net profits, to wit: the plaintiff must provide supporting evidence of overhead expenses and other costs of producing income from which a net figure can be derived."); *Atkin Wright &*

*Miles v. Mountain States Tel. & Tel. Co.,* 709 P.2d 330, 336-37 (Utah 1985) (holding that evidence of an overall decrease in plaintiff's gross income and testimony that clients had difficulty getting in touch with plaintiff and that at least one client was lost, without evidence of the plaintiff's net loss or the value of the lost fees, was not sufficient proof of even the fact of damages); *First Sec. Bank of Utah, N.A. v. J.B.J. Feedyards, Inc.,* 653 P.2d 591, 595 (Utah 1982) (rejecting claim for lost profit damages, despite expert testimony on projected profits, where the claimant "presented no evidence showing that his livestock profits actually decreased during the years in question").

Beyond the lost profits analysis, OLPC has further failed to establish damages for its intentional interference claim as it has not even established any pecuniary consequential loss. Restatement (Second) of Torts § 774A. As detailed, it has not paid any of the fees which is seeks to recover. Thus, OLPC has failed to establish damages for its intentional interference claim and the claim must be dismissed.

## VIII.  ALTERNATIVELY, OLPC FAILED TO ESTABLISH DAMAGES FOR ITS CLAIMS FOR CONVERSION AND AIDING AND ABETTING CONVERSION

Conversion "is an act of willful interference with a chattel, done without lawful justification by which the person entitled thereto is deprived of its use and possession."[11] *Allred v. Hinkley*, 8 Utah 2d 73, 328 P.2d 726, 728 (1958); *see also Kirkham v. Widdison*, 2019 UT App 97, ¶ 24, 447 P.3d 89; *Lawrence v. Intermountain, Inc.*, 2010 UT App 313, ¶ 15, 243 P.3d 508. "Conversion is concerned with possession, not title." *Fibro Tr., Inc. v. Brahman Fin., Inc.*, 1999 UT 13, ¶ 20, 974 P.2d 288 (cleaned up). Simply, conversion occurs when a party "exercises control

---

[11] OLPC has not even stated a prima facie claim for conversion. Notably, OLPC does not allege that it has been deprived of the use of the various documents. Instead, OLPC alleges that Ephraim's actions "have caused the Converted Documents to decrease in value and usefulness." *Id.* ¶ 46. Moreover, OLPC testified that Ephraim's possession of the various Converted Documents does not preclude OLPC from exercising any control over the documents. SOF ¶ 7. On these grounds as well, the Court may dismiss OLPC's damage claim.

over property that is inconsistent with [another party's] right of possession to that property." *Id.* Therefore, "a party alleging conversion must show that he or she is entitled to immediate possession of the property at the time of the alleged conversion." *Id.* Typically, damages for conversion claims are calculated by determining "the value of the property at the time of the conversion, plus interest." *Broadwater v. Old Republic Sur.*, 854 P.2d 527, 531 (Utah 1993).

Here, OLPC argues that Ephraim converted documents by "encouraging, enticing, conspiring, and working with [Tim A.] to transmit the Converted Documents to Defendant and to other third parties, any by copying, retaining, and sharing the Converted Documents." First Amended Complaint, ¶ 44. OLPC alleges that "Defendant's actions to misappropriate, and then share, the Converted Documents have caused the Converted Documents to decrease in value and usefulness." *Id.* ¶ 46. But OLPC has failed to disclose or allege any damages relating to the "value" of the allegedly converted documents. Instead, OLPC has only alleged damages relating to various third-party litigations. As OLPC has not disclosed any other damages which could support its claims for conversion and aiding and abetting conversion, the conversion claims must fail.

## IX.    OLPC'S CLAIM FOR INJUNCTIVE RELIEF FAILS

OLPC's claim for injunctive relief fails on three grounds. First, it is a claim for relief, not a cause of action. *See, e.g., Teague v. Christian,* No. 4:18-cv-00052-DN-PK, 2019 WL 4686717, at *8 (D. Utah 2019). Second, the claim is based exclusively on OLPC's underlying claim of conversion. First Am. Compl., ¶ 83. Because the conversion claim fails due to OLPC's lack of recoverable damages, the request for injunctive relief also fails. Third, even if the injunctive relief request survives, the claim still fails as it has failed to establish immediate irreparable harm.

### A.  INJUNCTIVE RELIEF IS NOT A CAUSE OF ACTION.

Courts in Utah distinguish between equitable remedies, and causes of action. *See, e.g., Rain Internat'l LLC v. Drockton*, 2021 UT App 68, ¶ 5, 494 P.3d 1054 ("A claim is the aggregate of operative facts which give rise to a right enforceable in the courts." (cleaned up)); *Allegis Inv. Srvs. v. Authur J. Gallagher & Co.*, 371 F.Supp. 3d 983, 999 (D. Utah 2019) ("punitive damages are a remedy, not a cause of action."); *Utah Republican Party v. Cox*, 177 F. Supp. 3d 1343, 1364 (D. Utah 2016), *aff'd*, 885 F.3d 1219, *en banc denied*, 892 F.3d 1066 (10th Cir. 2018), *cert. denied*, 139 S.Ct. 1290 (2019) ("judicial estoppel is an affirmative defense, not an individual cause of action, so URP is incorrect to seek summary judgment on judicial estoppel as if it were an independent cause of action." (cleaned up)); *Bushnell v. Barker*, 2012 UT 20, ¶ 13, 274 P.3d 968 ("An alter ego claim is not itself a claim for substantive relief, e.g., breach of contract or to set aside a fraudulent conveyance, but rather, procedural, i.e., to disregard the corporate entity as a distinct defendant and to hold the alter ego individuals liable on the obligations of the corporation." (cleaned up)); *Harvey v. Ute Indian Tribe of Uintah & Ouray Reservation,* 2017 UT 75, ¶ 73, 416 P.3d 401 ("there is currently no civil cause of action for extortion, and thus, there is no legal remedy."); *Rawlings v. Rawlings*, 2010 UT 52, ¶¶ 26-32, 240 P.3d 754 (explaining that a constructive trust, as a remedy, must be based on an underlying cause of action); *Norman v. Arnold,* 2002 UT 81, ¶ 8 n.2, 57 P.3d 99 ("punitive damages cannot be pleaded as an independent cause of action."); *Morris v. Sykes,* 624 P.2d 681, 684 (Utah 1981) ("Specific performance is a remedy of equity which is addressed to the sense of justice and good conscience of the court. . . .").

Specifically with regard to preliminary injunctions, Utah Courts have repeatedly recognized that "injunctive relief" not a standalone claim for relief, but a mere remedy, dependent upon succeeding in another underlying cause of action. *See, e.g., Mitchell v. ReconTrust Co. NA,*

2016 UT App 88, ¶ 8, 373 P.3d 189; *Firehole River Cap., LLC v. Supurva Healthcare Grp., Inc.*, No. 2:21-CV-00153-DBB, 2021 WL 4291087, at *7 (D. Utah Sept. 21, 2021) (citing *Teague v. Christian*, No. 4:18-CV-00052 DN PK, 2019 WL 4686717, at *8 (D. Utah Sept. 25, 2019)); *Ivanti, Inc. v. StayLinked Corp.,* No. 2:19-cv-75-DB, 2019 WL 4645325, at *3 (D. Utah Sept. 24, 2019); *Capener v. Napolitano,* No. 2:11-CV-00601-DN, 2012 WL 1952199, at *2 (D. Utah May 30, 2012). As a matter of law, this claim must be dismissed with prejudice.

Even construing this cause of action as a subset of OLPC's conversion claims, to succeed on a preliminary injunction, the moving party must satisfy all four prongs, which it cannot do. The four-part test requires a showing of:

(1) a likelihood of success on the merits;
(2) a likely threat of irreparable harm to the movant;
(3) the harm alleged by the movant outweighs any harm to the non-moving party; and
(4) an injunction is in the public interest.

*See Silver v. Synchrony Bank*, No. 2:22-CV-00578-DBB-JCB, 2024 WL 1913772, at *1 (D. Utah Apr. 12, 2024), *report and recommendation adopted*, No. 2:22-CV-00578-DBB-JCB, 2024 WL 1912456 (D. Utah Apr. 30, 2024), *Utah Republican Party v. Herbert,* 133 F. Supp. 3d 1337, 1346 (D. Utah 2015),  *Hobby Lobby Stores, Inc. v. Sebelius*, 723 F.3d 1114, 1128 (10th Cir.2013).

### B.  OLPC IS NOT LIKELY TO SUCCEED ON THE MERITS OF ITS CONVERSION-RELATED CLAIMS

Here, OLPC's request for injunctive relief is based entirely on its conversion-related claims. And, as detailed above, OLPC has failed to allege any damages recoverable under its conversion related claims. Thus, OLPC is not likely to succeed on the merits of its conversion claims. Thus, OLPC's cannot demonstrate the first prong.

### C.  OLPC FAILED TO ESTABLISH IRREPARABLE HARM

A party may be granted a preliminary injunction only when monetary or other traditional legal remedies are inadequate, and "the right to relief [is] clear and unequivocal." *First W. Cap. Mgmt. Co. v. Malamed*, 874 F.3d 1136, 1141 (10th Cir. 2017) (quoting *Schrier v. Univ. of Colo.*, 427 F.3d 1253, 1258 (10th Cir. 2005)). "'[B]ecause a showing of probable irreparable harm is the single most important prerequisite for the issuance of a preliminary injunction, the moving party must first demonstrate that such injury is likely before the other requirements' will be considered." *First W. Capital Mgmt. Co.*, 874 F.3d at 1141 (quoting *Dominion Video Satellite, Inc. v. Echostar Satellite Corp.*, 356 F.3d 1256, 1260 (10th Cir. 2004)). "[E]ven if Plaintiffs establish a likelihood of success on the merits, the absence of a substantial likelihood of irreparable injury would, standing alone, make preliminary injunctive relief improper." *Siegel v. LePore*, 234 F.3d 1163, 1176 (11th Cir. 2000). Moreover, "[t]he party seeking injunctive relief must show that the injury complained of is of such imminence that there is a clear and present need for equitable relief to prevent irreparable harm." *Heideman v. South Salt Lake City*, 348 F.3d 1182, 1189 (10th Cir. 2003).

Here, the injury complained of is the alleged use of various "Confidential Documents" in the three third-party litigations. But, as detailed above, OLPC has failed to establish that Ephraim's actions played any role in the *Burton v. Lemons* matter, the Mareva Injunction matter, or the *Olson v. Olson* matter. Thus, OLPC has failed to establish irreparable harm, let alone imminent harm, so it is not entitled to injunctive relief.

## CONCLUSION

Based upon the foregoing, Ephraim respectfully requests the Court dismiss OLPC's case in its entirety. In the alternative, the Court should dismiss OLPC's claims for the Computer Fraud

and Abuse Act, Intentional Inference with Economic Relations, Conversion, Aiding and Abetting

Conversion, and Injunctive Relief.

      DATED this 31st day of January, 2025.

                                        FABIAN VANCOTT


                                        */s/ Sarah C. Vaughn*
                                        Scott M. Lilja
                                        Sarah C. Vaughn
                                            *Attorneys for Ephraim Olson*

## CERTIFICATE OF SERVICE

I hereby certify that on this 31st day of January, 2025, a true and correct copy of the foregoing **MOTION FOR SUMMARY JUDGMENT** was served via electronic mail on the following:

David J. Jordan
Monica S. Call
Ellen E. Ostroe
Hannah L. Andrews
Ellen E. Ostrow
FOLEY & LARDNER LLP
299 S. Main Street, Suite 2000
Salt Lake City, UT 84111
*djordan@foley.com*
*mcall@foley.com*
*eostrow@foley.com*
*handrews@foley.com*

*/s/ Sarah C Vaughn*