# EXHIBIT 21

# EXHIBIT 21

Joseph M. Stultz (12251)
Stephen J. Mayfield (10323)
**YORK HOWELL & GUYMON**
10610 South Jordan Gateway, Suite 200
South Jordan, Utah 84095
Telephone: 801-527-1040
joe@yorkhowell.com
steve@yorkhowell.com

IF YOU DO NOT RESPOND TO THIS DOCUMENT WITHIN APPLICABLE TIME LIMITS, JUDGMENT COULD BE ENTERED AGAINST YOU AS REQUESTED.

*Attorneys for Plaintiff*

---

# IN THE THIRD JUDICIAL DISTRICT COURT
## IN AND FOR SALT LAKE COUNTY, STATE OF UTAH

| | |
|---|---|
| NAOMI W. BURTON, an individual,<br><br>Plaintiff,<br><br>v.<br><br>BRUCE N. LEMONS, an individual,<br><br>Defendant. | **FIRST AMENDED COMPLAINT**<br><br>Case No. 220901538<br><br>Judge Chelsea Koch<br><br>** Tier 3 Action **<br><br>**Jury Trial Demanded** |

Naomi W. Burton ("**Plaintiff**" or "**Naomi**") hereby complains and alleges against Bruce N. Lemons ("**Defendant**" or "**Bruce**") as follows:

### PARTIES, JURISDICTION, AND VENUE

1. Plaintiff Naomi W. Burton is an individual who currently resides in Utah County, State of Utah.

2. Defendant Bruce N. Lemons is an individual who currently resides in Salt Lake County, State of Utah.

3. Defendant Bruce N. Lemons was the Settlor of The Waterton Land Trust.

4. The Waterton Land Trust is a trust settled or established on September 28, 2004.

5. Jurisdiction exists in this Court under Utah Code § 78A-5-102.

6. Venue is proper in this Court pursuant to Utah Code § 78B-3-307(1)(a) and Utah Code § 78B-3-307(1)(b).

7. Plaintiff seeks damages in excess of $300,000.00 and thus this case is a Tier 3 case within the meaning of Rule 26(c), Utah Rules of Civil Procedure.

**GENERAL ALLEGATIONS**

8. The Waterton Land Trust (the "**Trust**") was settled or established on September 28, 2004, with Bruce N. Lemons named as the Settlor and 1030911 Alberta Ltd. named as the Original Trustee.

9. The main asset of the Trust is Waterton Land Trust Ltd., which owns a valuable ranch of approximately 1,601 acres located in Alberta, Canada on the eastern slopes of the Rocky Mountains, close to Waterton Lakes National Park.

10. The Trust's beneficiaries were Thomas Howard Olson ("**Thomas**"), Carolyn Olson (Thomas's wife) ("**Carolyn**"), and Thomas and Carolyn's nine children, who at the time the Trust was established were named Joshua Tanner Olson, Ruth Merrill Olson ("**Ruth**"), Ephraim Clark Olson ("**Ephraim**"), Hyrum Taylor Olson ("**Hyrum**"), Naomi Walker Olson (Plaintiff), Isaiah Hardy Olson, Rebekah Woodford Olson, Elijah Hunter Olson ("**Elijah**"), and Hannah Gibb Olson ("**Hannah**").

2

11. Bruce has produced a document in this matter that purports to show that Thomas, as Protector of the Trust, appointed Bruce as Trustee of the Trust, effective January 3, 2020.

12. It is believed that Bruce accepted this appointment as successor Trustee of the Trust in the State of Utah as he was a Utah resident at the time.

13. It is believed that Bruce is no longer the Trustee of the Trust, but this is unclear because Naomi has been denied information about the Trust, and under the terms of the document that established the Trust (the "**Trust Document**"), the Trust's Protector can change the Trustee at any time.

14. Because Naomi has been denied information about the Trust and the Trust's Protector can change the Trustee at any time, Naomi does not know who the current Trustee is or who the Trustee will be in the future.

15. Thomas was the Trust's Protector when the Trust was formed and during the time relevant to this lawsuit.

16. Under the terms of the Trust Document, the Trust's Protector has the power to remove the Trust's Trustee and appoint a new Trustee that is qualified under the terms of the Trust.

17. Thomas and Bruce practiced together as lawyers at the Utah law firm, Olson Lemons PC, where they practiced international tax law.

18. Bruce is still listed as an active attorney in Utah at Olson Lemons PC.

19. Hyrum is listed as an active attorney in Utah at OL Private Counsel, LLC.

YorkHowell_000538

20. Although Bruce and Hyrum are listed as active attorneys at law firms with different, though similar names, Bruce and Hyrum have practiced law together on common legal matters.

21. The Trust was and is an irrevocable trust.

22. Bruce, acting as Trustee and Settlor of the Trust, permanently removed Naomi as a beneficiary of the Trust through a *Trustee Resolution and Declaration* purportedly dated August 31, 2020 (the "**Trustee Resolution**").

23. Although the Trustee Resolution is dated August 31, 2020, it is unclear whether the document was actually created and/or signed on August 31, 2020, because neither Bruce nor any other representative of the Trust ever sent this document to Naomi.

24. Naomi did not see a copy of the Trustee Resolution until September 2021, when the Trustee Resolution was produced as an exhibit to a pleading in another legal proceeding in the State of Utah.

25. Indeed, Naomi was not even informed by Bruce or any other representative of the Trust that she had been removed as a beneficiary of the Trust until on or around August 30, 2021, when an attorney who purported to represent the Trust informed a representative of Naomi's that she was no longer a beneficiary of the Trust.

26. In the Trustee Resolution, Bruce, purportedly acting as Trustee for the Trust, permanently removed Naomi as a beneficiary of the Trust for the following stated reason: "To deal with uncertainty regarding the US residency status of Naomi Burton, the Trustee further irrevocably declares and confirms, pursuant to its power under Article 11.3(b) of the Trust Settlement, that Naomi Burton shall irrevocably cease to be a beneficiary of the Trust, effective

4

YorkHowell_000539

the date hereof, and she shall be irrevocably be regarded as an Excluded Person under the Trust Settlement. This Declaration shall be irrevocable."

27.     At the time he purportedly removed Naomi as a beneficiary of the Trust in the Trustee Resolution (August 31, 2020), Bruce was acting as Trustee of the Trust in the State of Utah.

28.     Thomas, acting as Protector of the Trust, appears to have consented and agreed to the permanent removal of Naomi as a beneficiary of the Trust because the Trustee Resolution appears to have his electronic signature.

29.     Before removing Naomi as a beneficiary of the Trust, Bruce did not contact Naomi to address any uncertainty he claimed to have in the Trustee Resolution regarding Naomi's United States ("**U.S.**") residency status, despite the fact that Bruce had Naomi's email address and access to her other contact information.

30.     On or around August 31, 2020, the purported date of the Trustee Resolution, Naomi was temporarily in the U.S. with her husband on his student visa.

31.     Naomi did not have a U.S. green card at that time.

32.     Additionally, Naomi and her husband maintained a residence in Canada and paid Canadian taxes at that time.

33.     Although the Trust Document does not define what the term "resident" means, Naomi was almost certainly not a "resident" of the U.S. under the terms of the Trust Document on or around August 31, 2020 for the reasons stated in the prior three paragraphs and because Naomi had been deemed a resident of Canada for tax purposes by the Canada Revenue Agency

5

in 2019, and all of her material facts remained the same between then and on or around August 31, 2020.

34. Without conceding that Bruce should have permanently and irrevocably removed any beneficiaries of the Trust because of their residency status, it is believed that other beneficiaries of the Trust were actually residents of the U.S. on or around August 31, 2020, or there was at least uncertainty regarding their U.S. residency status.

35. For example, it is believed that on or around September 2019, Hyrum purchased his sole home in Virginia that became his primary residence and he permanently moved to live in that home with his wife and children, who are citizens of the U.S.

36. Since Hyrum and Bruce worked together on certain legal matters, Bruce presumably knew that Hyrum had purchased a home in Virginia in 2019 and was living there.

37. Again, without conceding that Bruce should have permanently and irrevocably removed any beneficiaries of the Trust because of their residency status, the facts alleged in the prior two paragraphs should have at least created an uncertainty in Bruce regarding the U.S. residency status of Hyrum, and caused Bruce to take an action he did not perform, to also remove Hyrum as a beneficiary of the Trust.

38. In addition, two other beneficiaries, Elijah and Hannah, were attending university in the U.S. on or around August 31, 2020.

39. Again, without conceding that Bruce should have permanently and irrevocably removed any beneficiaries of the Trust because of their residency status, the facts alleged in the prior paragraph should have at least created an uncertainty in Bruce regarding the U.S. residency

6

YorkHowell_000541

status of Elijah and Hannah, and caused Bruce to take an action he did not perform, to also remove Elijah and Hannah as beneficiaries of the Trust.

40. In addition, another beneficiary, Ruth, was born to Thomas and Carolyn in the U.S., and as such, is believed to be a U.S. citizen.

41. Bruce had also worked with Ruth and presumably knew she was born in the U.S.

42. Indeed, Bruce had done tax planning work for Thomas's family, including all of his children, for over a decade, and as such would have presumably known their citizenship status.

43. The issue of citizenship was as important as residency to the administration of the Trust because the Trust Document states that a beneficiary is temporarily deemed to be an "Excluded Person" and is temporarily not a beneficiary during the period when a beneficiary is a U.S. resident <u>or citizen</u> and the successor Trustee is a U.S. citizen.

44. Indeed, the Trustee Resolution states the following in its "Recitals": "Pursuant to the Trust Settlement, all persons who are citizens or residents of the United States of America are excluded as beneficiaries of the Trust during the period that the original trustee serves as trustee of the Trust and during the period that any U.S. citizen is a trustee of the Trust."

45. It is believed that Bruce is and was a U.S. citizen.

46. Without conceding that Bruce should have permanently and irrevocably removed any beneficiaries of the Trust because of their citizenship status, the facts alleged in the prior six paragraphs should have at least created an uncertainty in Bruce regarding the citizenship of Ruth, and caused Bruce to take an action he did not perform, to also remove Ruth as a beneficiary of the Trust.

YorkHowell_000542

47. It is believed that Thomas acquired U.S. citizenship at birth because his father, Jack Hardy Olson, is or was a U.S. citizen, having attended Ricks College and served a mission for two-and-a-half years in the Southwest of the U.S. prior to the birth of Thomas. Thomas's mother, Melba Marlene Olson, is or was also a U.S. citizen from birth.

48. It is also believed that Thomas is a U.S. citizen because his sister, Colette Olson Williamson ("**Colette**"), who was born to the same parents, obtained proof of her U.S. citizenship status through her parentage in or around 2008, when she moved to Texas. Thomas and Colette have communicated regularly and been in close contact. As such, her U.S. citizenship and how she obtained it should be known by Thomas. It is believed that Thomas has chosen not to obtain proof of his acquired U.S. citizenship, but that he is nonetheless a citizen of the U.S.

49. Although she was not born in the U.S., Naomi learned at some point after August 31, 2020, that she and all of her siblings (except Ruth, who was born in the U.S.) are likely to have acquired U.S. citizenship at birth through their parents, Thomas and Carolyn, who are both dual citizens of Canada and the U.S. and who resided in the U.S. prior to the birth of their children.

50. Despite the fact that all of the Trust's other beneficiaries either appeared to be residents of the U.S. (though, as alleged above, the term "resident" was not defined in the Trust Document) or U.S. citizens on or around August 31, 2020, or at least there was or should have been uncertainty regarding their U.S. residency status or citizenship, Naomi was the only beneficiary that Bruce removed for this reason, showing that the reason Bruce gave for removing Naomi as a beneficiary of the Trust was a pretext or sham.

8

51. It is believed that Naomi was actually removed as a beneficiary of the Trust because Naomi's Canadian lawyer began requesting Trust information and documents from Thomas's counsel in Canada, Peter Linder, in October 2020.

52. After Naomi began asking for Trust information and documents through her lawyer in October 2020, Hyrum called Ephraim and told him to use his familial relationship with Naomi to convince her to stop seeking Trust information and documents, and to convey the message that Naomi would face serious consequences if she did not stop.

53. It is believed that Thomas wanted this warning communicated to Naomi because he did not want to disclose Trust information and documents to Naomi, or any other party, for reasons related to the divorce proceedings he was involved in at the time against his wife, Carolyn.

54. It is believed that Naomi may have also been removed as a beneficiary of the Trust because Hyrum, acting on Thomas's instructions, asked Naomi to sign documents to resign as a director of Waterton Land Trust Ltd. and Naomi did not sign these documents in December 2019.

55. It is believed that Thomas wanted Naomi to resign as a director of Waterton Land Trust Ltd. for reasons related to his separation from his wife, Carolyn.

56. It is believed that Naomi was in fact removed as a beneficiary because she requested Trust information and documents and/or because she did not sign documents to resign as a director of Waterton Land Trust Ltd., and, as a result, Thomas and/or one or more of the other beneficiaries of the Trust instructed Bruce to remove Naomi.

9

57. Naomi never received the Trust information and documents her Canadian lawyer requested on her behalf in October 2020.

58. If Naomi had in fact been removed as a beneficiary by the August 31, 2020 Trustee Resolution, a representative of the Trust would have presumably responded to Naomi's October 2020 request by telling her she was no longer a beneficiary of the Trust and thus had no right to see Trust information or documents, as they did when she reiterated her request in August 2021.

59. Instead, Naomi was not informed by a representative of the Trust that she had been removed as a beneficiary of the Trust until on or around August 30, <u>2021</u>.

60. In addition, on October 8, 2020, Thomas sent an email to Naomi with the subject line "Notice."

61. In this email, Thomas gave the following notice to Naomi: "Thomas H Olson has ceased to be the protector of the White Buffalo Trust, The Waterton Land Trust and the Olson Estate Trust."

62. There would have been no reason for Thomas to send Naomi this notice if Thomas had actually signed the Trust Resolution removing Naomi as a beneficiary on August 31, 2020, as Thomas would have known that Naomi no longer had any interest in the Trust.

63. Based on the allegations in the prior six paragraphs, it is believed that the Trustee Resolution was not actually created and/or signed on August 31, 2020, but that it was created and/or signed sometime later, when Thomas was no longer Protector and Bruce was possibly no longer Trustee, and fraudulently back-dated to August 31, 2020.

**FIRST CAUSE OF ACTION**
**Breach of Fiduciary Duty**

10

YorkHowell_000545

64. Plaintiff incorporates into and makes a part of this cause of action each and every other paragraph in this *First Amended Complaint*.

65. Bruce had a duty as Trustee of the Trust to administer the Trust solely in the interests of the beneficiaries, including Naomi, who was a beneficiary of the Trust.

66. Bruce also had a duty as Trustee of the Trust to act impartially in investing, managing, and distributing the Trust property, giving due regard to each of the beneficiaries' respective interests, and not favoring the interests of one beneficiary over another beneficiary.

67. Bruce violated these duties by permanently and irrevocably removing Naomi as a beneficiary of the Trust because Thomas and/or one or more of the other beneficiaries of the Trust instructed Bruce to remove Naomi.

68. This was not a proper reason for Bruce to exercise his discretionary authority as Trustee of the Trust to remove Naomi as a beneficiary of the Trust.

69. Without conceding that Bruce should have permanently and irrevocably removed any beneficiaries of the Trust because of their residency or citizenship status, Bruce also violated his fiduciary duties by not investigating Naomi's residency status before he permanently removed her as a beneficiary.

70. Without conceding that Bruce should have permanently and irrevocably removed any beneficiaries of the Trust because of their residency or citizenship status, Bruce also violated his fiduciary duties by unfairly singling out Naomi and electing to remove her, and only her, when other beneficiaries of the Trust were residents and/or citizens of the U.S., or there was uncertainty about their U.S. residency or citizenship status.

11

71. Bruce caused Naomi to be damaged by using his authority as Trustee of the Trust to wrongfully remove Naomi as a beneficiary of the Trust.

72. Naomi was damaged by Bruce's wrongful action because she was permanently and irrevocably removed as a beneficiary of the Trust and therefore no longer has a beneficial interest in the valuable holdings of the Trust, including Waterton Land Trust Ltd.

73. Bruce's action of permanently and irrevocably removing Naomi as a beneficiary of the Trust based on the direction of Thomas and/or one or more of the other beneficiaries of the Trust was willful misconduct in that he knew or should have known that his action was wrongful and violated the duties that he had as Trustee of the Trust to Naomi, a beneficiary of the Trust.

74. Bruce's action of permanently and irrevocably removing Naomi as a beneficiary of the Trust, based on the direction of Thomas and/or one or more of the other beneficiaries of the Trust, was also grossly negligent, in that Bruce's carelessness or recklessness in exercising his authority as Trustee to remove Naomi showed utter indifference to his fiduciary duty to Naomi, a beneficiary of the Trust.

75. Bruce's action of permanently and irrevocably removing Naomi as a beneficiary of the Trust, based on the direction of Thomas and/or one or more of the other beneficiaries of the Trust, was also the result of willful and malicious or intentionally fraudulent conduct, or conduct that manifested a knowing and reckless indifference toward, and a disregard of, the rights of Naomi.

76. Bruce also had a duty as Trustee of the Trust to inform and report to the beneficiaries, including Naomi, of any material facts necessary for Naomi to protect her interest in the Trust.

YorkHowell_000547

77. Bruce violated this duty by failing to inform Naomi he had used his authority as Trustee of the Trust to remove Naomi as a beneficiary of the Trust.

78. Naomi requests that the Court remedy Bruce's breach of trust by ordering Bruce to pay Naomi a monetary amount that is equal to the beneficial interest that Naomi held in the Trust before she was permanently and irrevocably removed as a beneficiary by Bruce, or a monetary amount that is equal to the beneficial interest that Naomi would currently have in the Trust had she not been permanently and irrevocably removed as a beneficiary by Bruce.

79. Naomi also seeks punitive damages against Bruce.

80. Naomi also requests that she be awarded her costs and expenses, including reasonable attorneys' fees, for this action.

## SECOND CAUSE OF ACTION
### Breach of Fiduciary Duty (Pled in the Alternative)

81. Plaintiff incorporates into and makes a part of this cause of action each and every other paragraph in this *First Amended Complaint*.

82. Bruce also had a duty to ensure that his appointment as Trustee would not cause the beneficiaries to become an "Excluded Person" under the Trust.

83. Under the Third Schedule of the Trust Document, an "Excluded Person" is any citizen or resident of the United States of America during the period that any successor Trustee is a U.S. citizen.

84. Under Article 11.2 of the Trust, an "Excluded Person" shall not be a beneficiary of the Trust at the time that they are an "Excluded Person."

85. It is believed that Bruce was a U.S. citizen when he became a successor Trustee of the Trust and has been a U.S. citizen from that point until the current date.

13

86. In the event Bruce claims and can show that Naomi was an "Excluded Person" under the Trust Document and as a result, can show he did not breach his fiduciary duty to Naomi when he purportedly removed her as a beneficiary on August 31, 2020, Bruce still breached his fiduciary duty to Naomi when he became Trustee of the Trust by creating the very situation that served as the basis for Bruce to then wrongfully remove Naomi as a beneficiary on August 31, 2020.

87. In the event Bruce claims and can show that Naomi was an "Excluded Person" under the Trust Document and as a result, can show he did not breach his fiduciary duty to Naomi when he purportedly removed her as a beneficiary on August 31, 2020, Bruce still caused Naomi to be damaged because his wrongful acceptance of the Trustee appointment created the very situation that served as the basis for Bruce to then wrongfully and permanently remove Naomi as a beneficiary of the Trust on August 31, 2020, thereby permanently denying Naomi of her beneficial interest in the valuable holdings of the Trust, including Waterton Land Trust Ltd., while Bruce was Trustee.

88. Naomi requests that the Court remedy Bruce's breach of trust by ordering Bruce to pay Naomi a monetary amount that is equal to the beneficial interest that Naomi held in the Trust before she was permanently and irrevocably removed as a beneficiary by Bruce, or a monetary amount that is equal to the beneficial interest that Naomi would currently have in the Trust had she not been permanently and irrevocably removed as a beneficiary by Bruce.

89. Naomi also requests that she be awarded her costs and expenses, including reasonable attorneys' fees, for this action.

YorkHowell_000549

**WHEREFORE**, Plaintiff prays for judgment in her favor and against Defendant as follows:

1. For an order or judgment against Defendant in the amount of the value of Plaintiff's beneficial interest in the Trust pursuant to Utah Code § 75-7-1001(2)(c), another statute, Utah common law, or other applicable law, which amount will be determined by the finder of fact;

2. For punitive damages for the First Cause of Action;

3. For attorneys' fees and costs as permitted by Utah Code § 75-7-1004(1), another statute, Utah common law, or other applicable law;

4. For pre- and post- judgment interest as permitted by statute or law; and

5. For any other relief deemed necessary or appropriate by the Court, in equity or in law.

Pursuant to Rule 38 of the Utah Rules of Civil Procedure, Plaintiff demands a trial by jury.

DATED this 14th day of April, 2022.

YORK HOWELL & GUYMON

*/s/ Joseph M. Stultz*
Joseph M. Stultz
Stephen J. Mayfield
*Attorneys for Plaintiff*

15

YorkHowell_000550

## CERTIFICATE OF SERVICE

I hereby certify that, on this 14th day of April, 2022, I caused a true and correct copy of the foregoing **FIRST AMENDED COMPLAINT** to be electronically filed with the Court which provided electronic notification to the following parties by operation of the Court's electronic filing system:

David J. Jordan (1751)
Monica S. Call (11361)
**FOLEY & LARDNER LLP**
299 South Main Street, Suite 2000
Salt Lake City, Utah 84111
djordan@foley.com
mcall@foley.com
*Attorneys for Defendant*

                                                **YORK HOWELL & GUYMON**

                                                */s/ Joseph M. Stultz*
                                                Joseph M. Stultz
                                                Stephen J. Mayfield
                                                *Attorneys for Plaintiff*

YorkHowell_000551