Scott M. Lilja #4231
Sarah C. Vaughn #14615
FABIAN VANCOTT
95 South State Street, Ste. 2300
Salt Lake City, UT 84111-2323
Telephone: (801) 531-8900
slilja@fabianvancott.com
svaughn@fabianvancott.com
*Attorneys for Defendant Ephraim Olson*

---

## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF UTAH

---

| | |
|---|---|
| OL PRIVATE COUNSEL, LLC, a Utah limited liability company,<br><br>    Plaintiff,<br><br>v.<br><br>EPHRAIM OLSON, an individual,<br><br>    Defendant. | **REPLY MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT DISMISSING PLAINTIFF'S COMPLAINT OR IN THE ALTERNATIVE DISMISSING CLAIMS FOR COMPUTER FRAUD AND ABUSE ACT, INTENTIONAL INTERFERENCE WITH ECONOMIC RELATIONS, CONVERSION, AIDING AND ABETTING CONVERSION, AND INJUNCTIVE RELIEF**<br><br>Case No. 2:21-cv-00455-DBB<br><br>Judge David Barlow<br>Magistrate Judge Daphne A. Oberg |

Pursuant to Fed. R. Civ. P. 56 and DUCivR 56-1, Defendant Ephraim Olson ("**Ephraim**") hereby submits his reply memorandum in support of motion for summary judgment dismissing Plaintiff OL Private Counsel's ("**OLPC**") Complaint or in the alternative, dismissing OLPC's claims for computer fraud and abuse act, intentional interference with economic relations,

conversion, aiding and abetting conversion, and injunctive relief.

## INTRODUCTION

Here, Ephraim's Motion seeks relief on purely legal issues regarding OLPC's claimed damages in this case. The Motion addresses whether OLPC: (1) met its Rule 26 obligations to provide a calculation of damages, (2) satisfied the legal requirements of the Third-Party Litigation Exception required to seek recovery of its claimed damages, (3) established evidence of its damages, beyond speculation, such that the issue may continue to the jury, (4) established evidence of causation for its damages, beyond speculation, such that the issue may continue to the jury, or (5) was required to provide expert testimony to establish causation between Ephraim's actions and its claimed damages.

In opposition, OLPC seeks to **increase** its damages calculation by $18,000, further failing to meet its Rule 26 obligations, and attempts to argue the merits of its claims. But the merits of OLPC's claims are not relevant to the Motion. As OLPC has no viable way to recover the damages sought, summary judgment must be granted. Summary judgment "is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy, and inexpensive determination of every action.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986).

## OBJECTION TO EVIDENCE

### I.    Thomas Olson Declaration

A. <u>Statements as to Damages</u>

i. *Undisclosed fees*

In violation of OLPC's Rule 26 obligations, OLPC submitted an affidavit of Thomas Olson

("**Thomas**") in response to this Motion to belatedly attempt to shore up its damages claims, alleging that in October 2020, "to respond to the theft and assess the damage that had been done, OLPCCIL immediately hired a US law firm, Stoel Rives, and a Thai law firm to, among other things, investigate who stole the documents, determine how the servers were accessed, and to negotiate with the wrongdoer—Akarapanich—to obtain more information about the theft. During October and November 2020, the investigative and response costs amounted to $18,375 USD. OLPCCIL has now required payment from OLPC for those costs given the theft of information was orchestrated by OLPC's former employee, Ephraim." Opp., Ex. 1, ¶¶ 14-16. Dkt. No. 397-2. For ease of reference the $18,375 claimed in OLPC's Opposition will be referred to herein as the "**Investigation Damages**."

Not only has OLPC failed to produce a single document or invoice to support the Investigation Damages, but this new claim also contradicts prior sworn statements by Thomas, as OLPC's designee. As Thomas' declaration alleges, these fees were incurred by OLPCCIL in October and November of 2020. Opp., Ex. 1, ¶¶ 14-16. Dkt. No. 397-2. Thomas is the director of OLPCCIL. OLPC First 30(b)(6) Depo., 10:5-7, attached hereto as Exhibit 1; Services Agreements, attached hereto as Exhibit 2 (establishing that Thomas is the signatory for OLPCCIL, OLPC PTE, and OLPC). But, as OLPC's 30(b)(6) designee, Thomas testified on February 15, 2023 that OLPC was unable to quantify its damages and did not know when it would be able to do so. Ex. 1, at 173:20-174:3. OLPC also stated that no documents supporting its damages claim yet existed. *Id.* at 163:5-15. Thomas, as the director of OLPCCIL, must have been aware of the Investigation Damages OLPCCIL allegedly incurred in October or November of 2020. And yet, he testified on

behalf of OLPC that he was unaware of any such costs or fees. OLPC's gamesmanship should not be tolerated by the Court.

Moreover, OLPC's attempt to allege an additional $18,375 in damages at this stage of the litigation violates its Rule 26 obligations and must be disregarded by the Court. Rule 26(a)(1)(A)(iii) required OLPC to timely provide to Ephraim "a computation of each category of damages claimed by the disclosing party—who must also make available for inspection and copying as under Rule 34 the documents and other evidentiary material . . . on which each computation is based, including materials bearing on the nature and extent of injuries suffered." Fed. R. Civ. P. 26. OLPC, however, failed to disclose the Investigation Damages it now claims in any of its initial disclosures. Mot., SOF ¶¶ 4-6, Dkt. No. 368. Moreover, OLPC completely failed to produce any documents evidencing the Investigation Damages. The Court has already ruled that OLPC's production of "billing records supporting its damages calculation on March 29 and April 1, 2024 (the close of fact discovery) was untimely" and "without substantial justification." Order, Dkt. No. 355, 26-27. Similarly, OLPC's failure to disclose any documents supporting the Investigation Damages or a computation thereof was untimely and without substantial justification.

Under Rule 37(c)(1), OLPC's failure to disclose the Investigation Damages requires that those damages be excluded. Rule 37(c)(1) provides:

> If a party fails to provide information ... as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless.

*Park Cityz Realty, LLC v. Archos Capital, LLC*, Case No. 2:20-cv-00522, 2021 WL 4991717 *7-11 (D. Utah Oct. 27, 2021). There is no question OLPC has never previously disclosed the

Investigation Damages in this case. Neither is there any justification for OLPC's failure to do so. Moreover, Ephraim has been irreparably injured by OLPC's failures. As stated in *Park Cityz*, "Defendant[ has] been prejudiced because they were bereft of any information about damages throughout fact discovery. This placed Defendant[ ] at a tactical and substantive disadvantage during depositions and for purposes of being able to subpoena documents to determine the validity of any claimed damages. Second, Plaintiffs cannot now cure the prejudice because discovery has long passed." *Id.* (entering Rule 37 sanctions at the summary judgment stage). Thus, OLPC must be excluded from seeking recovery of the Investigation Damages. *Id.* (dismissing plaintiff's claims on summary judgment where plaintiff failed to provide a damages calculation during fact discovery).

### ii.     Estimates as to Peacock Linder's redacted fees

Thomas' Declaration alleges that the Peacock Linder invoices, which were produced to Ephraim almost entirely redacted, Mot., Ex. 10, Dkt. No. 368-11, actually detail efforts to investigate "Ephraim's document theft." Opp., Ex. 1, ¶¶ 17. Dkt. No. 397-2. Thomas "estimate[s] that the portion of Peacock Linder's invoice that is attributable to the efforts to determine how Carolyn obtained the stolen documents is at least $6,300 USD." *Id.* ¶ 17. Thomas' affidavit provides no basis for this "estimate" nor does the redacted Peacock Linder invoice produced lend any support to this claim. Thus, the estimate is pure speculation and must be disregarded by the Court. "[I]t is [ ] a general rule of long standing that a plaintiff must show damages by evidence of facts and not by mere conclusions, and that the items of damage must be established by substantial evidence and not by conjecture." *Highland Const. Co. v. Union Pac. R. Co.*, 683 P.2d 1042, 1045 (Utah 1984). "The evidence must do more than merely give rise to speculation that

damages in fact occurred." *Atkin Wright & Miles v. Mountain States Tel. & Tel. Co.*, 709 P.2d 330, 336 (Utah 1985).

B.  Statements as to Ephraim's Access to Documents

Thomas's affidavit alleges that "[b]y the end of 2019, Ephraim had left employment with OLPC . . . . Per standard policies and practices at OLPC, Ephraim's access to OLPC's documents was revoked by the end of 2019. After his employment ended, OLPC did not give Ephraim permission to access its confidential client information." Opp., Ex. 1, ¶¶ 10, 12. Dkt. No. 397-2. Notably, the affidavit does not state that Thomas Olson has personal knowledge of this fact. In fact, he cannot.

As the Court is aware, the issue of Ephraim's access to the OLPC servers has long been a key element of discovery. During discovery, Ephraim served Interrogatory No. 10, which stated:

> INTERROGATORY NO. 10: Please detail and describe all persons and entities, including employees of any entities, who had access to OLPC, ITC, or OLPCCIL servers or documents at any time from 2014-2020, including but not limited to the time frame in which the person or entity had access.

OLPC Response, attached hereto as Exhibit 3.

After a Court order requiring OLPC to supplement its response to Interrogatory No. 10, Dkt. No. 97, OLPC produced a table which alleges that Ephraim's access to the server ended on September 1, 2019. *See* Ex. 1, Table, page 34.

During OLPC's first deposition, OLPC's designee, Thomas, testified that the September 1, 2019 date came from "computer logs . . . that they gathered, whatever computer records they have to gather to demonstrate this." Ex. 1, at 70:22-71:4. During OLPC's second deposition, OLPC testified that the September 1, 2019 date is based purely on payroll records and memories of Hyrum Olson and Joshua Olson, non-OLPC employees. Second OLPC Dep., 37:1-5, attached hereto as

Exhibit 4. But, even by OLPC's testimony, Ephraim's payroll records went "a bit beyond September 1st." *Id.* at 38:12-22. In fact, there are no documents that would actually show when Ephraim's access was changed or removed. *Id.* at 38:23-39:3. Thus, the September 1, 2019 date is instead based purely on Hyrum Olson and Joshua Olson's alleged memories, i.e. inadmissible hearsay.

"[A]ffidavits must be based upon personal knowledge and set forth facts that would be admissible in evidence; conclusory and self-serving affidavits are not sufficient.'" *Murray v. City of Sapulpa*, 45 F.3d 1417, 1422 (10th Cir. 1995) (quoting *Hall v. Bellmon*, 935 F.2d 1106, 1111 (10th Cir. 1991)). "Under the personal knowledge standard, an affidavit is inadmissible if the witness could not have actually perceived or observed that which he testifies to. Accordingly, at the summary judgment stage, statements of mere belief in an affidavit must be disregarded." *Argo v. Blue Cross Blue Shield of Kan., Inc.*, 452 F.3d 1193, 1200 (10th Cir. 2006) (cleaned up). Similarly, "[t]estimony which is grounded on speculation does not suffice to create a genuine issue of material fact to withstand summary judgment." *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 876 (10th Cir. 2004). Likewise, "any hearsay contained in a summary judgment affidavit remains hearsay, beyond the bounds of the court's consideration." *Johnson v. Weld Cnty., Colo.*, 594 F.3d 1202, 1210 (10th Cir. 2010).

Here, Thomas' affidavit is not based upon personal knowledge. As established during OLPC's multiple 30(b)(6) depositions, Thomas did not have personal knowledge of when Ephraim's access to OLPC's documents was actually revoked. Instead, OLPC based its September 1, 2019 date on the memories of Hyrum and Joshua Olson. This speculation is insufficient at the summary judgment stage. Moreover, documented evidence contradicts OLPC's 30(b)(6)

testimony. Specifically, as of October 4, 2019, Ephraim still had full access to the relevant server's data center. *See* OLPC Ephraim Olson 13072-73, attached hereto as <u>Exhibit 5</u>.[1]

Based upon the foregoing, the Court must disregard Thomas' declaration.

## II.    Hearsay Statements

Hearsay is an out-of-court statement offered into evidence to prove the truth of the matter asserted. Fed. R. Evid. 801. Hearsay is inadmissible and may not be relied upon in a summary judgment motion. Fed. R. Evid. 802. "Because summary judgment qualifies as a substitute for a trial, and hearsay (absent an exception or exclusion) is inadmissible at trial, a motion for summary judgment may not be supported by hearsay." *Cherewick v. State Farm Fire & Cas.*, 578 F. Supp. 3d 1136, 1157 (S.D. Cal. 2022); *Argo* 452 F.3d at 1199 ("[A]t summary judgment courts should disregard inadmissible hearsay statements. . . ."). When a proper hearsay objection has been made at the summary judgment stage, the Court must disregard the objectionable evidence. *Johnson*, 594 F.3d at 1209; *Montes v. Vail Clinic, Inc.*, 497 F.3d 1160, 1176 (10th Cir. 2007) (noting that courts "are constrained to disregard such hearsay on summary judgment when, as here, there is a proper objection to its use and the proponent of the testimony can direct us to no applicable exception to the hearsay rule").

OLPC's Opposition relies on hearsay statements from Timothy Akarapanich ("**Tim A.**") [AMF[2] ¶¶ 10, 11, 12, 13, 15, 30] and Joshua Olson and Hyrum Olson [AMF ¶ 9][3]. No exceptions

---

[1] OLPC testified that Volta Data Centers was the company that maintained the physical server. <u>Ex. 1</u>, at 65:17-24.

[2] All reference to "AMF" refer to OLPC's "Additional Material Facts" as alleged in OLPC's Opposition, Dkt. No. 397.

[3] As detailed above, this AMF, established by Thomas' affidavit is based exclusively upon hearsay statements from Joshua and Hyrum Olson.

to the hearsay rules exist. Moreover, these witnesses are highly unlikely to be present at trial to cure the hearsay concern.

First, OLPC has not even designated Joshua Olson as a witness. Fed. R. Civ. P. 26(a)(1)(A) requires that "a party *must*, without awaiting a discovery request, provide to the other parties: (i) the name and, if known, the address and telephone number of each individual likely to have discoverable information along with the subjects of that information—that the disclosing party may use to support its claims or defenses, unless the use would be solely for impeachment." (emphasis added). Rule 37(c) enforces the Rule 26(a) disclosure requirements by prohibiting the use of any undisclosed witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless. Fed. R. Civ. P. 37(c)(1); *Vesom v. Atchison Hosp. Ass'n*, 279 F. App'x 624, 631 (10th Cir. 2008) (affirming district court's striking of affidavits from untimely disclosed witnesses). Thus, OLPC may not rely upon any statements from Joshua Olson.

With respect to Tim A. and Hyrum Olson, the Court has already noted that Tim A. is likely beyond the subpoena power of this court. Order, Dkt. No. 41. Similarly, the Court has noted that Hyrum Olson is also likely outside of this court's subpoena power. Order, Dkt. No. 48. In fact, "foreign nationals living abroad are not subject to subpoena service outside the United States." *Aristocrat Leisure Ltd. v. Deutsche Bank Trust Co. Ams.*, 262 F.R.D. 293, 305 (S.D.N.Y. 2009). Moreover, OLPC has argued that Tim A., Hyrum Olson, and Joshua Olson are "not OLPC employees and are beyond OLPC's control." Order, Dkt. No. 215. Thus, they are unlikely to be available for trial to cure any hearsay concerns.

Moreover, admission of these hearsay statements, when the declarants were not available

during discovery and will not be available for cross examination, would be unduly prejudicial and could mislead the jury. Thus, even if an exception to the hearsay rule were to apply, the Court should exclude this evidence under Fed. R. Evid. 403. In fact, should this case continue beyond the summary judgment phase, Ephraim will seek to exclude any testimony at trial from these individuals due to OLPC's obstruction of discovery by refusing to make these witnesses available or even provide adequate contact information for them.

### OLPC'S PURPORTED FACTUAL DISPUTES

OLPC seeks to avoid the implications of the record by arguing that Ephraim's Statement of Material Facts ("**SOF**") are not facts but rather "legal conclusions," "recitations about when certain discovery took place" or "mischaracterizations of OLPC's deposition." Opp. Appendix, Dkt. 397-1, *passim*. But a detailed review of the Appendix makes clear that OLPC lacks any material or genuine objections to Ephraim's SOFs.  For example, SOF 14 stated: "Mr. Hoffman expressed no causation opinions and 'relies on OLPC's allegations regarding causation.'" Order, Dkt. 355, 29." In response, OLPC asserts that this fact is "**Partially Disputed**" but then states, "OLPC does not dispute that this excerpt appeared in the Court's Order cited, the Court's order speaks for itself." Appendix, ¶ 14, Dkt. 397-1.  SOF 16 stated: "None of OLPC's other experts opined as to damages calculations or otherwise address the Invoices. Reports, attached hereto as Exhibit 8."  In response, OLPC asserts that this fact is "**Partially Disputed**" but then states, "OLPC does not dispute that it has not designated another damages expert in this case apart from Mr. Hoffman." Similarly, SOF 21 stated, "OLPC entered into this agreement voluntarily. Id. at 73:8-74:2." In response, OLPC asserts this fact is "**Disputed**. But then states, "OLPC does not dispute that it testified that OLPC entered into the indemnification agreement voluntarily." Appendix, ¶

21, Dkt. No. 397-1. SOF 25 stated, "The Affidavit of Carolyn Olson included 29 exhibits. Affidavit, attached hereto as Exhibit 12."  In response, OLPC asserts that this fact is "**Partially Disputed**" but then states, "OLPC does not dispute that Carolyn's Affidavit in the Mareva Injunction proceeding included 29 exhibits." Appendix, ¶ 25, Dkt. No. 397-1. These are just a few of the shorter examples. A close review of the appendix clarifies that OLPC does not meaningfully dispute SOFs 1-6, 8-18, 20-30, 32-34, 36-42, 44-46, 48-51. *See* Appendix.

OLPC also argues that Ephraim's SOFs are legal argument. For example, SOF 8 states, "On March 29, 2024, OLPC produced OLPC Ephraim Olson 14200-14233 and 14828-14829, supporting its damages claim. Order, Dkt. 355." OLPC's asserts that this fact is "**Partially Disputed but Immaterial**," but then states, "OLPC does not dispute that it produced the identified documents on March 29, 2024." Appendix, ¶ 8, Dkt. No. 397-1. Instead, OLPC disputed the statement of fact, "to the extent Ephraim relies upon it to justify his request that OLPC's damages evidence be excluded or that OLPC has somehow failed to offer sufficient evidence supporting its damages." *Id.* OLPC then cites *Klein v. Plaskolite, LLC*, No. 2:19-cv-00832-DN-PK, 2024 WL 2882593, at *4 n.24 (D. Utah June 7, 2024) for the proposition that "'legal argument' is not a fact for summary judgment purposes." Appendix, ¶ 8.  *Klein* does not stand for the proposition that Ephraim's undisputed fact statement is legal argument nor does OLPC explain how the fact statement is legal argument. OLPC mirrors this "dispute" in SOFs 3-6, 8-11, 13-14, 16, 18-22, 24-32, 34-36, 38-43, 45, and 47-51, none of which are legal argument.

OLPC further argues that Ephraim's "characterization" of various documents in this case are not facts. For example, SOF 41 stated, "While Foley & Lardner billed $149,677 for work related to Burton v. Lemons, OLPC is only seeking damages of $109,832. OLPC Third 30(b)(6)

at 6:14-8:20, Ex. 9." In response, OLPC asserts this fact is "**Partially Disputed**." But then states, "OLPC does not dispute that it is seeking $109,832 in damages related to the *Burton v. Lemons* proceedings." Appendix, ¶ 34, Dkt. No. 397-1. OLPC then argues that "Ephraim's characterization of the damages OLPC is seeking based on OLPC's deposition testimony is not a fact." *Id.* OLPC then cites *Calzada Estate of Calzada v. Roy City*, No. 1:16-cv-00165-DN-DAO, 2024 WL 1307264, at *2 n.8 (D. Utah Mar. 27, 2024) for the proposition that "characterization of facts or argument" "are not facts." Appendix, ¶ 34. *Calzada* does not stand for the proposition that Ephraim's undisputed fact statement is a "characterization" nor does OLPC explain how the fact statement is an improper characterization. It is not. OLPC has this same "dispute" with respect to SOFs 7, 12-15, 17, 20-22, 24, 26, 31, 34, 36, 38, 39-40, 43, 49-51, none of which are "characterizations."

A full resolution of OLPC's Opposition to Ephraim's Statement of Undisputed Facts is attached hereto as Appendix I, none of which prevent the Court from entering summary judgment against OLPC.

## OLPC'S ADDITIONAL MATERIAL FACTS

In an attempt to create an issue of material fact, OLPC's Opposition alleges 39 "Additional Material Facts," which all address the factual merits of OLPC's claims against Ephraim. But Ephraim's Motion does not rely upon the factual merits of OLPC's claims. Instead, Ephraim's motion addresses the purely legal issues as to whether OLPC: (1) met its Rule 26 obligations, (2) satisfied the legal requirements of the Third-Party Litigation Exception, (3) established evidence of its damages, beyond speculation, such that the issue may continue to the jury, (4) established evidence of causation, beyond speculation, such that the issue may continue to the jury, or (5)

required expert testimony to establish causation. These legal issues are all appropriate for summary judgment.

Moreover, none of the "Additional Material Facts" are material to the legal issues before the Court. "An issue of fact is 'material' if under the substantive law it is essential to the proper disposition of the claim." *Lazy S Ranch Props., LLC v. Valero Terminaling & Distrib. Co.,* 92 F.4th 1189, 1198 (10th Cir. 2024). Again, because Ephraim's Motion turns on legal issues alone, OLPC's attempts to confuse the record with its "additional material facts" should be disregarded.

A full resolution of OLPC's Additional Material Facts is attached hereto as Appendix II, none of which prevent the Court from entering summary judgment against OLPC.

## ARGUMENT

### I.    EXCLUSION OF OLPC'S DAMAGES IS APPROPRIATE UNDER RULES 26 AND 37

It is undisputed that Rule 26(a)(1)(A)(iii) required OLPC to timely provide to Ephraim "a computation of each category of damages claimed by the disclosing party—who must also make available for inspection and copying as under Rule 34 the documents and other evidentiary material . . . on which each computation is based, including materials bearing on the nature and extent of injuries suffered." Fed. R. Civ. P. 26. It is also undisputed that OLPC failed to provide a "computation of each category of damages" during fact discovery in this case. In fact, OLPC's Opposition makes no attempt to argue that it provided a computation of damages during fact discovery nor does OLPC argue that its failure to provide a computation of damages was justified.

Instead, OLPC only attempts to argue that "any claimed discovery misstep is harmless." Opp. at 18, Dkt. 397. In support of this argument, OLPC points to the production of the damages invoices, the ability to depose its expert, and the Court-ordered deposition of OLPC on the

damages documents. *Id.* But this argument completely ignores the purpose of Rule 26 and seeks to improperly shift the blame for OLPC's discovery failures to Ephraim.[4] This is improper.

Rule 26 serves to "avoid[ ] potential mischief" and inform "how a court resolves discovery disputes . . . and how the parties approach settlement and the resources necessary to devote to discovery and trial." *Preventive Energy Sols., L.L.C. v. nCap Ventures 5, L.L.C.*, No. 2:16-CV-00809-JCB, 2021 WL 2930653, at *4 (D. Utah July 11, 2021). Here, due to OLPC's failure to provide a computation of damages at any point during fact discovery, mischief has certainly ensued. OLPC's failures have led Ephraim on a wild goose chase to understand the nature of OLPC's damages, and required Ephraim to seek Court intervention multiple times in hopes of avoiding the prejudice caused by OLPC's Rule 26 violations. And, due to OLPC's absolute failure to provide a damages calculation during fact discovery, both Ephraim and the Court have been operating without necessary information to properly evaluate OLPC's claims throughout the last four years of litigation.

Even at the summary judgment stage, OLPC continues its mischief, alleging a new category of damages never before disclosed. OLPC's Opposition, filed more than four years after the initial complaint and nearly a year after the close of fact discovery, details an apparent intent

---

[4] This argument also ignores issues widely briefed for the Court regarding OLPC's February 15, 2023 testimony that OLPC was unable to quantify its damages and did not know when it would be able to do so. *Id.* at 173:20-174:3. OLPC also stated that no documents supporting its damages claim yet existed. *Id.* at 163:5-15. Yet as this Court has already ruled that "some of the billing records produced on March 29 and April 1, 2024 predated the February 2023 deposition—including an invoice dated December 31, 2020 for legal fees of more than $100,000, which OLPC seeks to recover as damages from Ephraim." Dkt. No. 355, 25. Further, there can be no reasonable dispute that Thomas, as the director of OLPCCIL, knew or should have known of the Investigation Damages OLPCCIL allegedly incurred in October or November of 2020. Despite OLPC's knowledge of its damages in February 2023, OLPC represented that no such damages were yet known nor could they be known. This was false.

to seek $18,375 in Investigation Damages. Opp., Ex. 1, ¶¶ 14-16. Dkt. No. 397-2; Opp., at 2, 8, 24, 29, 41, 45 (referencing costs to investigate). This is yet another example of OLPC's willful violation of its Rule 26 obligations. *Hanks v. Anderson,* No. 2:19-CV-00999-DBB-JCB, 2024 WL 4092949, at *6 (D. Utah Sept. 5, 2024) (finding willful violations of Rule 26 where Plaintiff asserted a new calculation of damages only in opposition to a summary judgment motion, "more than four years after filing his first complaint, and long after the close of fact discovery.").

OLPC lacks any justification for its failure to provide its calculation of damages. OLPC's deficient evidentiary record is a fundamental failure of its own making. Federal Rule of Civil Procedure 37(c)(1) establishes a remedy—intended to be automatic—for violations like OLPC's in this case. S*un River Energy, Inc. v. Nelson*, 800 F.3d 1219, 1226 (10th Cir. 2015); *In re C.W. Min. Co.*, No. 2:10-CV-39 TS, 2013 WL 319287, at *5 (D. Utah Jan. 28, 2013) ("The sanctions available under Rule 37(c)(1) are often described as 'self executing' and 'automatic.'"). Thus, summary judgment is appropriate. *Park Cityz Realty, LLC*, 2021 WL 4991717, at *7-11 (dismissing the plaintiff's claims at the summary judgment stage as a Rule 37 sanction for failing to provide a specific computation of damages as required under Rule 26(a) and (e)).

## II.    OLPC'S CLAIMED DAMAGES ARE NOT RECOVERABLE

As a matter of law, OLPC may not recover the damages it seeks to recover against Ephraim. OLPC's claimed damages consist only of attorney's fees incurred in separate litigation.[5] But,

---

[5] Seeking to bring some of its claimed damages outside of the third-party litigation exception, OLPC argues that some portion of OLPC's damages were incurred in investigating and responding to unlawful access to documents. Opp. at 31. As detailed above, OLPC's Investigation Damages were never previously disclosed and thus must be excluded under Rule 26. Further, even if these fees were properly disclosed, which they were not, they are still unrecoverable. "The long-standing rule in Utah is that attorney fees cannot be recovered unless provided for by statute or contract." *Macris & Assocs., Inc. v. Neways, Inc.*, 2002 UT App 406, ¶ 13, 60 P.3d 1176. OLPC offers no

"[t]he long-standing rule in Utah is that attorney fees cannot be recovered unless provided for by statute or contract." *Collier v. Heinz,* 827 P.2d 982, 983 (Utah Ct. App. 1992). "Recovery of attorney fees as consequential damages is a narrow exception to the normal rule." *McQueen v. Jordan Pines Townhomes Owners Ass'n, Inc.*, 2013 UT App 53, ¶ 26, 298 P.3d 666, *overruled in part on other grounds by Bank of Am. v. Adamson*, 2017 UT 2, 391 P.3d 196.

> Recovery of attorney fees as consequential damages generally applies in just two situations. The first is when the litigation is based on an insurance contract. This case is clearly not based on an insurance contract. Second, "[a] well-established exception to this general rule allows recovery of attorney fees as consequential damages, but only in the limited situation where the defendant's breach of contract foreseeably caused the plaintiff to incur attorney fees through litigation with a third party."

*McQueen*, 2013 Ut App 53, ¶ 26 (citation omitted). Thus, OLPC's claims for attorney fees are only recoverable if OLPC meets the requirements of the third-party litigation exception. It has not.

In opposition to this argument, OLPC seeks to distinguish its claimed damages by arguing its damages are recoverable as "Indemnification Costs, Not Third-Party Litigation Fees." Opp. at 32-33. OLPC misses the point. The third-party litigation exception is the means of determining when such costs are consequential damages—when they are sufficiently tied to the harm to be recoverable. *See Macris & Assocs., Inc. v. Neways, Inc.*, 2002 UT App 406, ¶ 22, 60 P.3d 1176. Whether the Court calls them third party litigation expenses or "indemnification costs" (as OLPC argues) is purely semantic; as applied to the damages OLPC seeks, it is a distinction without a

---

exception to the general rule to recover these Investigation Damages. In fact, they are not recoverable. *See Wheeling v. Selene Finance LP*, 250 A.3d 197, 225 (Md. Ct. App. 2021) ("[W]e decline to expand the common law doctrine to permit the plaintiffs to allege, as compensatory damages, their attorney's fees incurred to consult with an attorney to understand their rights where the alleged wrongful conduct alleged did not force them into collateral litigation or require that they incur legal expense to protect their interests in relation to other third parties.").

difference.

### a. OLPC has not met the elements to claim third party litigation costs.

OLPC then argues that its voluntary indemnification agreements meet the elements of the third-party litigation exception. They do not. The third-party litigation exception applies only when "[o]ne who through the tort of another has been required to act in the protection of his interests by bringing or defending an action against a third person . . ." RESTATEMENT (SECOND) OF TORTS § 914; *see also State v. Sevastopoulos*, 2021 UT 70, ¶ 11, 502 P.3d 290 (quoting the Restatement). "[W]here a person, through the tortious conduct of another, has been required to act in the protection of its interests by bringing or defending an action against a third person, the plaintiff is entitled to recover from the wrongdoer attorney's fees and other expenses incurred in the prior litigation. . . ." CJS Damages § 76 Litigation Expenses and Attorney's Fees As Damages In Collateral Proceedings (Dec. 2024) (emphasis added). To recover, the plaintiff must demonstrate "that such expenses were the natural and proximate consequence of the injury complained of, were incurred necessarily, and in good faith, and were a reasonable amount." *Id.*

Thus, for OLPC's third party litigation damages to survive summary judgment, there must be evidence from which a reasonable juror could conclude that (1) OLPC brought or defended an action against a third party; (2) OLPC was required to do so as a natural proximate result of Ephraim's alleged wrongdoing; and (3) the expenses that OLPC seeks are reasonable. OLPC fails on all three counts.

### i. OLPC did not bring or defend an action against a third party.

OLPC is not a party to any of the three lawsuits for which it seeks to recover fees. Thus, the third-party litigation exception does not apply. Indeed, in every Utah case applying the third-

party litigation exception outside the insurance context,[6] and in each of the cases that OLPC relies upon, the party seeking to recover fees was itself a party to the third-party litigation. *See Macris & Assocs.*, 2002 UT App 406 (allowing Macris to recover the costs it incurred in suing Images's successor after Images transferred its assets to Neways, so long as Macris could show that Neways was the successor corporation, that it was necessary to file the case against Neways, and that filing such case was a natural consequence of Images's wrongful transfer); *Pacific Coast Title Ins. Co. v. Hartford Acc. & Indem. Co.*, 325 P.2d 906, 907, 7 Utah 2d 377 (1958) (permitting a title company to recover from an insurer the costs that it incurred clearing liens filed by subcontractors); *Gardiner v. York*, 2006 UT App 496, ¶ 13, 153 P.3d 791 (Gardiner was entitled to recover from Interport the fees that Gardiner in action against Betty York if it was foreseeable that Interport's breach would subject Gardiner to such fees); *South Sanpitch Co. v. Pack*, 765 P.2d 1279, 1283 (Utah Ct. App. 1988) (allowing South Sanpitch to pursue claim for fees against D Land Title where South Sanpitch incurred such fees in case against third parties); *Sevastopoulos*, 2021 UT 70 (after defendant used their parents' bank information to pay her credit card bills, and the parents were required to hire legal counsel to look into the transfers and recover the funds from the credit card companies, the parents were entitled to recover the costs of doing so as restitution).

OLPC's Oppositions fails to cite a single case in which the third party litigation exception allowed the plaintiff to recover when someone other than the plaintiff incurred legal expenses in defending against or prosecuting a third-party suit caused by the defendant's wrongful act.[7]

---

[6] *See McQueen*, 2013 Ut App 53, ¶ 26 (distinguishing between recovery of attorney fees based on an insurance contract and under the third-party litigation exception).

[7] OLPC relies heavily on *Macris & Associates* to argue that "successor liability" is appropriate for the third-party litigation exception. Opp. at 35-36. But in *Macris*, the successor liability at issue was that of the Defendant, not the Plaintiff seeking to recover the attorneys fees. Further, to argue

Because OLPC is not seeking fees from any action that OLPC brought or defended, the third-party litigation exception does not allow OLPC to recover.

Further, expanding the third-party litigation exception as OLPC suggests would vitiate the general rule. As noted, "[r]ecovery of attorney fees as consequential damages is a **narrow exception** to the normal rule." *McQueen*, 2013 UT App 53, ¶ 26 (emphasis added). To apply the third-party litigation exception as OLPC seeks here would make new law, unduly broaden the exception, and serve as a roundabout around the standard American Rule that attorney fees are not recoverable absent a contract or statute. Because OLPC is not a party to the third-party litigation, the narrow exception through which it seeks to recover its damages does not apply.

### ii. The costs OLPC seeks to recover were not a necessary, foreseeable, and proximate result of Ephraim's alleged wrongdoing.

OLPC makes broad conclusory allegations that it had contractual liability, via its indemnification agreements, to pay the fees it seeks to recover against Ephraim as damages. But OLPC's contractual liabilities are matters of law which are not before the Court. Moreover, the existence of contractual liability, by itself, fails to meet the standard for recoverability of third-party litigation fees. Third-party litigation expenses are only recoverable when they are the necessary and natural consequence of the harm. *See* 45 A.L.R.2d 1183, § 5[a] ("[U]nnecessary or excessive expenses or such as were incurred in bad faith do not afford a basis for recovery."); *Macris & Assocs., Inc.*, 2002 UT App 406, ¶ 22 ("[I]n order to recover attorney fees under the third-party litigation exception, Macris must also show that *Macris II* was a natural consequence

---

that OLPC has successor liability to pay the fees it seeks to recover is a causal argument that (1) is not before the Court and (2) would require expert testimony. As detailed below, OLPC has failed to present any expert testimony regarding causation and thus is barred from bringing any such argument before the jury.

of Images's breach and that it was necessary to bring the action."); *Pacific Coast Title Ins. Co.*, 325 P.2d at 907 (("[T]o be compensable, the loss must result from the breach in the *natural and usual course of events*, so that it can fairly and reasonably be said that if the minds of the parties had adverted to breach when the contract was made, loss of such character would have been within their contemplation."); *Gardiner*, 2006 UT App 496, ¶ 14 ("Consequential damages are 'those reasonably within the contemplation of, or reasonably foreseeable by, the parties at the time the contract was made.").

Consequential damages must be foreseeable at the time of the wrongful act or the contractual formation. *See Gardiner*, 2006 UT App 496, ¶ 14 ("Consequential damages are those reasonably within the contemplation of, or reasonably foreseeable by, the parties at the time the contract was made.");.

Here, OLPC is seeking fees from Ephraim that third parties incurred in litigation against other third parties, which OLPC incurred due to OLPC's voluntarily agreeing—after the alleged tort occurred—to indemnify them. At the time of Ephraim's alleged wrongdoing, he had no reason to foresee that OLPC would voluntarily agree to reimburse others for their litigation expenses. And, the causal chain is even more attenuated: the third parties that OLPC indemnified were sued for their own independent wrongdoing (e.g., breach of trust agreements). Here, the third-party litigation did not foreseeably or proximately result from Ephraim's actions. Thus, even if OLPC had itself incurred third-party litigation expenses, which it has not, its claim for damages would still fail. *See Trans–Western Petroleum, Inc. v. United States Gypsum Co.,* No. 2:06-CV-801 TS, 2012 WL 12846081, at *6 (D. Utah Nov. 29, 2012) (dismissing claim for attorneys fees under third-party litigation exception where "it appears very likely that even in the absence of USG's

breach, the litigation between TWP and Wolverine still would have ensued. As a result, the Court finds that the litigation with Wolverine was not a natural consequence of USG's breach and TWP's claim for attorney fees must fail.").

### iii.  OLPC cannot establish that its expenses are reasonable.

In applying the third-party litigation exception, "care must be taken in cases like this to ensure not only that the attorney fees are otherwise properly calculated . . . but also that an allocation is made between recoverable fees incurred in litigation with third parties and non-recoverable fees incurred in pursuing the negligent defendants or expended on causes of action not proximately necessitated by that defendant's negligence." *South Sanpitch Co.*, 765 P.2d at 1283. Further, the fees must be reasonable. CJS Damages § 76. Here, the invoices establishing OLPC's damages are so highly redacted that it is impossible for Ephraim, this Court, or a jury to determine whether they appropriately relate to Ephraim's alleged conduct or whether they are reasonable. Thus, OLPC has failed to meet its burden.

## III.    EXPERT TESTIMONY IS REQUIRED TO ESTABLISH CAUSATION

Utah courts generally require expert testimony to prove causation in tort cases in all but the most obvious cases." *Blank v. Garff Enterprises Inc.,* 2021 UT App 6, ¶ 30, 482 P.3d 258. Despite this broad requirement for expert testimony, OLPC argues that expert causation testimony is not required here because its "theory is not complex" and "no specialized knowledge is required for a jury to understand" the issues of OLPC's indemnity obligation or the role those "stolen documents" played in those cases.  Opp. at 29-30. But these conclusory statements regarding the "common-sense exception" are insufficient.  *Joy v. Young,* No. 21-8034, 2022 WL 103393, at *2 (10th Cir. Jan. 11, 2022) (upholding dismissal of legal malpractice claim where plaintiff lacked

causation expert and offered only "a conclusory statement that the claim is subject to [the] common-sense exception").

In seeking to remedy OLPC's failure to provide a causation expert, OLPC argues:

a jury does not need an expert to explain that stealing a client's confidential documents for an adverse party to use in an ongoing legal dispute with that client can create litigation expenses in defending against the improper use of those documents. Witnesses, like Thomas, who owns and operates OLPC, are perfectly competent to testify on that subject.

Opp. at 30.

But Thomas is himself a lawyer, with specialized knowledge outside the ken of the average juror and at no point did OLPC designate Thomas as an expert witness. Thus, Thomas may not offer any expert testimony on that subject.

OLPC's theory is not simple. In fact, OLPC's purported "disputes" of fact only serve to further demonstrate the need for expert testimony. For example, SOF 19 alleged, "OLPC is not a party to the Mareva Injunction. Mareva Injunction Order, attached hereto as Exhibit 11." In response, OLPC states, "**Disputed.** OLPC disputes Fact ¶ 19 as offering an improper legal argument and conclusion regarding OLPC's legal relationship to and/or interest in the Mareva Injunction proceedings as well as OLPC's entitlement to claim the attorney fees incurred in connection with the Mareva Injunction as damages in this action." Appendix, ¶ 19, Dkt. No. 397-1. OLPC's "Disputes" as to SOFs 35 and 47 are nearly identical and rest upon a juror understanding "OLPC's legal relationship to and/or interest in" the various third-party litigations. The issue of "OLPC's legal relationship to and/or interest in" the third-party litigations is not simple and is not common sense. This is not something within the ordinary knowledge of a lay person and expert testimony is required.

OLPC further argues that, with respect to the Mareva Injunction, causation is obvious because "[i]t is apparent from the face of the Affidavit that information about the trust documents is threaded throughout it, not just the one exhibit Ephraim highlights." Opp. at 22. OLPC similarly argues that "the face of the *Burton v. Lemons* Amended Complaint reveals that Naomi's claims depend on specific provisions of the Waterton Land Trust." Opp. at 23. Again, OLPC argues that the "*Olson v. Olson* filings" make "apparent" that it was "based on (and included) information from OLPC's Confidential Documents." Opp. 26. There is no reasonable argument that an average juror could read the Affidavit, the *Burton v. Lemons* Amended Complaint, or the *Olson v. Olson* filings and determine that they are based on information from OLPC's Confidential Documents. Instead, only a lawyer well-versed in the various trust and estates documents could make that assertion based upon their expert opinion. OLPC has no such expert.

OLPC's Additional Material Facts, while immaterial to resolving the legal arguments presented by Ephraim's Motion, further support the need for expert causation testimony. For example, OLPC asserts that "OLPC has determined it is responsible agreed [sic] to indemnify its clients for their legal fees in the above-referenced matters because those actions were against clients of OLPC, based on the Confidential Documents misappropriated by Ephraim, a former employee of OLPC." Opp., ¶ 39. Again, an unwritten, voluntary indemnity agreement or the duties owed to clients by a law firm are not within the ordinary knowledge of a juror. Further, OLPC has asserted that "[p]art of the value of OLPC's taxation and asset management-related services depends on its clients' documents and information remaining confidential." Opp. ¶ 3. This is expert testimony for which OLPC has designated no expert.

OLPC has already recognized the complex issues which will be before the jury as OLPC did designate an expert to testify as to the standard of care owed by Ephraim. Thus, "[i]t follows that jurors would also require expert testimony to show that the experienced harm was caused by [Ephraim's] breach of the standard of care." *Holley v. Evangelical Lutheran Good Samaritan Soc.,* 588 F. App'x 792, 796 (10th Cir. 2014). Where a "factfinder must understand the ethical rules and standards . . . these areas of knowledge and understanding are not only well outside the "common knowledge and experience of the layman, but they are outside the common knowledge and experience of many attorneys and judges." *Kendall v. Utah Est. Planners PLLC,* 2023 UT App 82, ¶ 36, 534 P.3d 1140, 1149. As in *Kendall*, OLPC's claims against Ephraim "is simply not a case in which 'an average bystander would [have been] able to provide the same testimony' as an expert retained to discuss the professional duties owed by a trusts and estates lawyer and, specifically, to opine on whether [Ephraim] had breached those duties and caused damages." *Kendall,* 2023 UT App 82, ¶ 36. Thus, the Court must dismiss OLPC's claims for failure to designate an expert as to the issue of causation.

## IV.    THE FACT OF OLPC'S DAMAGES ARE TOO SPECULATIVE

Even if expert testimony is not required, the fact of OLPC's damages remains too speculative to proceed to a jury. OLPC argues that "OLPC does not have to show it already paid the invoices to show the fact of damages." Opp. 38. In support of this argument, OLPC cites to *Alta Health Strategies, Inc. v. CCI Mech. Serv.*, 930 P.2d 280, 285 (Utah Ct. App. 1996). Opp., 38. But *Alta* is inapplicable to OLPC's claims. In *Alta* the Court analyzed only contractual claims, which measured damages by "the amount necessary to "place the nonbreaching party in as good a position as if the contract had been performed.'" *Id.* (cleaned up).  OLPC also cites to *Power v.*

*Taylor*, 379 P.2d 380, 381-82 (Utah 1963) which is similarly distinguishable. *Power* dealt with a claim for trespass and damages to property. *Id.* Again, the measure of damages is different. *Linebaugh v. Gibson,* 2020 UT App 108, ¶ 37, 471 P.3d 835, 848 ("Usually, the measure of compensatory damages for trespass on real property and destruction thereon is the difference between the value of the property before and after the trespass." (cleaned up)).

Here, OLPC's claimed damages are purely requests for pecuniary compensatory damages because Ephraim's actions allegedly created liabilities for OLPC in the form of its voluntary indemnification agreements. But the Restatement is clear that "Compensatory damages that will not be awarded without proof of pecuniary loss include compensation for . . . (c) the creation of liabilities." RESTATEMENT (SECOND) OF TORTS § 906 (emphasis added). "When there has been harm only to the pecuniary interests of a person, compensatory damages are designed to place him in a position substantially equivalent in a pecuniary way to that which he would have occupied had no tort been committed." RESTATEMENT (SECOND) OF TORTS § 903, cmt. a (1979). The Restatement further states that, "[w]hen the wrongful creation of liability constitutes a breach of a contractual relation, as when an agent makes an unauthorized contract that is binding on the principal, suit can be maintained as soon as the liability has been created. **However, there can be no action of tort until payment has been made or loss suffered**, except when the enforcement of payment by the third person is reasonably certain and its amount can be ascertained with approximate definiteness." RESTATEMENT (SECOND) OF TORTS § 871A (emphasis added).

## V.    THE AMOUNT OF OLPC'S DAMAGES IS TOO SPECULATIVE

Even if expert testimony is not required, the amount of OLPC's damages remains too speculative to proceed to a jury. In fact, OLPC's Opposition itself speculates as to the amount of

25

its damages. OLPC argues that "fees in the Mareva Injunction Proceeding were also incurred to investigate the theft of the Confidential Documents." Opp. at 22. OLPC then "**estimate[s]** that the portion of Peacock Linder's invoice that is attributable to the efforts to determine how Carolyn obtained the stolen documents is at least $6,300 USD." Thomas Decl., ¶ 17, Dkt. No. 397-2 (emphasis added). But this "estimate" is nothing more than speculation. Thomas' declaration provides no basis for the estimate nor do the Peacock Linder invoices, which are almost entirely redacted. Ex. 10 to Mot., Dkt No. 368-11. In fact, there is no way for anyone to evaluate or question Thomas' speculative statement.

OLPC then argues that the amount of damages is not speculative as "[a]llocation of damages is a jury question," Opp. at 41. But the jury here has no ability to even attempt to allocate damages because the invoices are so heavily redacted. By redacting the invoices to the degree that it has, OLPC has blindfolded the jury, hiding the true contents of the invoices and requiring the jury and this Court to either blindly speculate or simply accept OLPC's testimony -- that these invoice relate to Ephraim's actions. These actions do not satisfy OLPC's burden to establish the amount of damages. "The evidence must not be so indefinite as to allow the jury to speculate freely as to the amount of damages." *Staffing Am., Inc. v. Advanced Mgmt. Concepts, Inc.,* 2005 UT App 437, 2005 WL 2600637, *1. In fact, Thomas's own declaration makes clear that any jury would be required to speculate as to the contents of the invoices, as Thomas himself did. Thus, the Court must prevent the jury from engaging in speculation and dismiss OLPC's claims for failure to establish the fact or amount of damages.

## VI.    OLPC FAILED TO ESTABLISH DAMAGES FOR ITS CFAA CLAIM

In a last-minute attempt to save its Computer Fraud and Abuse Act ("CFAA") claim, OLPC

now alleges, for the first time and in response to this Motion, that it incurred costs to investigate the alleged access to its computer servers. Specifically, OLPC alleges that "loss" that OLPC claims under the CFAA are "[T]he fees OLPCCIL paid to US and Thai law firms and the fees Peacock Linder incurred to investigate and interrogate Carolyn on how she got the documents she used in the Marevea [sic] injunction." Opp. at 45. As detailed above, OLPC failed to comply with its Rule 26 disclosure and production requirements to support these newly claimed damages. *Hanks,* 2024 WL 4092949, at *6  (finding willful violations of Rule 26 where Plaintiff asserted a new calculation of damages only in opposition to a summary judgment motion, "more than four years after filing his first complaint, and long after the close of fact discovery").

Moreover, OLPC's assertion that these fees were incurred by OLPCCIL in October and November of 2020 directly contradicts sworn testimony by OLPC. Opp., Ex. 1, ¶¶ 14-16. Dkt. No. 397-2. OLPC's 30(b)(6) designee, Thomas testified on February 15, 2023 that OLPC was unable to quantify its damages and did not know when it would be able to do so. Ex. 1, at 173:20-174:3. OLPC also stated that no documents supporting its damages claim yet existed. *Id.* at 163:5-15. Thomas, as the director of OLPCCIL, must have been aware of the Investigation Damages OLPCCIL allegedly incurred in October or November of 2020. And yet, he testified on behalf of OLPC that he was unaware of any such costs or fees. Only now, in response to a motion for summary judgment, does OLPC attempt to assert any damages which may be recoverable under its CFAA claims. OLPC's gamesmanship should not be tolerated by the Court and any claimed Investigation Damages must be dismissed by the Court under Rules 26 and 37.

But, even if these damages had been properly disclosed, OLPC may not recover them under its CFAA claim. Many courts have concluded that accessing information alone is not a CFAA

"loss" or "damage." *See, e.g.*, *Kluber Skahan & Assoc., Inc. v. Cordogen, Clark & Assoc., Inc.*, No. 08-cv-1529, 2009 WL 466812, at *8 (N.D. Ill. Feb. 25, 2009) ("[T]he statute was not meant to cover the disloyal employee who walks off with confidential information.") (quoting *Am. Family Mut. Ins. Co. v. Rickman*, 554 F. Supp. 2d 766, 771 (N.D. Ohio 2008)); *Landmark Credit Union v. Doberstein*, 746 F. Supp. 2d 990, 994 (E.D. Wis. 2010) ("There is virtually no support for the proposition that merely accessing and disseminating information from a protected computer suffices to create a cause of action under the CFAA."); *Harley Automative Grp., Inc. v. AP Supply, Inc.*, No. CIV. 12-1110 DWF/LIB, 2013 WL 6801221 (D. Minn. Dec. 23, 2013) ("The weight of relevant authority restricts the CFAA 'loss' requirement to actual computer impairment.") (citing cases from Tennessee, Illinois, Ohio, and New York).

In 2021, the U.S. Supreme Court adopted the view that misappropriation alone is not a basis for recovery under the CFAA, noting that "the statutory definitions of 'damage' and 'loss' thus focus on technological harms—such as the corruption of files—of the type unauthorized users cause to computer systems and data. Limiting 'damage' and 'loss' in this way makes sense in a scheme 'aimed at preventing the typical consequences of hacking.' The term's definitions are ill fitted, however, to remediating 'misuse' of sensitive information that employees may permissibly access using their computers." *Van Buren v. United States*, 593 U.S. 374, 391-92 (2021) (citations omitted). While *Van Buren* specifically addressed a current employee's misuse, the reasoning of that case supports those prior cases that understood the CFAA to be inapplicable to instances like that alleged by OLPC. Post-*Van Buren*, the District of Utah noted a trend towards the more limited reading of the CFAA. *ACI Payments, Inc. v. Conservice, LLC*, No. 121CV00084RJSCMR, 2022 WL 622214, at *11-12, n.135 (D. Utah Mar. 3, 2022) (applying neither reading because, under

even the broader reading, no CFAA costs were alleged).

The "loss" that OLPC claims under the CFAA are "[T]he fees OLPCCIL paid to US and Thai law firms and the fees Peacock Linder incurred to investigate and interrogate Carolyn on how she got the documents she used in the Marevea [sic] injunction." Opp. at 45. Not only were these losses not incurred by OLPC, they are not the type of losses or damages contemplated by the CFAA, as clarified in *Van Buren*. Thus, OLPC's claim for CFAA damages fails.

## VII. OLPC FAILED TO ESTABLISH DAMAGES FOR ITS INTENTIONAL INTERFERENCE OR CONVERSION CLAIMS

Noting that OLPC's claimed damages do not fall within the typical categories of recoverable damages for either intentional interference or conversion, OLPC broadly argues its right to recover its damages as consequential damages. But attorneys' fees are only recoverable as consequential damage when they meet the narrow third-party litigation exception. As detailed above, OLPC fails to satisfy this standard as a matter of law.

Further, with respect to OLPC's claim for intentional interferences, OLPC must establish that Ephraim's "interference" with a contract was the "legal cause" of its consequential losses. *TruGreen Companies, L.L.C. v. Mower Bros., Inc.*, 2008 UT 81, ¶ 22, 199 P.3d 929. OLPC has made no such argument nor can it. Further, any such causal argument would require expert testimony, which OLPC lacks. With respect to OLPC's conversion-based claims, while consequential damages may be recoverable under a conversion claim, the attorneys fees OLPC seeks to recover are not. "When property is wrongfully taken by another, it is possible for the resulting consequential damages to exceed the amount paid for the property. Lost use, a form of consequential damages, may appropriately be used to measure the damages resulting from a conversion in circumstances such as these." *Mahana v. Onyx Acceptance Corp.*, 2004 UT 59, ¶

34, 96 P.3d 893, 900. OLPC has failed to cite any case law which finds that attorneys fees are recoverable as consequential damages for a conversion claim.

Finally, OLPC's Opposition notes the fatal flaw with its request to recover attorneys' fees as consequential damages—OLPC has not actually paid any damages. As OLPC states: "when litigation fees are an element of damages, the fees are measured by actual loss incurred, not reasonableness." Opp. at 50 (*citing See Canyon County*, 781 P.2d at 420; *USA Power*, 2016 UT 20, ¶ 93 & n. 128.). But OLPC has not actually paid any of the fees it seeks to recover. Thus, it has suffered no actual loss and any loss it may suffer in the future is prohibitively speculative.

## CONCLUSION

Based upon the foregoing, Ephraim respectfully requests that the Court dismiss OLPC's case in its entirety. In the alternative, the Court should dismiss OLPC's claims under the Computer Fraud and Abuse Act, and for Intentional Inference with Economic Relations, Conversion, Aiding and Abetting Conversion, and Injunctive Relief.

DATED this 2nd day of May, 2025.

FABIAN VANCOTT

*/s/ Sarah C. Vaughn*
Scott M. Lilja
Sarah C. Vaughn
   *Attorneys for Ephraim Olson*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 2nd day of May, 2025, a true and correct copy of the foregoing

**REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT** was served via

electronic mail on the following:

> David J. Jordan
> Monica S. Call
> Hannah L. Andrews
> Ellen E. Ostrow
> FOLEY & LARDNER LLP
> 299 S. Main Street, Suite 2000
> Salt Lake City, UT 84111
> *djordan@foley.com*
> *mcall@foley.com*
> *eostrow@foley.com*
> *handrews@foley.com*

> */s/ Sarah C Vaughn* _____