THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH

| | |
|---|---|
| OL PRIVATE COUNSEL, LLC,<br><br>     Plaintiff,<br><br>v.<br><br>EPHRAIM OLSON,<br><br>     Defendant. | **SEALED**<br><br>**MEMORANDUM DECISION AND ORDER**<br>• **DENYING [373] DEFENDANT'S MOTION TO EXCLUDE**<br>• **GRANTING [368] DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**<br>• **DENYING [372] PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**<br><br>Case No. 2:21-cv-455<br><br>District Judge David Barlow<br><br>Magistrate Judge Daphne A. Oberg |

This is one of many lawsuits in various courts involving various members of the Olson family, an Olson domestic law firm, two Olson international law-related entities, and numerous Olson trusts. This particular dispute arises from Ephraim Olson ("Ephraim"),[1] a former employee of OL Private Counsel, LLC ("OLPC"), allegedly wrongfully accessing and sharing documents (the "Confidential Documents") in the possession of OLPC, his father Thomas Olson's law firm. OLPC has brought claims against Ephraim for conversion, breach of contract, intentional interference with economic relations, breach of fiduciary duty, conspiracy under the

---

[1] Because of the identical last names of many of the individuals involved in this dispute, the court refers to these individuals by their first names. No disrespect is intended by this informality.

1

Computer Fraud and Abuse Act (the "CFAA"), and aiding and abetting conversion.[2] Ephraim now moves for summary judgment on each of OLPC's claims.[3] OLPC has moved for partial summary judgment as to liability on its conversion claim.[4] Also before the court is Ephraim's Motion for Mandatory Exclusion of Untimely Produced Damages Documents and for Sanctions.[5] Ephraim seeks to have the court exclude evidence of OLPC's damages because documents supporting its damages claim were not timely produced.[6]

For the reasons stated below, Ephraim's motion to exclude is denied, his motion for summary judgment is granted, and OLPC's motion for summary judgment is denied.

## BACKGROUND

### I.    Fact Background

Thomas Olson ("Thomas") and Carolyn Olson ("Carolyn") were married in 1980.[7] During Thomas and Carolyn's marriage, Thomas worked as a tax attorney and set up several trusts, corporations, partnerships, and other structures to preserve his and Carolyn's assets.[8] These assets are alleged to include homes in the United States, Canada, and Thailand, as well as several trusts that benefited Thomas, Carolyn, and their children.[9] Thomas filed for divorce from Carolyn in Utah state court on August 7, 2020.[10] Carolyn contends that assets acquired during

---

[2] First Amended Complaint, ECF No. 153-1, filed June 20, 2023.
[3] Motion for Summary Judgment ("Def. MSJ"), ECF No. 368, filed Jan. 31, 2025.
[4] Motion for Partial Summary Judgment ("Pl. MSJ"), ECF No. 372, filed Jan. 31, 2025.
[5] Renewed Rule 37(c) Motion for Mandatory Exclusion of Untimely Produced Damages Documents and for Sanctions ("Ex Mot."), ECF No. 373, filed Jan. 31, 2025.
[6] *Id.*
[7] Affidavit of Carolyn Olson ¶ 4, ECF No. 386-13, filed Jan. 31, 2025.
[8] *Id.* at ¶ 13.
[9] *Id.* at ¶ 20.
[10] 204904555, Olson v. Olson Divorce Docket, ECF No. 393-26, filed Mar. 21, 2025.

her and Thomas's marriage, including assets held in trusts to which Carolyn and her children were beneficiaries, may have been transferred to entities outside her control.[11]

OLPC, a Utah-based law firm, is one of the entities Thomas owns.[12] OLPC works with other entities, including OL Private Corporate Counsel International, Ltd. ("OLPCCI") and International Tax Counsel Ltd. ("ITC").[13] These entities operate in several different countries, including the United States, Canada, and Thailand.[14] Ephraim, one of Thomas and Carolyn's sons, is an attorney who worked for OLPC from July 2014 to September 2019.[15] While working for OLPC, Ephraim had access to the OLPCCIL server, which stored OLPC's documents.[16]

Tim Akarapanich ("Tim") was employed by one of the entities controlled by Thomas in Thailand.[17] Tim and Ephraim met when Ephraim traveled to Thailand as part of his work for OLPC.[18] The two worked together on OLPC matters and met in person several times.[19] Tim resigned from his work for OLPC on May 14, 2020.[20]

On June 8, 2020, Tim and Ephraim sent each other messages through Facebook discussing Tim's decision to leave OLPC.[21] Then, on June 12, 2020, Tim messaged Ephraim

---

[11] Affidavit of Carolyn Olson ¶ 14, ¶ 34, ECF No. 386-13, filed Jan. 31, 2025.
[12] 30(b)(6) Deposition of OL Private Counsel through Thomas Olson 10:5–7 ("2023 OLPC Dep.") 8:1–3, ECF No. 412-3, filed May 2, 2025 (Thomas states "I am the owner of OLPC").
[13] 2023 OLPC Dep. 35:10–21.
[14] *Id* at 9:7–9 (stating that OLPC is a Utah entity); 171:11–12 (discussing Canadian clients); 13:25–14:2 (discussing OLPC in Thailand).
[15] Ephraim Olson Resume, ECF No. 375-2, filed Jan. 31, 2025.
[16] 2023 OLPC Dep. 64:23–25 ("Ephraim would have had access to most of the server, perhaps all the server").
[17] Deposition of Ephraim Olson ("Ephraim Dep.") 168:10–17, ECF No. 372-1, filed Jan. 31, 2025; Resignation Letter, ECF No. 372-4, filed Jan. 31, 2025. OLPC states that Tim worked for ITC. *See* Pl. MSJ 3.
[18] Ephraim Dep. 167:1–8.
[19] *Id.* at. 168:1–9; 169:11–20.
[20] Resignation Letter, ECF No. 372-4, filed Jan. 31, 2025.
[21] Cloud Facebook Messenger Messages between Ephraim Olson and Timothy Akarapanich, ECF No. 372-5, filed Jan. 31, 2025.

3

saying "[I] want to help you [E]phraim please let me know."[22] Ephraim asked if Tim had any

documents about "any" trusts.[23] Tim let Ephraim know that his phone had "somehow got old

mails before [I] left the firm" and that he did not think anyone at OLPC knew he had access to

his emails.[24] Ephraim told Tim that he "might want to back those up" to another computer "so

that if they [] wipe your phone, you don't lose them."[25]

Later in their messages, Ephraim sent a message to Tim asking "do you have the trust doc

for Ruth Doxey Trust or White Buffalp [sic] trust?"[26] Tim responded that he had the documents,

then sent two files to Ephraim.[27] A few hours later, Ephraim asked Tim "Do you have the

Carolyn Olson Spousal trust?" and Tim sent him another file.[28] Throughout their messages,

Ephraim offered to write Tim a recommendation letter to send to future employers and asked if

Tim may want a job at a law firm Ephraim planned on starting in the future.[29]

On June 22, 2020, Carolyn contacted Tim through the messaging app Telegram.[30] She

introduced herself as Ephraim's mom and asked Tim if "there is any way for me to get the trust

documents for White Buffalo and Majestic Trusts?"[31] Tim responds that "I think I have white

buffalo for sure let me look for majestic."[32] Tim then sent Carolyn a file called "White Buffalo

Trust" and a file called "(Edited) Summary of Trust."[33] Tim informed Carolyn that he thought

---

[22] Declaration of Timothy Akarapanich ("Tim A. Decl.") June 12, 2020, Messages, page 5–9 of 110, ECF No. 372-6, filed Jan. 31, 2025.
[23] *Id.* at 6 of 110.
[24] *Id.* at 12 of 110.
[25] *Id.*
[26] *Id.* at 18 of 110.
[27] *Id.* at 19–20 of 110.
[28] *Id.* at 25 of 110.
[29] *Id.* at 23 of 110; 25 of 110.
[30] *Id.* at 67 of 110.
[31] *Id.*
[32] *Id.*
[33] *Id.* at 68 of 110.

"majestic is gone" but that the Olson Estate Trust is "worth a lot."[34] Carolyn then asked Tim to send her those documents and "any trust documents that you think might be important for me."[35] Tim responded by sending her eight additional documents, including documents titled "The Ruth Doxey Family Trust," "The Waterton Land Trust," and "The Carolyn Olson Spousal Trust."[36] Carolyn then shared these documents with her lawyers.[37]

OLPC alleges that the documents Tim shared with Ephraim and Carolyn (the "Confidential Documents") have been used in three separate cases in both Canada and the United States.[38] First, OLPC alleges that Carolyn used the Confidential Documents in a proceeding against Thomas before the Court of Queen's Bench of Alberta, which issued an order prohibiting Thomas from transferring or disposing of any interests in the disputed trusts and other property (the "Mareva Injunction").[39] Second, OLPC alleges that the documents have been used by Naomi W. Burton ("Naomi"), one of Thomas and Carolyn's daughters, who has brought claims in Utah state court against Bruce Lemons ("Bruce"), the alleged Trustee and Settlor of the Waterton Land Trust, for breach of fiduciary duty (the "Lemons Litigation").[40] Third, OLPC claims that the documents were used in a dispute between Carolyn, Naomi, and other members of the Olson family regarding actions taken concerning the Waterton Land Trust and other assets

---

[34] *Id.* at 68–69 of 110.
[35] *Id.* at 69 of 110.
[36] *Id.* at 69–70 of 110.
[37] Questioning of Carolyn Ruth Walker Olson, ECF No. 375-9, filed Jan. 31, 2025, 125:26–27; 126:1–2 (Carolyn states that Tim "contacted Ephraim. Ephraim gave me their contact information, and I contacted that person, and they shared the documents I shared with my lawyer.")
[38] First Amended Complaint, ECF No. 153-1, filed June 20, 2023; OL Private Counsel, LLC's Opposition to Motion for Summary Judgment ("Pl. MSJ Opp.") ¶ 19, ECF No. 397, filed Mar. 21, 2025.
[39] Mareva Injunction/Attachment Order, ECF No. 368-12, filed Jan. 31, 2025 (order dated Nov. 23, 2020).
[40] First Amended Complaint in *Burton v. Lemons* ¶ 3, ¶ 8, ¶ 10, ECF No. 368-22, filed Jan. 31, 2025 (complaint dated April 14, 2022).

(the "Waterton Trust Litigation") (collectively the "Third-Party Litigation").[41] That case has been brought against Thomas, Bruce, and two of Thomas and Carolyn's children, Joshua Olson ("Joshua") and Hyrum Olson ("Hyrum"), among other defendants.[42] OLPC itself is not a party to any of the Third-Party Litigation, but alleges that its clients including Thomas, Bruce, Joshua, Hyrum, and various trusts are parties to these cases.

OLPC brought claims against Ephraim in Utah state court on March 12, 2021, alleging conversion, breach of contract, intentional interference with economic relations, breach of fiduciary duty, and aiding and abetting conversion.[43] OLPC later added a seventh cause of action for conspiracy under the Computer Fraud and Abuse Act, and Ephraim removed the case to this court based on this additional federal claim.[44]

## II.    Damages Background

On April 14, 2021, OLPC served its initial disclosures, which stated that

> OL Private Counsel seeks money damages in an amount to be determined at trial, including all reasonable and foreseeable damages that could have been avoided if Defendant Ephraim Olson had not engaged in the wrongdoing described in the complaint. OL Private Counsel's damages consist of harm to its goodwill, loss of clients, and loss of its confidential information. OL Private Counsel also seeks punitive damages for Defendant's conversion, intentional interference with contractual relations, breach of fiduciary duty, and aiding and abetting conversion. OL Private Counsel reserves its right to assert and/or seek damages from Defendant or non-parties as the facts of the case develop and the case proceeds.[45]

---

[41] Pl. MSJ Opp. 9; *see also* Affidavit of Naomi Burton, ECF No. 378-4, filed Jan. 31, 2024.
[42] *Id.* at 1.
[43] State Court Filings, Complaint and Jury Demand, ECF No. 2-2, filed July 27, 2021.
[44] *Id.* at 46 of 89; Notice of Removal, ECF No. 2, filed July 27, 2021.
[45] Ol Private Counsel, LLC's Initial Disclosures 4, ECF No. 373-1, filed Jan. 31, 2025.

OLPC supplemented its initial disclosures on August 25, 2021,[46] and again on September 22, 2022.[47] However, it did not provide a computation of damages in either supplement or provide further specificity on the amount of damages it sought in either supplemental disclosure.

Ephraim deposed OLPC through Thomas Olson ("Thomas") on February 15, 2023.[48] In this deposition, Thomas stated that OLPC's damages would include the costs of litigating cases involving the Confidential Documents because Thomas himself is a client of OLPC (the law firm that he owns) that has "suffered as a result of the impairment."[49] Thomas stated that OLPC would need to pay the legal fees of anybody "who was required to work to solve the problems caused by the disclosure."[50] Thomas identified the Mareva Injunction, his and Carolyn's divorce, and other lawsuits in Canada as the cases for which OLPC will need to pay attorney fees.[51] He also stated that he could not quantify these damages and did not know when OLPC would be able to offer a damages calculation.[52]

After several extensions of the discovery period, fact discovery was set to close on April 1, 2024.[53] On March 29, 2024, OLPC produced invoices from the law firm Foley Lardner (the "Foley Invoices").[54] These invoices are apparently charges for work in the *Burton v. Lemons* action taken between October 17, 2022, and October 24, 2023.[55] Then, on April 1, 2024, OLPC produced invoices from the law firms Peacock Linder ("Peacock Linder Invoices") and Borden,

---

[46] Ol Priavte Counsel, LLC's Initial Disclosures 4, ECF No. 386-5, filed Jan. 31, 2025.
[47] Plaintiff OL Private Counsel, LLC's Supplemental Initial Disclosures, ECF No. 368-6, filed Jan. 31, 2025.
[48] 30(b)(6) Deposition of Ol Private Counsel, LLC through Thomas Olson, ECF No. 388-12, filed Feb. 28, 2025.
[49] *Id.* at 166:16–25; 166:16–25; 168:5–24.
[50] *Id.* at 164:14–22.
[51] *Id.* at 166:16–25; 168:5–24.
[52] *Id.* at 173:20–25; 174:1–3.
[53] Twelfth Amended Scheduling Order 1, ECF No. 248, filed Jan. 31, 2024.
[54] Foley Invoices, ECF No. 373-2, filed Jan. 31, 2025.
[55] *Id.*

Ladner, Gervais ("BLG Invoices").[56] The Peacock Linder Invoices are for Thomas's "Trust and Matrimonial Issues."[57] The BLG Invoices are for "Trust Litigation" and are charged to Hyrum and the Waterton Land Trust. These invoices are dated between September 21, 2023, and March 5, 2024.[58]

On May 1, 2024, OLPC disclosed Rick S. Hoffman ("Mr. Hoffman") as its expert for "calculating economic harm related to commercial litigation."[59] Mr. Hoffman's report offers the opinion that Ephraim's conduct caused OLPC to incur $456,040 in damages.[60] Mr. Hoffman arrived at this figure by adding the total amounts of the Foley, Peacock Linder, and BLG Invoices.[61]

On September 9, 2024, Ephraim moved to exclude several documents, including the invoices, as untimely produced and requested sanctions.[62] Magistrate Judge Oberg denied Ephraim's motion, finding that neither exclusion nor other sanctions were warranted for any of the documents at issue (the "Exclusion Order").[63] The magistrate judge found that Ephraim made misleading arguments in his motion, as many of the documents he alleged he was missing had in fact been produced.[64] However, the magistrate judge held that OLPC's disclosure of the legal

---

[56] Peacock Linder Invoices, ECF No. 373-3, filed Jan. 31, 2025; BLG Invoices, ECF No. 373-4, filed Jan. 31, 2025.
[57] Peacock Linder Invoices, ECF No. 373-3, filed Jan. 31, 2025.
[58] BLG Invoices, ECF No. 373-4, filed Jan. 31, 2025.
[59] OI Private Counsel, LLC's Expert Disclosures 2, ECF No. 276, filed May 1, 2024.
[60] Expert Witness Report Submitted by Richard S. Hoffman ("Hoffman Rep."), ECF No. 308-17, filed Sep. 9, 2024.
[61] *Id.* at 6.
[62] Rule 37(c) Motion for Mandatory Exclusion of Untimely Produced Documents and for Sanctions, ECF No. 308, filed Sep. 9, 2024.
[63] Memorandum Decision and Order Denying Defendant's Rule 37(c) Motion for Mandatory Exclusion of Untimely Produced Documents and for Sanctions and Permitting Limited Rule 30(b)(6) Deposition of OLPC ("Order"), ECF No. 355, filed Nov. 27, 2024.
[64] *Id.* at 18.

billing records was untimely and deprived Ephraim of the opportunity to conduct related discovery.[65]

The magistrate judge first noted that several of the invoices OLPC relies on "were available to OLPC months or years before the close of fact discovery," yet OLPC did not produce these records until the end of fact discovery.[66] The order reasons that "OLPC does not explain why it did not produce any of these records until the close of fact discovery (or three days prior)," showing that the billing records were "untimely disclosed, without substantial justification."[67]

The magistrate judge then found that the untimely disclosure "deprived Ephraim of the ability to conduct follow-up fact discovery related to these records."[68] The magistrate judge rejected OLPC's argument that its February 2023 Rule 30(b)(6) deposition cured any prejudice, as OLPC's testimony on its "general theory of damages" did not justify its failure to disclose the information in the billing records to Ephraim before the close of fact discovery.[69] However, the magistrate judge did not exclude the billing records, finding that any "harm resulting from the untimely disclosure can be cured at this stage by reopening discovery to allow a continued Rule 30(b)(6) deposition of OLPC regarding the billing records and damages claims."[70]

Thomas was deposed as OLPC's representative on December 19, 2024 (the "2024 OLPC Deposition").[71] In this deposition, Thomas stated that OLPC had orally agreed to reimburse its

---

[65] *Id.* at 26.
[66] *Id.* at 27.
[67] *Id.*
[68] *Id.*
[69] *Id.* at 28.
[70] *Id.* at 30.
[71] Thomas Olson Deposition ("2024 OLPC Dep."), ECF No. 373-5, filed Jan. 31, 2025.

clients (including himself, a couple of his sons, and one of his trust's trustees) for legal fees incurred in cases where the Confidential Documents were used.[72] Thomas first stated that OLPC has agreed to reimburse the costs incurred in the Lemons Litigation.[73] He stated that OLPC agreed to indemnify the Waterton Land Trust, which in turn has agreed to indemnify Bruce Lemons.[74] This agreement was made in a phone call between Thomas and his son Hyrum, who Thomas believes is the trustee of the Waterton Land Trust, in October 2022.[75] Thomas also stated that the Waterton Land Trust is a client of OLPC, but that he does not have a written engagement agreement with the trust.[76]

Thomas then stated that OLPC had agreed to pay the attorney fees in the Waterton Land Trust matter because his sons Hyrum and Joshua are clients of OLPC. He stated that Hyrum is a client because he is a director of the Waterton Land Trust, and Joshua is a client of OLPC because OLPC had filed his tax returns and given him tax advice.[77] OLPC orally agreed to indemnify the parties in the Olson v. Olson matter sometime in 2023; there is no written indemnification agreement.[78]

As for the damages claimed in the Mareva Injunction, Thomas testified that he is himself a client of OLPC, the law firm that he owns. While being questioned as OLPC's representative, Thomas stated that:

Q: So what is OLPC's responsibility to reimburse you for your legal fees?

---

[72] *Id.* at 14:6–12 (agreement to indemnify the Waterton Trust is not memorialized in writing); 41:24–25, 42:1–8 (OLPC agreed to indemnify Hyrum Olson).
[73] *Id.* at 11:12–13.
[74] *Id.* at 11:12–20.
[75] *Id.* at 13:1–18; 14:3–11; 15:8–17.
[76] *Id.* at 16:12–20.
[77] *Id.* at 42:3–8; 43:3–7.
[78] *Id.* at 42:3–8; 43:3–7; 43:22–25; 46:8–13.

A: Based on the actions against all parties, all parties were clients of OLPC, and the documents were stolen by a former employee of OLPC.

Q: Are you a client of OLPC?

A: I am.

Q: Does OLPC have any agreement with you to reimburse you for these legal fees?

A: Yes, it's supposed to reimburse me for the legal fees.

Q: Is that written down somewhere?

A: No.

Q: Okay. Who negotiated that agreement between OLPC and you to pay you back for your legal fees?

A: That was me.

Q: You and yourself?

A: OLPC. I'm the manager of OLPC, and so I also represent myself, as well as the Waterton Land Trust and the Olson Estate Trust.[79]

In short, Thomas's view is that he is both the owner of and a client of OLPC, and he verbally negotiated a contract with himself for OLPC to indemnify himself for his attorney fees incurred in the Mareva Injunction case.

In its opposition to Ephraim's motion for summary judgment, filed on March 21, 2025, OLPC asserts for the first time that its damages are "the costs incurred by OLPCCIL to investigate the theft of its Confidential Documents and the fees OLPC's clients have incurred in defending themselves in which the Confidential Documents have been used."[80] OLPC states that the Confidential Documents were stored on servers owned by OLPCCIL.[81] OLPC alleges that after it discovered that the Confidential Documents had been misappropriated, OLPCCIL hired two law firms based in the United States and Thailand to "respond to the theft and assess the damage that had been done."[82] Thomas asserts that the investigative and response costs

---

[79] *Id.* at 68:5–25.

[80] OL Private Counsel, LLC's Opposition to Motion for Summary Judgment Dismissing Plaintiff's Complaint ("Pl. MSJ Opp.") 2, <u>ECF No. 397</u>, filed Mar. 21, 2025.

[81] Pl. MSJ Opp. 8; Services Agreement 3–7, <u>ECF No. 414-1</u>, filed May 2, 2025 (service agreement showing Thomas H. Olson as signatory for OLPCCIL); 2023 OLPC Dep. 10:5–7 (Thomas states that he is director of OLPCCIL).

[82] Pl. MSJ Opp. 8.

"amounted to $18,375 USD" by November 2020.[83] OLPC states that OLPCCIL "has now required payment from OLPC for those costs."[84] OLPC also claims that it incurred investigation costs in the Mareva Injunction case, where Thomas's attorneys questioned Carolyn about the confidential documents. [85] Thomas estimates that this questioning cost "at least $6,300 USD."[86]

## DISCUSSION

Before addressing the parties' motions for summary judgment, the court considers what evidence the parties may rely on at this stage. The parties make several objections to the evidence used by their opponent. [87] Ephraim has also moved to exclude OLPC's evidence related to its attorney fee damages and argues that any damages related to OLPC's investigation into how the Confidential Documents were leaked should not be considered. The court considers the parties' evidentiary objections, then evaluates the categories of damages.

### I.    Evidentiary Objections

Under Federal Rule of Civil Procedure 56, a party may show "that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."[88] "At the summary judgment stage, the parties need not submit evidence in a form admissible at trial; however, the content or the substance of

---

[83] Declaration of Thomas Olson in Support of Opposition to Motion for Summary Judgment ("Thomas Decl.") 4, ECF No. 397-2, filed Mar. 21, 2025.
[84] Pl. MSJ Opp. 8.
[85] Deposition of Carolyn Olson 124:12–16; 125:7–12, 26–25; 126:1–2, ECF No. 372-9, filed Jan. 31, 2025.
[86] Thomas Decl. ¶ 17.
[87] See Pl. MSJ Opp. 3; Appendix I: OLPC's Opposition to Ephraim's Statement of Undisputed Facts, ECF No. 397-1, filed Mar. 21, 2025; Reply Memorandum in Support of Motion for Summary Judgment ("Def. MSJ Reply") 2, ECF No. 412, filed May 2, 2025; Defendant Ephraim Olson's Opposition to Plaintiff's Motion for Partial Summary Judgment ("Def. MSJ Opp.") 3, ECF No. 393, filed Mar. 21, 2025; Reply in Support of OL Private Counsel, LLC's Motion for Partial Summary Judgment ("Pl. MSJ Reply") 3, ECF No. 415, filed May 2, 2025; OL Private Counsel LLC's Response to Objections to Evidence, ECF No. 419, filed May 9, 2025.
[88] Fed. R. Civ. P. 56 (c)(1)(B).

the evidence must be admissible."[89] "The burden is on the proponent to show that the material is admissible as presented or to explain the admissible form that is anticipated."[90]

### i. **Ephraim's Objections**

Ephraim first objects to portions of Thomas's declaration that was attached to OLPC's motion for summary judgment.[91] He argues that the declaration was not made based on Thomas's personal knowledge, as Thomas did not have personal knowledge of when Ephraim's access to the OLPCCIL server was revoked.[92] He also argues that Thomas's statements about OLPC's damages in the declaration should not be considered because they are not supported by other documents, contradict Thomas's previous statements, and are speculative.[93]

"[A]lthough evidence presented in the form of an affidavit at summary judgment can be 'converted' in form into live testimony at trial, the content or substance of the affidavit must be otherwise admissible."[94] If summary judgment evidence is presented in the form of an affidavit, the Rules of Civil Procedure require that "the evidence must be based on personal knowledge."[95]

In his declaration accompanying OLPC's motion for summary judgment, Thomas states that "Ephraim's access to OLPC's documents was revoked by the end of 2019."[96] Ephraim argues that this statement was made without personal knowledge, as Thomas's statements made during depositions as OLPC's 30(b)(6) representative show that Thomas did not know if

---

[89] *Bryant v. Farmers Ins. Exch.*, 432 F.3d 1114, 1122 (10th Cir. 2005) (citing *Hardy v. S.F. Phosphates Ltd.*, 185 F.3d 1076, 1082 n.5 (10th Cir.1999)).
[90] Fed. R. Civ. P. 56(c)(2) advisory committee's note to the 2010 amendment.
[91] Def. MSJ Reply 2–8; Def, MSJ Opp. 5–7.
[92] Def. MSJ Opp. 7.
[93] Def. MSJ Reply 2–5.
[94] *Johnson v. Weld Cnty., Colo.*, 594 F.3d 1202, 1210 (10th Cir. 2010).
[95] *Bryant.*, 432 F.3d at 1122.
[96] Thomas Decl. ¶ 12.

13

Ephraim still had access to the OLPCCIL server after September 1, 2019.[97] OLPC responds that Thomas does have personal knowledge about when Ephraim's employment ended.[98]

Thomas's declaration does not state that Ephraim's employment or access to the OLPCCIL server ended on September 1, 2019—it states that Ephraim's access to OLPC's documents had terminated "by the end of 2019."[99] Ephraim offers no argument as to why Thomas would not know that Ephraim's access had been terminated by the end of that year. Thomas's failure to recall the exact date Ephraim's employment ended in previous depositions does not show that he does not have knowledge about the statements in his declaration. Accordingly, Ephraim's objection to Thomas's statement about when Ephraim's access to OLPCCIL's server was revoked is overruled.

Ephraim's argument that the court should not consider statements in Thomas's declaration about damages also fails. Ephraim does not argue that Thomas does not have personal knowledge about these statements or offer another basis under which these statements should be excluded.[100] Ephraim's arguments about the lack of supporting documents, possible contradictions in the record, and Thomas's speculation as to damages go to the weight a fact finder might assign to Thomas's statements, not the declaration's admissibility at this stage in the proceedings. Accordingly, Ephraim's objection to the information in Thomas's declaration is overruled.

---

[97] Def. MSJ Reply 7.
[98] Pl. MSJ Reply 8.
[99] Thomas Decl. ¶ 12.
[100] *Markham v. Nat'l States Ins. Co.*, 122 F. App'x 392, 398 (10th Cir. 2004) (citing Fed.R.Evid. 103(a)(1)) ("A valid objection to the admission of evidence must state the specific ground upon which it is based, unless the specific ground is apparent from the context.").

Next, Ephraim argues that OLPC relies on hearsay statements from Joshua, Hyrum, and Tim.[101] Ephraim argues that Thomas's statement that Ephraim's employment with OLPC was over by the end of 2019 is based on out-of-court statements by Joshua and Hyrum.[102] He objects to OLPC's statement that "Per standard policies and practices at OLPC, Ephraim's access to OLPC's documents was revoked when his employment terminated. After that OLPC did not give Ephraim permission to access its confidential information."[103] This statement does not rely on any information from Joshua or Hyrum; it references Thomas's declaration.[104] The information Ephraim alleges came from Joshua and Hyrum relates only to the specific date of September 1, 2019. Ephraim does not explain how Thomas's own knowledge that Ephraim's employment had ended by the end of 2019 is hearsay. Accordingly, his objection is overruled.

Finally, Ephraim's objection that OLPC relies on hearsay statements from Tim also fails. He argues that OLPC has relied on Tim's declaration, which it contends is inadmissible hearsay.[105] This argument is unavailing: at summary judgment, admissibility challenges turn on substance, not form. In any event, OLPC does not rely upon any hearsay statements by Tim. It references the messages between Tim and Ephraim where Tim sent the Confidential Documents, but does not rely on Tim's declaration itself.[106] Ephraim offers no argument about why the messages are inadmissible. Accordingly, his objection is overruled.

---

[101] Def. MSJ Opp. 4.
[102] Def. MSJ Reply 8.
[103] *Id.* at 8 (objecting to ¶ 9 of the Additional Material Facts in OLPC's opposition); Pl. MSJ Opp. 6.
[104] Pl. MSJ Opp. 6 (citing Thomas Decl. ¶ 12).
[105] *Id.* at 8–10.
[106] Pl. MSJ Opp. Additional Material Fact ¶ 10 (stating when Tim's employment ended based on email from Tim) ¶ 11 (stating that Ephraim knew Tim had resigned based on Facebook messages, Ephraim's deposition, and Telegram messages); ¶ 12 (stating that Ephraim requested for Tim to send him Confidential documents based on messages between Tim and Ephraim); ¶ 13 (stating that Tim had found a way to access the Confidential Documents, and Ephraim encouraged him to do so, based on messages between Tim and Ephraim); ¶ 15 (stating that Tim followed Ephraim's direction to send Confidential Documents based on Ephraim's deposition, messages between

### ii.  OLPC's Objections

In its opposition to Ephraim's motion for summary judgment, OLPC objects to two facts offered by Ephraim. First, OLPC objects to Ephraim's statement that Bruce Lemons is a trustee of the Waterton Land Trust because that fact is not supported.[107] Next, it objects to Ephraim's statement that OLPC paid for the Foley Lardner invoices "to the extent Ephraim offers a legal conclusion and argument regarding the legal bases underlying OLPC's damages claims."[108]

As explained above, at "the summary judgment stage, the only appropriate basis on which to raise an evidentiary objection is that a fact cannot be presented in a form that would be admissible in evidence."[109] OLPC has not argued that either contested statement is not admissible. Accordingly, its objections are overruled.

In sum, all of the objections to the evidence made by both parties are overruled. The court will not exclude this evidence from consideration at this stage. With this in mind, the court turns to Ephraim's challenges to OLPC's damages evidence.

## II.    Damages Evidence

OLPC asserts two categories of damages. First, it claims it has been damaged because it has agreed to indemnify its clients for their legal expenses in cases where the Confidential Documents have been used (the "Litigation Damages").[110] Second, it claims that it has been

---

Tim and Ephraim); ¶ 30 (stating that Ephraim, Carolyn, and Naomi did not have access to the Confidential Document before Tim shared them, relying on messages between Tim and Ephraim, Carolyn affidavit, and previous questioning of Carolyn).

[107] Appendix I: OLPC's Opposition to Ephraim's Statement of Undisputed Facts ¶ 37, ECF No. 397-1, filed Mar. 21, 2025.

[108] *Id.* at ¶ 38.

[109] *Juliano v. Engel*, No. 2:23-CV-351-TS-CMR, 2025 WL 315880, at *2 (D. Utah Jan. 28, 2025) (quoting *United States v. RaPower-3, LLC*, No. 2:15-CV-00828-DN, 2020 WL 5531563, at *15 (D. Utah Sept. 15, 2020) (cleaned up).

[110] Pl. MSJ Opp. 2.

damaged because it has to repay OLPCCIL for the costs it incurred investigating how the Confidential Documents were leaked (the "Investigation Damages").[111] Ephraim argues that both categories of damages should be excluded due to OLPC's alleged violations of the Federal Rules of Civil Procedure.[112]

Rule 26 requires parties to provide "a computation of each category of damages claimed by the disclosing party" in their initial disclosures.[113] Parties must "supplement or correct" their disclosures "in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing."[114]

Rule 37 then "addresses a party's failure to disclose or supplement initial disclosures, providing that '[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or harmless.'"[115] To determine if a party's failure to update their initial disclosures is substantially justified or harmless, courts consider four factors: "(1) the prejudice or surprise to the party against whom the [information] is offered; (2) the ability of the party to cure the prejudice; (3) the extent to which introducing such [information] would disrupt the trial; and (4) the moving party's bad faith or willfulness."[116]

---

[111] *Id.*
[112] Renewed Rule 37(c) Motion for Mandatory Exclusion of Untimely Produced Damages Documents and for Sanctions ("Ex. Mot."), ECF No. 373, filed Jan. 31, 2025.; Def. MSJ Reply 2.
[113] Fed. R. Civ. P. 26 (a)(1)(A)(iii).
[114] Fed. R. Civ. P. 26 (e).
[115] *HCG Platinum, LLC v. Preferred Prod. Placement Corp.*, 873 F.3d 1191, 1200 (10th Cir. 2017) (quoting Fed. R. Civ. P. 37 (c)(1).
[116] *Id.* (quoting *Woodworker's Supply, Inc. v. Principal Mut. Life Ins. Co.*, 170 F.3d 985, 993 (10th Cir. 1999)).

### i. Litigation Damages

Ephraim has moved for the court to exclude OLPC's Litigation Damages (the "Exclusion Motion").[117] He argues that the 2024 OLPC Deposition did not cure the prejudice caused by OLPC's untimely damages disclosure, so the Litigation Damages should be excluded.[118] Ephraim contends that the deposition demonstrated that "there is even more fact discovery Ephraim would require to fully defend against OLPC's claims," including whether OLPC actually paid any of the invoices for the third-party litigation and what the process for these payments was.[119]

OLPC first argues that the court should evaluate the Exclusion Motion as a motion to reconsider the magistrate judge's Exclusion Order.[120] It argues that Ephraim is asking the court to reevaluate the magistrate judge's determination that the harm caused by OLPC's late disclosure of the billing records could be mitigated by allowing for another deposition of OLPC.[121] Ephraim responds that he is not seeking reconsideration, but is asking the court to exclude the Litigation Damages based on new information that became apparent after the additional deposition.[122]

Ephraim's Exclusion Motion is not a motion for reconsideration. Contrary to OLPC's assertions, the basis for the renewed motion was not available during previous briefing. Ephraim argues that the 2024 OLPC Deposition, taken pursuant to the magistrate judges' order,

---

[117] Ex. Mot. 2.
[118] *Id.* at 8.
[119] *Id.* at 9–10.
[120] Plaintiff's Opposition to Ephraim Olson's Renewed Rule 37(c) Motion for Mandatory Exclusion of Untimely Produced Damages Documents and for Sanctions ("Ex. Mot. Opp.") 10, ECF No. 388, filed Feb. 28, 2025.
[121] *Id.* at 11.
[122] Reply in Support of Renewed Rule 37(c) Motion for Mandatory Exclusion of Untimely Produced Damages Documents and for Sanctions 2 ("Ex. Mot. Reply"), ECF No. 403, filed April 4, 2025.

establishes that the Litigation Damages should be excluded. This new basis for exclusion was not available to Ephraim before the magistrate judge's order.[123]

The question, then, is whether OLPC's 2024 deposition establishes that the Litigation Damages should be excluded. Ephraim contends that the deposition did not cure the prejudice caused by OLPC's late disclosure, but instead revealed how much more information he needs to adequately defend against OLPC's claims.[124] According to Ephraim, this information includes more detailed information on the invoices related to the Mareva Injunction and Waterton Land Trust Litigation, bank statements and billing records from OLPC, and other documentation showing that OLPC has paid invoices for litigation that arise from or are related to the Confidential Documents.[125]

The additional documents Ephraim claims he needs to adequately defend himself have not been produced.[126] But it is not these documents Ephraim seeks to exclude—he seeks to exclude the evidence of damages OLPC has already provided to him. Essentially, he argues that the extended deposition of OLPC was insufficient to cure the prejudice caused by its late disclosure because it revealed that more information was needed. However, the cure for this lack of information is not to exclude OLPC's damages evidence altogether; instead, to cure this prejudice, Ephraim would need to move for extended discovery, which he has not done.

---

[123] OLPC also argues that Ephraim has waived the right to bring his Exclusion Motion. *See* Ex. Mot. Opp. 14. Like with its reconsideration argument, OLPC fails to account for the fact that the Exclusion Motion is not a challenge to the Exclusion Order. There is no clear support for OLPC's assertion that Ephraim has waived his arguments based on the 2024 OLPC Deposition. Accordingly, the court does not consider any portion of Ephraim's Exclusion Motion waived.

[124] Ex. Mot. 10–11.

[125] Ex. Mot. Reply 2.

[126] Ex. Mot Opp. 19 (stating that OLPC will produce documents if requested); Ex. Mot. Reply 2 (stating that OLPC has not produced these documents).

Ephraim does not adequately explain why OLPC's failure to produce additional documents should result in the total exclusion of the Litigation Damages evidence OLPC has produced so far. OLPC's failure to timely disclose its Litigation Damages was prejudicial, and the extended deposition may not have provided Ephraim with all the information he now claims he needs. But OLPC's failure to provide additional information after the 2024 deposition does not establish that the Litigation Damages should be excluded in their entirety. As the magistrate judge noted in the previous order, Ephraim's decision to seek exclusion of the Litigation Damages, instead of moving for additional discovery to obtain the documents he claims he needs, "suggests a calculated effort to justify a request for sanctions by stockpiling a list of grievances, rather than an effort to resolve discovery and disclosure issues as they arose."[127]

Ephraim has not shown that OLPC's failure to produce additional documents related to its damages should result in the total exclusion of its Litigation Damages. Therefore, his motion to exclude is denied, and the court declines to award Ephraim attorney fees based on his Exclusion Motion.

### ii. Investigation Damages

Next, Ephraim argues that OLPC's Investigation Damages should be excluded under Rules 26 and 37.[128] The Investigation Damages include charges for two investigations into the leaking of the Confidential Documents. First, OLPC alleges that it was damaged because OLPCCIL paid for investigations into who had accessed the OLPCCIL servers and which

---

[127] Order 7.
[128] Def. MSJ Reply 13.

documents were taken.[129] OLPC claims that it "has an indemnity obligation for those costs"[130] for which it has been billed.[131] Second, OLPC claims it was damaged because law firm Peacock Linder, while representing Thomas in his divorce, asked Carolyn questions about how she obtained the Confidential Documents.[132] OLPC claims that these costs amounted to "just over $18,000" during October and November 2020.[133]

OLPC did not update its disclosures with a calculation of these Investigation Damages. Accordingly, it must show that its failure to provide a calculation for these damages was substantially justified or harmless. OLPC has failed to make this showing for the Investigation Damages.

OLPC first offered a calculation of the Investigation Damages in its opposition to Ephraim's motion for summary judgment.[134] Although the Investigation Damages were incurred by OLPCCIL in October and November 2020, OLPC did not disclose these damages until March 2025.[135] Moreover, OLPC's own damages expert does not mention any investigation into the Confidential Documents or related expenses.[136]

---

[129] Pl. MSJ Opp. 31.

[130] *Id.* at 24.

[131] *Id.* at 41. OLPC does not provide a date for when OLPCCIL billed it for these costs. In his declaration, Thomas states that "OLPCCIL has now required payment from OLPC" without providing any dates. *See* Thomas Decl. ¶ 16.

[132] *Id.* at 30–31.

[133] *Id.* at 8. It is unclear what the total amount of Investigation Damages OLPC is pursuing is. In his declaration, Thomas claims that the "investigative and response costs" to OLPCCIL, which has "now required payment from OLPC" is $18,375. *See* Thomas Decl. 4. Thomas then estimates that Peacock Linder's questioning of Carolyn about how she obtained the Confidential Documents cost "at least $6,300." *Id.* at ¶ 17. It seems that Thomas believes this amount is an investigatory cost in addition to the $18,375 charge from OLPCCIL. However, in its briefing, OLPC does not provide a clear calculation of its Investigation Damages.

[134] Pl. MSJ Opp. 31.

[135] *Id.*

[136] Hoffman Rep. 6 (calculating damages only based on Foley, BLG, and Peacock Linder Invoices).

Adding this new category of damages in its opposition to Ephraim's motion for summary judgment is prejudicial. OLPC first offered its calculation of Investigation Damages after the close of fact discovery, after its own expert had calculated its damages, and after summary judgment briefing had started. It gave Ephraim no opportunity to question OLPC about these damages or to otherwise investigate their veracity. Therefore, the Investigation Damages are prejudicial to Ephraim.[137]

OLPC argues that "any claimed discovery misstep is harmless" because it discussed OLPCCIL's investigatory costs in prior depositions.[138] In his 2023 30(b)(6) deposition, Thomas stated that OLPCCIL had incurred damages, and OLPC "will be responsible if it gets a bill for those services."[139] OLPC essentially repeats an argument already considered and rejected by the magistrate judge, who found that OLPC had not shown that previous deposition testimony "was an adequate substitute for producing the billing records before discovery closed."[140]

OLPC still does not adequately explain how oblique references to some future bill from OLPCCIL during a deposition would put Ephraim on notice of OLPC's claim for $18,000 in Investigation Damages. Moreover, OLPC does not explain why its disclosure of these damages happened so long after the investigation. It offers no reason why it could not provide a calculation for the Investigation Damages for more than four years after the investigation happened. Therefore, OLPC's failure to provide a calculation of its investigation damages was not harmless.

---

[137] *Sonrisa Holding, LLC v. Circle K Stores, Inc.*, <u>835 F. App'x 334, 344</u> (10th Cir. 2020) (adding a new category of damages on the last day of discovery "would have significantly prejudiced Defendant" as it deprived defendant of the opportunity to question plaintiffs about the costs or ability to retain an expert).
[138] Pl. MSJ Opp. 18.
[139] *Id.* at 8–9.
[140] Order 28.

OLPC also argues that its failure to provide a calculation of Investigation Damages is harmless because Ephraim has OLPC's billing invoices and damages expert report. But the billing invoices do not show what amount is attributable to the Investigation Damages, and OLPC's expert does not mention this category of damages. Ephraim having documents related to the Litigation Damages does not show that OLPC was justified in withholding a calculation of its Investigation Damages until March 2025.

As for the remaining Rule 37 factors, Ephraim cannot now cure this prejudice, as fact discovery has been closed for over a year.[141] It is true that the Investigation Damages would not necessarily disrupt any potential trial, as no dates have been set, and Ephraim has not alleged that OLPC's failure to disclose the Investigation Damages was done willfully or in bad faith. However, the balance of these factors favors exclusion. OLPC did not provide a calculation of its Investigation Damages until it responded to Ephraim's motion for summary judgment. This failure prejudiced Ephraim and cannot be cured at this stage. Additionally, an opposition to a motion for summary judgment is not the proper vehicle for damages disclosures. Accordingly, the Investigation Damages are excluded.

### SUMMARY JUDGMENT STANDARD

"A party is entitled to summary judgment if, viewing the evidence in the light most favorable to the non-moving party, there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law."[142] "A factual issue is genuine 'if the evidence

---

[141] *See Park Cityz Realty, LLC v. Archos Cap., LLC*, No. 2:20-CV-00522-JCB, 2021 WL 4991717, at *10 (D. Utah Oct. 27, 2021) (party "cannot now cure the prejudice because discovery has long passed.").
[142] *Affliction Holdings, LLC v. Utah Vap or Smoke, LLC*, 935 F.3d 1112, 1114 (10th Cir. 2019) (citing *Hobbs ex rel. Hobbs v. Zenderman*, 579 F.3d 1171, 1179 (10th Cir. 2009)).

is such that a reasonable jury could return a verdict for the nonmoving party.'"[143] "The
nonmoving party is entitled to all reasonable inferences from the record; but if the nonmovant
bears the burden of persuasion on a claim at trial, summary judgment may be warranted if the
movant points out a lack of evidence to support an essential element of that claim and the
nonmovant cannot identify specific facts that would create a genuine issue."[144]

"Cross-motions for summary judgment are to be treated separately; the denial of one does
not require the grant of another."[145] However, if "the granting of one motion requires the denial
of the other, the Court need not delve into the other motion separately."[146]

## III.    Ephraim's Motion for Summary Judgment

Ephraim moves for summary judgment on each of OLPC's claims, arguing that it has
failed to show that any of his actions resulted in damage to OLPC.[147] OLPC disagrees, arguing
that summary judgment on damages is not appropriate.[148] It claims that its damages are the costs
it has incurred due to indemnifying third parties in the Mareva Injunction, the Lemons Litigation,
and the Waterton Trust Litigation. The parties do not dispute that each of OLPC's claims require
a showing of damages.[149] Ephraim argues that Utah law does not provide a basis for OLPC's

---

[143] *Water Pik, Inc. v. Med-Systems, Inc.*, 726 F.3d 1136, 1143 (10th Cir. 2014) (quoting *Sally Beauty Co.*, 304 F.3d 964, 972 (10th Cir. 2002)).

[144] *Id.* at 1143–44.

[145] *Buell Cabinet Co. v. Sudduth*, 608 F.2d 431, 433 (10th Cir. 1979) (citing *SEC v. American Commodity Exchange*, Inc., 546 F.2d 1361, 1365 (10th Cir. 1976)).

[146] *Turner v. XL Specialty Ins. Co.*, 469 F. Supp. 3d 1197, 1202 (W.D. Okla. 2020) (citing *Arroyo v. Geico Cas. Co.*, No. 2:16 CV 511, 2019 WL 415252, at *2 (N.D. Ind. Jan. 29, 2019)).

[147] Def. MSJ 11.

[148] Pl. MSJ Opp. 22, 30.

[149] Def. MSJ 3; Pl. MSJ Opp. 37; *see also Sunridge Dev. Corp. v. RB & G Eng'g, Inc.*, 2013 UT App 146, ¶ 13, 305 P.3d 171, 176 (quoting *Stevens-Henager Coll. v. Eagle Gate Coll., Provo Coll., Jana Miller*, 2011 UT App 37, ¶ 14, 248 P.3d 1025, 1029) ("To succeed on a breach of contract claim, '[a] plaintiff is required to prove both the fact of damages and the amount of damages.'"); *Sweet v. Corp. of Presiding Bishop of the Church of Jesus Christ of Latter-Day Saints*, No. 2:16-CV-225, 2019 WL 1382283, at *2 (D. Utah Mar. 27, 2019) (quoting *Eldridge v. Johndrow*, 2015 UT 21, ¶ 13, 345 P.3d 553, 556) ("To succeed on a claim of intentional interference with economic relations, a

Litigation Damages.[150] OLPC responds that its damages are recoverable. It also argues that it may still pursue injunctive relief.[151] The court first considers the damages arguments, then turns to OLPC's request for injunctive relief.

### i.   Damages

Under Utah law, attorney fees generally cannot be recovered "unless provided for by statute or contract."[152] "Recovery of attorney fees as consequential damages generally applies in just two situations. The first is where the litigation is based on an insurance contract. . . Second, '[a] well-established exception to this general rule allows recovery of attorney fees as consequential damages, but only in the limited situation where the defendant's [actions] foreseeably caused the plaintiff to incur attorney fees through litigation with a third party." "[W]hen the natural consequences of one's negligence is another's involvement in a dispute with a third party, attorney fees reasonably incurred in resolving the dispute are recoverable from the negligent party as an element of damages."[153] This is not an insurance contract dispute; therefore, OLPC may only recover attorney fees under the third-party litigation exception.

---

'plaintiff must prove (1) that the defendant intentionally interfered with the plaintiff's existing or potential economic relations, (2) for an improper purpose or by improper means, (3) causing injury to the plaintiff.'"); *Espenschied Transp. Corp. v. Fleetwood Servs., Inc.*, 2018 UT 32, ¶ 14, 422 P.3d 829, 833 (breach of fiduciary duty requires a showing of damages); 18 U.S.C. § 1030 (4) (CFAA civil cause of action requires loss aggregating in at least $5,000 of value).

[150] In evaluating OLPC's state law claims, the court applies Utah law to matters of substantive law. *See In re ZAGG Inc. Shareholder Derivative Action*, 826 F.3d 1222, 1228 (10th Cir. 2016) (quoting Timmerman *v. Modern Indus. Inc.*, 960 F.2d 692, 696 (7th Cir. 1992)) ("federal courts exercising pendent or diversity jurisdiction must apply state law as to matters of substantive law").

[151] Def. MSJ Opp. 50.

[152] *South Sanpitch Co. v. Pack*, 765 P.2d 1279, 1282 (Utah Ct. App. 1988) (citing *B & R Supply Co. v. Bringhurst*, 28 Utah 2d 442, 444, 503 P.2d 1216, 1217 (1972)) (also citing *Blake v. Blake*, 17 Utah 2d 369, 371, 412 P.2d 454, 456 (1966)).

[153] *Id.*

The parties first disagree about how to categorize the Litigation Damages. OLPC claims that its Litigation Damages "are comprised of the indemnification payments OLPC is obligated to make to its clients based upon the adverse use of their confidential information flowing from OLPC's former employee's misconduct."[154] It argues that these damages are indemnification costs, not third-party litigation fees.[155] Ephraim responds that it does not matter whether the Litigation Damages are labeled as third-party expenses or indemnification costs, as OLPC has not shown it can recover these damages either way.[156]

Although OLPC seeks to categorize its Litigation Damages as indemnification costs, not third-party litigation fees, it has not shown that a different legal standard applies. OLPC references a number of cases discussing indemnity actions. None of these cases stand for the proposition that an indemnitor such as OLPC may claim as damages its actual or anticipated indemnification payments in litigation between third parties when the third-party litigation exception does not apply.[157]

OLPC contends that the third-party litigation exception applies in this circumstance because it has entered into indemnification agreements with the parties in Third-Party Litigation where the Confidential Documents have been used.[158] Ephraim argues that OLPC's Litigation

---

[154] Pl. MSJ Opp. 32.
[155] *Id.*
[156] Def. MSJ Reply 16.
[157] Pl. MSJ Opp. 33 (citing *Russ v. Woodside Homes, Inc.*, 905 P.2d 901, 904 (Utah Ct. App. 1995) (discussing indemnity provision between personal injury plaintiff and home builder); *Thomas v. Malco Refineries*, 214 F.2d 884, 885 (10th Cir. 1954) (discussing indemnity in respondeat superior case); *Pavoni v. Nielsen*, 2000 UT App 74, ¶ 16, 999 P.2d 595, 598 (discussing indemnity contract between the parties to the case); *Davidson Lumber Sales, Inc. v. Bonneville Inv., Inc.*, 794 P.2d 11, 19 (Utah 1990) (discussing statute of limitations in indemnity action between two indemnitors); *Perry v. Pioneer Wholesale Supply Co.*, 681 P.2d 214, 218 (Utah 1984) (stating elements of indemnity action)).
[158] Pl. MSJ Opp. 34–35.

Damages do not meet the requirements of the third-party litigation exception because OLPC itself is not a party to the Third-Party Litigation.[159]

OLPC argues that the Utah Court of Appeals decision in *Macris & Associates, Inc. v. Neways, Inc.*[160] establishes it may recover its indemnification costs.[161] There, plaintiff Macris brought claims against Images, which was owned by Thomas and Leslie Mower, for breach of contract. Images then sold its assets to Neways (*Macris I*).[162] Macris then filed suit against Neways and the Mowers, bringing claims for fraudulent conveyance, successor liability, and alter ego (*Macris II*).[163]

Macris ultimately succeeded on its breach of contract claim in *Macris I*, and Neways paid the entire judgment.[164] Neways and the Mowers then moved to dismiss *Macris II*, arguing the case was moot because the *Macris I* judgment was paid.[165] Macris argued that the case was not moot because the attorney fees it incurred in *Macris II* were recoverable under the third-party litigation exception.[166] The trial court granted Neways' motion for summary judgment, reasoning that the third-party litigation exception did not apply.[167]

The Court of Appeals disagreed, holding that Macris potentially could recover attorney fees from Neways and the Mowers under the third-party litigation exception if Macris could show Neways was Images' successor or alter ego. With that showing, if Images caused Macris to

---

[159] Pl. MSJ Reply 17.
[160] 60 P.3d 1176 (2002).
[161] Pl. MSJ Opp. 35–36.
[162] *Macris*, 1176 P. 3d at 1177, ¶ 2–3.
[163] *Id.* at ¶ 3.
[164] *Id.* at ¶ 4, ¶ 7.
[165] *Id.* at ¶ 8.
[166] *Id.*
[167] *Id.* at ¶ 9.

incur attorney fees, the third-party litigation exception may apply.[168] In other words, "based on the way Macris's complaint is framed, if Macris can establish that Images is the alter ego of Neways, then the trial court may hold Neways liable for Images's actions. If Macris can then establish that Neways is the alter ego of Mowers, then Macris may seek attorney fees from Mowers."[169] However, the court noted that the "third-party litigation exception does not support a direct claim for attorney fees against Mowers and Neways."[170]

Altogether, *Macris* stands for the limited proposition that a plaintiff may seek attorney fees under the third-party litigation exception if the plaintiff is successful in showing the defendant is a successor corporation or alter ego of the party that caused it to incur attorney fees in a separate case.[171] OLPC does not allege that Ephraim is the alter ego or successor for any of the parties in the Third-Party Litigation for which it is seeking attorney fees. Instead, OLPC claims that "indemnification is like an assignment and successor liability," so the court should allow its claims to proceed.[172]

*Macris* does not support this proposition. OLPC fails to demonstrate that the third-party exception should apply for at least three reasons. First, OLPC's argument reverses to which parties the court's successor liability analysis applies. In *Macris*, the court held that the party seeking attorney fees could recover from a successor or alter ego of the party that initially caused it harm. Here, OLPC argues that its indemnification agreements are analytically similar to parties

---

[168] *Id.* at ¶ 19.
[169] *Id.* at ¶ 21.
[170] *Id.* at 1182 n. 12.
[171] *Id.* at ¶ 20 ("Accordingly, if Macris is successful in its claim that Neways is liable to Macris 'for all amounts due or to become due from Images to Macris' because 'Neways is the successor corporation to Images,' then Macris may seek attorney fees from Neways under the third-party litigation exception."); ¶ 21 ("If Macris can then establish that Neways is the alter ego of Mowers, then Macris may seek attorney fees from Mowers.").
[172] Pl. MSJ Opp. 36.

assuming successor liability.[173] If that were the case, OLPC would be like defendant Neways, the alleged alter ego of Images, against which third-party litigation damages were sought, not like plaintiff Macris that could rely on the third-party litigation exception.[174] *Macris* did not involve a plaintiff seeking to apply the third-party litigation exception who was a successor or alter ego corporation—it involved a defendant who was allegedly an alter ego of the defendant in the separate case that plaintiff Macris sought attorney fees for. Therefore, *Macris* does not support OLPC's argument that it may pursue third-party litigation damages because it, as a plaintiff, has agreed to indemnify its clients.

Next, *Macris* involved very different claims. The court held that the third-party exception may apply if a plaintiff successfully establishes that the defendant is a successor or an alter ego of the third-party that harmed the plaintiff.[175] OLPC has not brought similar claims against Ephraim, so the holding in *Macris* is simply inapposite.

Finally, the party seeking to assert the third-party litigation exception in *Macris* was a party to both the first breach of contract action and the second successor liability action. Here, OLPC is not a party to any of the separate actions. *Macris* simply does not stand for the proposition that a party may seek attorney fees for a separate case to which it is not a party. Accordingly, OLPC has not shown that *Macris* supports its damages theory.

---

[173] *Id.* at 35 (arguing that the "doctrine of indemnification is like an assignment and successor liability, in that it effectively obligates one party to respond for the liabilities of another."); 36 (stating that its "indemnification agreements place it in privity with its clients regarding the third-party litigation fees and obligate OLPC to pay those fees.").
[174] *Macris*, 60 P.3d at 1180–81.
[175] *Id.* at ¶ 20, ¶ 21.

Moreover, Utah's third-party litigation exception allows for an award of attorney fees "only in limited contexts."[176] Here, the court applies this limited exception under Utah law and does not expand it to make new law. [177] OLPC has not referenced any relevant authority holding that the third-party litigation exception applies where a party seeks indemnification-based attorney fees from separate litigation to which it is not a party, let alone any authority holding that a firm may apply the exception to indemnify its owner, some of his children, and one of his trust's trustees.[178] OLPC has not shown that, based on these facts, it has a basis to recover damages.

OLPC has failed to establish legally-cognizable damages for any of its claims. And without this essential element, OLPC's claims fail. Accordingly, Ephraim's motion for summary judgment on OLPC's damages is granted.

### ii. Injunctive Relief

Ephraim also moves for summary judgment on OLPC's request for injunctive relief.[179] He argues that OLPC is unlikely to succeed on the merits of its conversion claims and has failed

---

[176] *Gardiner v. York*, 2006 UT App 496, ¶ 9, 153 P.3d 791, 794 (quoting *Lewiston State Bank v. Greenline Equip., L.L.C.,* 2006 UT App 446, ¶ 21).

[177] Because the third-party litigation exception does not apply, the court need not reach other issues like whether the family members OLPC says are its clients (for example, Thomas himself and two of his sons) actually are clients despite the lack of written agreements or whether post hac oral agreements between Thomas and his sons that they should have their litigation expenses paid by Thomas's firm are valid indemnification agreements.

[178] *See* Pl. MSJ Opp. 34–37 (citing *Renegade Oil, Inc. v. Progressive Cas. Ins. Co.*, 2004 UT App 356, ¶ 13, 101 P.3d 383, 387) (insurance contract dispute where insured was party to both actions); (*J.R. Simplot v. Chevron Pipeline Co.*, 563 F.3d 1102, 1116 (10th Cir. 2009)) (contractual dispute where contracting party was party to both actions); (citing *South Sanpitch Co. v. Pack*, 765 P.2d 1279, 1282 (Utah Ct. App. 1988) (applying third-party litigation exception where plaintiff sought fees it incurred in other litigation); *Russ v. Woodside Homes, Inc.*, 905 P.2d 901, 904 (Utah Ct. App. 1995) (discussing indemnity provision in contract, not third-party litigation exception); *Sunridge Dev. Corp. v. RB & G Eng'g, Inc.*, 2010 UT 6, ¶ 7, 230 P.3d 1000, 1002 (discussing assignment, not third-party litigation exception); *Thomas v. Malco Refineries*, 214 F.2d 884, 886 (10th Cir. 1954) (discussing indemnity contracts, not third-party exception); *Lynch v. MacDonald*, 12 Utah 2d 427, 433, 367 P.2d 464, 468 (1962) (discussing assignment, not third-party exception)).

[179] Def. MSJ 35.

to establish irreparable harm, so he should be granted summary judgment on any remaining claims for which OLPC could seek injunctive relief. In its complaint, OLPC requested injunctive relief based on the alleged conversion of the Confidential Documents, arguing that their use in the Third-Party Litigation would irreparably harm it.[180] But OLPC also contends the documents already were used to initiate the Third-Party Litigation; that bell cannot be unrung. Without citing or analyzing the test for injunctive relief, it now summarily argues that it is "entitled to injunctive relief" because it "has established causation and damages."[181]

"The party seeking injunctive relief must show that the injury complained of is of such imminence that there is a clear and present need for equitable relief to prevent irreparable harm. It is also well settled that simple economic loss does not, in and of itself, constitute irreparable harm; such losses are compensable by monetary damages."[182] "Injury is not irreparable if compensatory relief would be adequate."[183]

OLPC offers no argument as to why its alleged harms are irreparable. In fact, it argues the opposite, stating that its demonstration of damages shows that it should receive injunctive relief.[184] Indeed, OLPC consistently argues that its injuries can be remedied through compensatory damages; therefore, its harms cannot be irreparable and OLPC cannot obtain injunctive relief.

---

[180] First Amended Complaint 14, ECF No. 365-2, filed Feb. 21, 2025.

[181] OLPC briefly argues that it is "entitled to injunctive relief" as a separate cause of action. *See* Pl. MSJ Opp. 50. However, injunctive relief is a remedy, not an independent cause of action. *Teague v. Christian*, No. 4:18-CV-00052 DN PK, 2019 WL 4686717, at *8 (D. Utah Sept. 25, 2019) ("Injunctive relief is a remedy, not an independent cause of action. Injunctive relief is available as a remedy only where a party prevails on a separate legal theory.").

[182] *Heideman v. S. Salt Lake City*, 348 F.3d 1182, 1189 (10th Cir. 2003) (cleaned up and italics omitted) (quoting *Prairie Band of Potawatomi Indians v. Pierce*, 253 F.3d 1234, 1250 (10th Cir. 2001)).

[183] *Tri-State Generation & Transmission Ass'n, Inc. v. Shoshone River Power, Inc.*, 805 F.2d 351, 355 (10th Cir. 1986) (citing *Enterprise International, Inc. v. Corporacion Estatal Petrolera Ecuatoriana,* 762 F.2d 464, 472–73 (5th Cir. 1985)).

[184] Pl. MSJ Opp. 50.

In sum, Ephraim has established that this court cannot grant OLPC any of its requested relief. OLPC has not advanced a theory under which it may recover its Litigation Damages—namely, attorneys fees and costs from cases involving others—under Utah law, and OLPC has not met its burden to show that it may obtain injunctive relief. Accordingly, this court cannot enter an order that will redress OLPC's claimed injuries. OLPC has not shown that it can obtain any remedy for its conversion claim, precluding summary judgment in its favor.[185] As such, OLPC's motion for summary judgment must also be denied.

## ORDER

Ephraim's motion to exclude is DENIED.[186] His motion for summary judgment is GRANTED.[187] OLPC's motion for summary judgment is DENIED.[188]

Signed July 1, 2025.

BY THE COURT

_____
David Barlow
United States District Judge

---

[185] *See Mendez Suarez v. Comfort*, 117 F. App'x 1, 3 (10th Cir. 2004) ("Because we can provide no relief, we need not address the merits of the matter."); *Ortiz y Pino v. Oliver*, No. 1:24-CV-00240-MIS-JFR, 2025 WL 672884, at *2 (D.N.M. Mar. 3, 2025) (citing *BioDiversity Conservation All. v. Bureau of Land Mgmt.*, 608 F.3d 709, 713 (10th Cir. 2010)) ("If the Court cannot grant injunctive relief, attorneys fees, or costs, it appears that the Court cannot provide effectual relief, mooting the remaining claim.").
[186] ECF No. 373.
[187] ECF No. 368.
[188] ECF No. 372.