UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH
CENTRAL DIVISION

| | |
|---|---|
| OL PRIVATE COUNSEL, LLC, a Utah limited liability company,<br><br>Plaintiff,<br><br>v.<br><br>EPHRAIM OLSON, an individual,<br><br>Defendant. | **MEMORANDUM DECISION AND ORDER DENYING RENEWED MOTION FOR SPOLIATION SANCTIONS**<br>**(DOC. NO. 302)**<br><br>Case No. 2:21-cv-00455<br><br>District Judge David Barlow<br><br>Magistrate Judge Daphne A. Oberg |

In this action, Plaintiff OL Private Counsel, LLC (OLPC) alleges its former employee, Ephraim Olson, misappropriated OLPC's confidential client documents and shared them with his mother, Carolyn Olson, to use in litigation against his father, Thomas Olson (OLPC's sole member/manager).[1]  OLPC asserts Ephraim obtained some of these documents through Timothy Akarapanich, a former employee of a related entity, in June 2020.[2]  Specifically, OLPC claims Mr. Akarapanich accessed the documents from OLPC's (or a related entity's) servers without authorization, at Ephraim's request.[3]  Alleging the servers Mr. Akarapanich accessed qualify as

---

[1] (*See* First Am. Compl. ¶¶ 22–23, Doc. No. 2-2 at 35–52 (Ex. C to Notice of Removal).)

[2] (*See id.* ¶¶ 24, 29–33.)  Because this lawsuit involves several members of the Olson family, first names are used in this order, for clarity.

[3] (*See id.* ¶¶ 31–32.)

"protected computers," OLPC brings a claim against Ephraim under the Computer Fraud and Abuse Act[4] (CFAA).[5]

      After moving for spoliation sanctions once previously,[6] Ephraim has now filed a renewed motion for sanctions, claiming OLPC spoliated Mr. Akarapanich's cloud storage data.[7]  Ephraim claims the spoliated data is key to his defense of the CFAA claim, because Mr. Akarapanich may have accessed the documents from his own cloud storage rather than OLPC's servers.[8]  Ephraim seeks sanctions in the form of dismissal of the CFAA claim and an award of attorney fees incurred in defending that claim.[9]  In opposition, OLPC contends no spoliation occurred because OLPC merely asked Mr. Akarapanich to delete images of its confidential documents from his cloud account to prevent further misuse—and it preserved a backup copy of his phone data and the underlying documents.[10]

---

[4] 18 U.S.C. § 1030 et seq.

[5] (First Am. Compl. ¶ 68, Doc. No. 2-2 at 35–52.)

[6] (*See* Mot. for Spoliation Sanctions Re Tim Akarapanich's Tel. and Cloud Data (First Spoliation Mot.), Doc. No. 200.)

[7] (Renewed Mot. for Spoliation Sanctions Re Tim Akarapanich Cloud Data (Renewed Spoliation Mot.), Doc. No. 302.)

[8] (*Id.* at 8.)

[9] (*Id.* at 11.)

[10] (*See* OL Private Counsel, LLC's Opp'n to Ephraim Olson's Renewed Mot. for Spoliation Sanctions Re Tim Akarapanich Cloud Data (Opp'n to Renewed Spoliation Mot.) 1–2, Doc. No. 323.)

Because the parties' briefing raises factual disputes more appropriate for resolution by a jury, the court declines to make a determination at this stage whether spoliation occurred or sanctions are warranted. Accordingly, Ephraim's motion for sanctions is denied. The spoliation issue may be raised at trial, if permitted by the district judge.

## LEGAL STANDARDS

Spoliation is the "destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation."[11] Rule 37(e) of the Federal Rules of Civil Procedure governs sanctions for spoliation of electronically stored information (ESI). Pursuant to Rule 37(e), ESI spoliation occurs when 1) a party has a duty to preserve the evidence, 2) the ESI "is lost because a party failed to take reasonable steps to preserve it," and 3) it "cannot be restored or replaced through additional discovery."[12] If spoliation has prejudiced the moving party, the court "may order measures no greater than necessary to cure the prejudice."[13] More severe sanctions, such as dismissal, may be imposed only if the nonmovant also "acted with the intent to deprive another party of the information's use in the litigation."[14]

---

[11] *Philips Elecs. N. Am. Corp. v. BC Tech.*, 773 F. Supp. 2d 1149, 1194–95 (D. Utah 2011).

[12] Fed. R. Civ. P. 37(e).

[13] Fed. R. Civ. P. 37(e)(1).

[14] Fed. R. Civ. P. 37(e)(2).

**BACKGROUND**

Ephraim's renewed spoliation motion is the latest in a series of disputes

regarding Mr. Akarapanich's phone and cloud data.  Because the prior motions and

orders are necessary to understand the current dispute, this history is reviewed below.

<u>Motion to Compel and First Spoliation Motion</u>

OLPC purchased Mr. Akarapanich's phone from him in October 2020, after

becoming suspicious he had misappropriated confidential documents.[15]  During

discovery in this case, Ephraim asked OLPC to produce the phone for inspection.[16]

OLPC declined, but the parties agreed to retain a third-party ESI vendor, Consilio, to

"image" the phone so Ephraim could request specific information from it.[17]  Consilio

extracted some information from the phone but indicated other information could not be

collected because it did not have the password.[18]  Ephraim then filed two motions: his

first motion for spoliation sanctions[19] and a motion to compel production of data Consilio

extracted from the phone.[20]

---

[15] (*See* Opp'n to Renewed Spoliation Mot. ¶¶ 9, 11, Doc. No. 323.)

[16] (*See* Short Form Disc. Mot. Regarding Tim Akarapanich Cellular Phone (Mot. to Compel) 1, Doc. No. 206.)

[17] (*See id.*)

[18] (*See id.* at 1–2.)

[19] (First Spoliation Mot., Doc. No. 200.)

[20] (Mot. to Compel, Doc. No. 206.)

In his motion to compel, Ephraim sought production of various categories of data
Consilio had extracted from the phone, including images.[21]  OLPC urged the use of
search terms instead, arguing the requested data encompassed irrelevant, private, and
privileged material.[22]  In a December 2023 order, the court granted the motion in part
and denied it in part, requiring the use of search terms for the image files but ordering
production of the other categories of data.[23]  Ephraim never proposed search terms
following this order, even though Consilio confirmed search terms could be applied to
the images.[24]

Separately, in his first spoliation motion, Ephraim alleged OLPC deleted
information from the cloud storage on Mr. Akarapanich's phone during a meeting with
him in October 2020.[25]  Ephraim also claimed OLPC failed to obtain the password when
it purchased the phone, preventing Consilio from extracting all the data.[26]  Ephraim

---

[21] (*See id.*)

[22] (*See* Opp'n to Mot. to Compel, Doc. No. 209.)

[23] (Mem. Decision and Order Granting in Part and Den. in Part Def.'s Short Form Disc.
Mot. Regarding Tim Akarapanich's Cellular Phone (Order on Mot. to Compel) 6–7, Doc.
No. 229.)

[24] (*See* OL Private Counsel's Mem. in Opp'n to Ephraim Olson's Rule 37(c) Mot. for
Mandatory Exclusion of Untimely Produced Docs. and for Sanctions (Opp'n to Mot. for
Exclusion) ¶ 27(f)–(g), Doc. No. 327.)

[25] (First Spoliation Mot. 1, Doc. No. 200.)

[26] (*Id.*)

moved for spoliation sanctions including dismissal of the CFAA claim, asserting OLPC willfully facilitated the loss of important phone and cloud data.[27]

In opposition, OLPC argued it had no duty to preserve Mr. Akarapanich's cloud data and password because (1) litigation was not imminent and (2) the cloud data and password were in Mr. Akarapanich's (not OLPC's) possession and control.[28] OLPC also argued no information was lost because it preserved Mr. Akarapanich's phone, and the cloud storage was simply a backup copy of information on the phone.[29]

In a May 2024 order, the court found OLPC had a duty to preserve the phone and cloud data at least as of October 2020.[30] First, the court determined OLPC "knew litigation was likely and the phone's data was relevant" at that time.[31] Next, the court rejected OLPC's argument that the data at issue was not in its possession or control. The court found OLPC purchased the phone from Mr. Akarapanich "for purposes of obtaining and controlling the data it contains," and OLPC "accessed the contents of the phone and cloud in Mr. Akarapanich's presence, to review, copy, and delete items from

---

[27] (*Id.* at 1–2.)

[28] (OL Private Counsel, LLC's Opp'n to Mot. for Sanctions Re Tim Akarapanich Tel. and Cloud Data (Opp'n to First Spoliation Mot.) 1, Doc. No. 212.)

[29] (*Id.* at 2.)

[30] (Mem. Decision and Order Den. Without Prejudice Def.'s Mot. for Spoliation Sanctions [Doc. No. 200] and Ordering OLPC to Produce Data Copy, Phone, and Password (Order on First Spoliation Mot.) 9, Doc. No. 278.)

[31] (*Id.* at 8.)

the cloud."[32]  The court noted there was "some disconnect" as to whether OLPC's agents or Mr. Akarapanich deleted the cloud data, but concluded "[t]here is no question the cloud data has been deleted and it was deleted after the duty to preserve attached."[33]  In other words, cloud data "was deleted, with OLPC's knowledge, at a time OLPC had a duty to preserve relevant information."[34]  Finally, the court noted OLPC offered no evidence to support its assertion that the deleted cloud data was duplicative of information preserved on the phone itself.[35]

Nevertheless, the court concluded it was not yet apparent whether the deleted data could be "restored or replaced through additional discovery."[36]  Specifically, "there [was] a possibility that producing the password, with the phone, for further inspection may be sufficient to restore the ESI which OLPC should have preserved."[37]  OLPC also indicated it had a copy of the phone's data, but it was unclear what data was included and whether it had been searched.[38]  Accordingly, the court denied Ephraim's motion as premature—but ordered OLPC to "make reasonable efforts to obtain the phone's password" and produce the phone, password, and data copy to Consilio for

---

[32] (*Id.* at 11.)

[33] (*Id.* at 12 & 12 n.58.)

[34] (*Id.* at 13.)

[35] (*Id.*)

[36] (*Id.* at 14 (quoting Fed. R. Civ. P. 37(e)).)

[37] (*Id.* at 16.)

[38] (*Id.* at 16–17.)

inspection.[39]  The court indicated that if the lost ESI could not be restored or replaced

through this process, Ephraim could file a renewed motion for sanctions.[40]

Following this order, OLPC obtained the password and provided it to Consilio,

along with the phone and data copy.[41]  But according to OLPC, Ephraim never

requested any additional information from the phone.[42]

Expert Reports and Motion for Exclusion

Fact discovery closed on April 1, 2024.[43]  In July 2024, OLPC served the expert

report of Daniel Regard, who opined Mr. Akarapanich had accessed the allegedly

misappropriated documents via "a live connection to the email server" through his

phone.[44]  Mr. Regard examined Mr. Akarapanich's phone and the data copy in

preparing his report.[45]

---

[39] (*Id.* at 17–18.)

[40] (*Id.* at 18.)

[41] (*See* Opp'n to Mot. for Exclusion ¶ 27(h), Doc. No. 327.)

[42] (*See id.* ¶ 27(i).)

[43] (*See* Twelfth Am. Scheduling Order 1, Doc. No. 248.)

[44] (*See* Opp'n to Renewed Spoliation Mot. ¶¶ 30–31, Doc. No. 323; Ex. F to Renewed
Spoliation Mot., Expert Report of Daniel L. Regard II (Regard Report) 21, 23, 25, 29, 34,
36, Doc. No. 305-3 (sealed).)

[45] (Regard Report 7, Doc. No. 305-3 (sealed).)

In August 2024, Ephraim served a counter-report from his retained expert,
Matthew Morrise.[46]  Mr. Morrise opined that the evidence was "inconclusive as to
whether Akarapanich downloaded the confidential OLPC documents from cloud storage
or from the Exchange Server."[47]  He based this opinion on Thomas' deposition
testimony and messages between Thomas and Mr. Akarapanich, which he said showed
(1) "Akarapanich utilized an unidentified cloud storage app to store and access
confidential OLPC documents" on his phone; and (2) "OLPC IT personnel deleted from
this cloud storage the same confidential OLPC documents . . . found in the Downloads
folder on Akarapanich's phone."[48]  Relying on this evidence, Mr. Morrise reasoned the
documents could have been downloaded from cloud storage rather than from a live
connection to the email server.[49]  Mr. Morrise stated he did not examine Mr.
Akarapanich's phone or the full data copy in preparing his report because OLPC had
not produced them.[50]  Mr. Morrise also stated "without access to the primary sources it
[was] impossible to verify and appropriately respond" to Mr. Regard's report.[51]

---

[46] (*See* Opp'n to Renewed Spoliation Mot. ¶ 32, Doc. No. 323; Ex. G to Renewed
Spoliation Mot., Expert Report of Matthew R. Morrise (Morrise Report), Doc. No. 302-7.)

[47] (Morrise Report ¶ 44, Doc. No. 302-7.)

[48] (*Id.* ¶¶ 41–42.)

[49] (*Id.* ¶ 43.)

[50] (*Id.* ¶¶ 16–17.)

[51] (*Id.* ¶ 20.)

At the close of expert discovery, Ephraim filed a motion for exclusion of evidence under Rule 37(c), including technical data from Mr. Akarapanich's phone which Mr. Regard relied on in his report.[52]  While acknowledging OLPC produced this technical data around the time of Mr. Regard's report, Ephraim argued he (hence, his expert) was denied access to the phone itself pursuant to the court's discovery orders.[53]  The court rejected this argument in a November 2024 order denying the motion for exclusion.[54] The court noted Ephraim never moved to compel production of the phone itself; rather, he voluntarily agreed to have a third-party ESI vendor extract data from it.[55]  Further, Ephraim failed to propose search terms for image files following the court's December 2023 order, and he never requested additional information from the phone after OLPC obtained the password as ordered in May 2024.[56]  And even after learning OLPC's forensic expert had inspected the phone, Ephraim never requested the phone be provided to his own expert or moved to compel such production.[57]  Instead, he opted to

---

[52] (Rule 37(c) Mot. for Mandatory Exclusion of Untimely Produced Docs. and for Sanctions (Mot. for Exclusion), Doc. No. 308.)

[53] (*See* Reply in Supp. of Mot. for Exclusion 4, 14–15, Doc. No. 344.)

[54] (Mem. Decision and Order: (1) Den. Def.'s Rule 37(c) Mot. for Mandatory Exclusion of Untimely Produced Docs. and for Sanctions [Doc. No. 308]; and (2) Permitting Limited Rule 30(b)(6) Dep. of OLPC (Order on Mot. for Exclusion) 35–38, Doc. No. 355.)

[55] (*Id.* at 35.)

[56] (*Id.* at 36–37.)

[57] (*Id.* at 37.)

wait and pursue sanctions after discovery closed.[58]  Under these circumstances, the court concluded Ephraim's decision not to request access to the phone by his expert "can most fairly be characterized as a deliberate and considered decision."[59]

<u>Renewed Spoliation Motion</u>

Ephraim filed the instant renewed spoliation motion shortly before his motion for exclusion.  Ephraim contends OLPC failed to cure its spoliation of Mr. Akarapanich's cloud data following the court's May 2024 order, and he argues the expert reports show the deletion of the cloud data has irreparably harmed his defense of the CFAA claim.[60]

OLPC filed an opposition providing new evidence, in the form an IT employee's affidavit, regarding what occurred when the cloud data was deleted in October 2020.[61] OLPC also provides a new declaration from Mr. Regard, containing further analysis of the phone and account data and concluding OLPC's documents "were not downloaded from Google Drive or any other cloud account."[62]  OLPC argues the motion should be denied because (1) OLPC "had no right or ability to cause or prevent [Mr. Akarapanich] from deleting photos from his Cloud Account"; (2) no relevant information was lost; (3)

---

[58] (*Id.* at 38.)

[59] (*Id.*)

[60] (Renewed Spoliation Mot. 2, Doc. No. 302.)

[61] (Opp'n to Renewed Spoliation Mot., Doc. No. 323; Ex. 15 to Opp'n to Renewed Spoliation Mot., Decl. of Narongchai Ungurawanich (Ungurawanich Decl.), Doc. No. 323-15.)

[62] (Ex. 7 to Opp'n, Decl. of Daniel Regard (Regard Decl.) ¶ 21, Doc. No. 323-7.)

Ephraim has not suffered prejudice; and (4) OLPC did not act in bad faith, but merely sought to prevent further misuse of its confidential documents.[63]

In his reply, Ephraim objects to numerous exhibits submitted with OLPC's opposition, including the IT employee's affidavit and Mr. Regard's declaration.[64] He contends the IT employee's affidavit should be stricken because OLPC did not disclose him as a witness in its initial disclosures, and Mr. Regard's declaration should be stricken as an unauthorized and untimely supplemental expert report.[65] Ephraim also argues (as in his motion for exclusion) that he and his expert were denied access to Mr. Akarapanich's phone.[66] OLPC filed a response to Ephraim's evidentiary objections.[67]

After this renewed spoliation motion was fully briefed, Ephraim moved for summary judgment on all of OLPC's claims based on OLPC's alleged failure to establish damages, and OLPC moved for partial summary judgment on its conversion claim.[68] The issues raised in the renewed spoliation motion are unrelated to the issues

---

[63] (Opp'n to Renewed Spoliation Mot. 1–2, Doc. No. 323.)

[64] (Reply Mem. in Supp. of Renewed Mot. for Spoliation Sanctions Re Tim Akarapanich Cloud Data (Reply) 6–17, Doc. No. 339.)

[65] (*Id.* at 6–15.)

[66] (*Id.* at 16–17.)

[67] (Resp. to Obj. to Evid. in Reply Mem. in Supp. of Renewed Mot. for Spoliation Sanctions Re Tim Akarapanich Cloud Data (Resp. to Obj.), Doc. No. 354.)

[68] (Def.'s Mot. for Summ. J., Doc. No. 368; Pl.'s Mot. for Partial Summ. J., Doc. No. 372.)

raised on summary judgment, and neither party has argued the court's ruling on this

motion will impact the evidence presented on summary judgment.

## ANALYSIS

Ephraim's objections to evidence are considered before the merits of the motion.

As explained below, whether spoliation sanctions are warranted turns on a credibility

determination regarding OLPC's intent in deleting the cloud data at issue, as well as

disputes between the parties' experts regarding the significance of the deleted data.

Where these issues are more appropriate for resolution by a jury (if the district judge

permits these matters to be presented at trial), the court declines to make findings on

these issues at this stage.  Where Ephraim has not shown a dismissal sanction is

merited at this stage, his motion is denied.

A.  Objections to Evidence in OLPC's Opposition

1.  *IT Employee's Affidavit*

Ephraim argues the IT employee's affidavit (Exhibit 15)[69] should be stricken

under Rule 37(c) because OLPC failed to disclose him as a witness in its Rule 26(a)

initial disclosures.[70]  But Rule 26(a) only requires disclosure of witnesses the disclosing

party "may use to support its claims or defenses."[71]  In its opposition brief, OLPC does

---

[69] (Doc. No. 323-15.)

[70] (*See* Reply 11–15, Doc. No. 339); Fed. R. Civ. P. 37(c)(1) ("If a party fails to provide
information or identify a witness as required by Rule 26(a) or (e), the party is not
allowed to use that information or witness to supply evidence on a motion, at a hearing,
or at a trial, unless the failure was substantially justified or is harmless.").

[71] Fed. R. Civ. P. 26(a)(1)(A)(i).

not use the IT employee's affidavit to support its claims or defenses but, rather, to

contest Ephraim's assertion that OLPC spoliated evidence.  Accordingly, OLPC was not

required to disclose this witness under Rule 26(a).  Further, OLPC identified this

employee by name in its Rule 30(b)(6) deposition and discovery responses as one of

the IT employees involved in the meetings with Mr. Akarapanich in October 2020.[72]

Even assuming OLPC had an obligation to disclose, where the employee's identity was

disclosed during discovery, OLPC's failure to list him in its initial disclosures was

harmless.  Ephraim's objection under Rule 37(c) is overruled.

Ephraim also objects that the IT employee's affidavit contradicts OLPC's Rule

30(b)(6) testimony (through Thomas) regarding the details of what occurred during the

October 2020 meetings with Mr. Akarapanich.[73]  But Ephraim identifies no direct

contradictions between the affidavit and OLPC's testimony; rather, the IT employee

merely provides additional details regarding what occurred.[74]

Ephraim next argues the IT employee's affidavit contains inadmissible hearsay

statements from Mr. Akarapanich.[75]  OLPC argues the statements are not hearsay and,

---

[72] (*See* Resp. to Obj. 11–12, Doc. No. 354.)

[73] (Reply 14, Doc. No. 339.)

[74] *See A.C. v. Jefferson Cnty. R-1 Sch. Dist.*, 721 F. Supp. 3d 1162, 1178 (D. Colo. 2024) ("[C]ourts are permitted to disregard affidavits or portions thereof only where direct contradictions exist between the affidavit and the affiant's own deposition testimony.").

[75] (Reply 15, Doc. No. 339.)

in any event, hearsay may be considered in deciding a spoliation motion.[76]  The court

need not decide this issue, where it is unnecessary to rely on Mr. Akarapanich's

statements in the affidavit in resolving this motion.

  *2.  Mr. Regard's Declaration*

  Ephraim argues Mr. Regard's declaration should be stricken under Rule 37(c) as

an improper and untimely supplemental expert report.[77]  He contends Mr. Regard offers

new, previously undisclosed expert opinions after the close of expert discovery.[78]

OLPC contends the court need not resolve this issue now, and, in any event, Mr.

Regard's declaration is a proper supplementation of his expert report.[79]

  Because Ephraim's motion turns on issues more appropriately addressed at trial,

the court declines to decide, at this juncture, whether Mr. Regard's declaration is an

improper supplemental expert report.  The scope and admissibility of expert opinions at

trial may be addressed in pretrial motions.

  *3.  Other Exhibits*

  Ephraim raises various objections to Exhibits 1, 2, 4 through 6, 8 through 14, 16,

18, and 20 through 24 to OLPC's opposition.[80]  It is unnecessary to consider any of

---

[76] (Resp. to Obj. 14–15, Doc. No. 354.)

[77] (Reply 6–11, Doc. No. 339.)

[78] (*Id.* at 6.)

[79] (Resp. to Obj. 8–10, Doc. No. 354.)

[80] (Reply 15–17, Doc. No. 339.)

these exhibits in deciding Ephraim's motion.  Accordingly, Ephraim's evidentiary objections to these exhibits are not addressed.

    B.  <u>The parties have not demonstrated grounds to reconsider prior rulings.</u>

        Turning to the merits, both parties raise arguments on issues the court has already decided in prior orders.  Reconsideration may be justified by "(1) an intervening change in the controlling law, (2) new evidence previously unavailable, and (3) the need to correct clear error or prevent manifest injustice."[81]  But reconsideration is improper when used to "revisit issues already addressed or advance arguments that could have been raised in prior briefing."[82]  As explained below, neither party demonstrates grounds to reconsider the court's prior rulings.

        First, OLPC's argument that it cannot be held responsible for spoliation because it "had no right or ability to cause or prevent [Mr. Akarapanich] from deleting photos from his Cloud Account"[83] was previously raised and rejected.  In the May 2024 order, the court determined OLPC had a duty to preserve Mr. Akarapanich's relevant cloud data where such data was deleted during a meeting between OLPC and Mr. Akarapanich— regardless of who actually deleted it.[84]  The new evidence submitted by OLPC does not change this analysis.  OLPC provides an affidavit from the IT employee who

---

[81] *Servants of the Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000).

[82] *Id.*

[83] (Opp'n to Renewed Spoliation Mot. 1, Doc. No. 323.)

[84] (Order on First Spoliation Mot. 11–13, Doc. No. 278.)

participated in this meeting, stating he asked Mr. Akarapanich to delete images of OLPC's confidential documents in his cloud account, and Mr. Akarapanich did so.[85]  In other words, by OLPC's own account, it asked Mr. Akarapanich to destroy evidence and he complied.  Under these circumstances, OLPC is responsible for the deletion of the photos of its confidential documents from Mr. Akarapanich's cloud account.

Next, Ephraim suggests OLPC or the court has prevented his expert from accessing Mr. Akarapanich's phone and full data backup.[86]  Ephraim raised this argument in his motion for exclusion (filed around the same time as the renewed spoliation motion), and the court rejected it in the November 2024 order denying the motion for exclusion.[87]  As explained in that order, Ephraim never moved to compel production of the phone itself, he never requested that it be provided to his expert for inspection, and his decision not to do so "can most fairly be characterized as a deliberate and considered decision."[88]  Nothing presented in Ephraim's briefing on the renewed spoliation motion (which, to be fair, was filed before the court's November 2024 order) justifies reconsideration of these findings.

---

[85] (Ungurawanich Decl. ¶¶ 8–11, Doc. No. 323-15.)  The IT employee states that in the course of reviewing the cloud account, Mr. Akarapanich became angry that the employee was viewing photos of a personal nature, and Mr. Akarapanich proceeded to delete all photos in his cloud account from the preceding four years.  (*Id.* ¶¶ 9–10.)  However, neither party contends the personal photos which Mr. Akarapanich deleted, allegedly without OLPC's prompting, are relevant to this case.

[86] (Reply 16–17, Doc. No. 339.)

[87] (Order on Mot. for Exclusion 35–38, Doc. No. 355.)

[88] (*Id.*)

C.  <u>The remaining spoliation issues are more appropriate for resolution at trial.</u>

Although it has been established that OLPC had a duty to preserve Mr.

Akarapanich's cloud data containing photos of OLPC's confidential documents, and that

OLPC was responsible for the deletion of this data, several issues remain to be

determined before spoliation sanctions may be imposed.  But as explained below, these

issues are more appropriately determined by a jury at trial.

1.  *Whether Relevant Information Was Irretrievably Lost, and Any Resulting
    Prejudice*

First, spoliation sanctions are appropriate only if ESI "is lost because a party

failed to take reasonable steps to preserve it" and it "cannot be restored or replaced

through additional discovery."[89]  OLPC contends nothing was irretrievably lost because

the images deleted from the cloud account were duplicates of those on Mr.

Akarapanich's phone, and OLPC made a backup copy of the contents of the phone

(and preserved the phone itself).[90]  Ephraim, on the other hand, suggests information

on the cloud account may have revealed whether Mr. Akarapanich accessed OLPC's

confidential documents from the cloud account or the email server.[91]  Ephraim relies on

the opinion of his expert, Mr. Morrise, that the evidence is "inconclusive as to whether

---

[89] Fed. R. Civ. P. 37(e).

[90] (Opp'n to Renewed Spoliation Mot. 18–20, Doc. No. 323.)

[91] (*See* Renewed Spoliation Mot. 2, 8, Doc. No. 302.)

Akarapanich downloaded the confidential OLPC documents from cloud storage or from the Exchange Server."[92]

Ephraim's argument is hampered by the fact that Mr. Morrise did not examine Mr. Akarapanich's phone. While OLPC's expert, Mr. Regard, opines the data from the phone and data backup makes clear Mr. Akarapanich accessed the documents from the email server,[93] Mr. Morrise admits his ability to respond to this opinion is limited because he never examined the phone or full data backup.[94] And Mr. Morrise does not specify how the deleted cloud data (were it available) would assist him in determining whether Mr. Akarapanich accessed the documents at issue from the cloud account or the email server. In other words, Mr. Morrise did not examine the phone or data copy to determine whether the relevant information was preserved, as OLPC claims—and he does not explain what additional, relevant information the deleted cloud data might have contained.

Nevertheless, Mr. Morrise suggests, generally, that the deletion of cloud data casts doubt on whether Mr. Akarapanich accessed the documents at issue via the server.[95] And he opines that some of the data Mr. Regard relies on does not

---

[92] (Ex. G to Renewed Spoliation Mot., Morrise Report ¶¶ 41–44, Doc. No. 302-7.)

[93] (*See* Ex. F to Renewed Spoliation Mot., Regard Report ¶¶ 103–128, Doc. No. 305-3 (sealed).)

[94] (Ex. G to Renewed Spoliation Mot., Morrise Report ¶¶ 19–20, Doc. No. 302-7.)

[95] (*Id.* ¶¶ 41–44.)

conclusively establish Mr. Akarapanich accessed the documents via the server.[96]

Consequently, whether relevant information was irretrievably lost, and any resulting

impact on the ability to determine how Mr. Akarapanich accessed the documents, may

ultimately depend on weighing these contrary expert opinions.

Weighing the credibility or persuasiveness of competing experts' testimony and

opinions ordinarily falls within the province of the jury.[97]  Although the court may "step

into the role of factfinder" for purposes of determining a sanctions motion, it may also

decline to do so where the motion is "intertwined with issues of fact and credibility that

will ultimately be decided by the jury at trial."[98]  In this case, a determination of whether

spoliation occurred and caused prejudice requires weighing competing expert opinions

on issues central to this case—the same opinions the jury must weigh in deciding the

merits of OLPC's claims (if expert testimony is deemed admissible).  Under these

circumstances, these issues are more appropriate for determination by the jury at trial.

### 2.  OLPC's Intent in Deleting Mr. Akarapanich's Cloud Data

Next, even assuming relevant ESI was irretrievably lost, the sanction of dismissal

may only be imposed if OLPC "acted with the intent to deprive another party of the

information's use in the litigation."[99]  Here, OLPC has offered an alternative motive for

---

[96] (*See id.* ¶¶ 37–38.)

[97] *Heer v. Costco Wholesale Corp.*, 589 F. App'x 854, 862–63 (10th Cir. 2014) (unpublished).

[98] *Amann v. Off. of the Utah Att'y Gen.*, No. 2:18-cv-00341, 2023 U.S. Dist. LEXIS 197427, at *22–23 (D. Utah Nov. 2, 2023) (unpublished).

[99] Fed. R. Civ. P. 37(e)(2).

deleting images of its confidential documents from Mr. Akarapanich's cloud account: preventing further misuse or disclosure of its confidential documents by Mr. Akarapanich.[100]  Ultimately, a determination of OLPC's intent in deleting the cloud data is "deeply fact-bound and turns on questions of the parties' motives and witness credibility."[101]

Bearing in mind the plausible alternative motive offered by OLPC, Ephraim has not established, for purposes of this motion, that OLPC acted in bad faith in deleting Mr. Akarapanich's cloud data.  In other words, he has not demonstrated dismissal is an appropriate sanction at this stage.  However, if evidence relating to spoliation is deemed admissible at trial, it may be appropriate to submit this issue to the jury.  For example, the jury could be instructed that it "may consider, in its discretion, whether they believe evidence proffered at trial might give rise to an inference that additional evidence not produced was spoliated, and whether negative implications of the parties' good or bad faith might be drawn therefrom."[102]

## CONCLUSION

Where a determination of whether spoliation occurred or sanctions are warranted turns on factual issues more appropriate for determination by a jury, and Ephraim has

---

[100] (Opp'n to Renewed Spoliation Mot. 1–2, Doc. No. 323.)

[101] *Amann*, 2023 U.S. Dist. LEXIS 197427, at *23.

[102] *See id.* at *24 n.5; *see also* Fed. R. Civ. P. 37(e)(2)(B) (permitting the court "to instruct the jury that it may or must presume the information was unfavorable to the party" upon "finding that the party acted with intent to deprive another party of the information's use in the litigation").

not shown dismissal is appropriate at this stage, Ephraim's renewed motion for

spoliation sanctions[103] is denied.

DATED this 1st day of July, 2025.

BY THE COURT:

_Daphne A. Oberg_
Daphne A. Oberg
United States Magistrate Judge

---

[103] (Doc. No. 302.)